Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Michael Isaac Miller (SBN 266459)
imiller@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiff
BARBARA WALDRUP, individually, and
on behalf of other members of the public
similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BARBARA WALDRUP, individually, and on behalf of other members of the general public similarly situated, | Case Number:  2:13-cv-08833-CAS-CW **CLASS ACTION** |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, COUNTRYWIDE HOME LOANS, a New York corporation, COUNTRYWIDE BANK, N.A., a national association, BANK OF AMERICA CORPORATION, a Delaware corporation, LANDSAFE, INC., a Delaware corporation, LANDSAFE APPRAISAL, INC., a California Corporation, | District Judge:    Christina A. Snyder Magistrate Judge:    Carla Woehrle |
| | Date:    January 5, 2015 Time:    10:00 a.m. Location:    Courtroom 5, 2nd Floor 312 North Spring St. Los Angeles, CA 90012 |
| Defendants. | Action Filed:    November 27, 2013 Trial Date:    None Set |

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ................................................................................. 1

II.    SUMMARY OF ALLEGATIONS.......................................................... 3

III.   DEFENDANTS CONFLATE STANDARDS OF PLEADING WITH
       PROOF................................................................................................. 4

IV.    DISCUSSION....................................................................................... 4

       A.    Plaintiff Adequately Alleges an Enterprise under RICO ............... 4

             i.    Under Applicable Supreme Court and Ninth Circuit Precedent, a
                   Parent Corporation and Its Subsidiary Can Form a RICO
                   Enterprise ............................................................................ 5

             ii.   Plaintiff Adequately Alleges that Defendants Formed an
                   Associated-in-Fact Enterprise .............................................. 9

       B.    Plaintiff Adequately Alleges her RICO Conspiracy Claim .......... 12

       C.    Plaintiff's Common Law Fraud and RICO Claims Are Pled with
             Sufficient Particularity under Rule 9(b)...................................... 12

             i.    Defendants Previously Asserted the Same Argument it Asserts
                   Here and Plaintiff's Allegations in the TAC Resolve the
                   Deficiencies Identified by the Court in its Prior Order.............. 12

             ii.   Plaintiff Adequately Alleges her Claims against Defendants ........... 14

       D.    Consistent with the Court's Previous Rulings, There Is No Basis to
             Dismiss Plaintiff's Unjust Enrichment and UCL Claims ............ 17

V.     CONCLUSION.................................................................................... 18

# TABLE OF AUTHORITIES

CASE                                                                                                     PAGE(S)

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 4, 16

*Baas v. Dollar Tree Stores, Inc.*,
   2007 U.S. Dist. LEXIS 65979 (N.D. Cal. Aug. 29, 2007) ........................................... 15

*Boyle v. United States*,
   556 U.S. 938, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009) ........................................... 5

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ......................................................................................... 11

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001) ...................................................................................................... 7

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ....................................................................................... 15

*In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*,
   601 F. Supp. 2d 1201 (S.D. Cal. 2009) .................................................................. *passim*

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ...................................................................... 15

*Gottreich v. San Francisco Investment Corp.*,
   552 F.2d 866 (9th Cir. 1977) ....................................................................................... 17

*Jordan v. Paul Fin., LLC*,
   745 F. Supp. 2d 1084 (N.D. Cal. 2010) ...................................................................... 17

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................................................................. 4, 17

*McCullough v. Sutter*,
   757 F.2d 14 (7th Cir. 1985) ........................................................................................... 6

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) ....................................................................................... 17

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2011) ......................................................................................... 4

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    926 F. Supp. 2d 1143 (C.D. Cal. 2013) ............................................... 7, 8, 9

*Newcal Indus., Inc. v. IKON Office Solution*,
    513 F.3d 1038 (9th Cir. 2007) ............................................................... 4

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ............................................................ 4, 5

*River City Markets, Inc. v. Fleming Foods W., Inc.*,
    960 F.2d 1458 (9th Cir. 1992) ............................................................... 6

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ........................................................................... 4

*Schlagal v. Learning Tree Int'l.*,
    1998 U.S. Dist. LEXIS 20306 (C.D. Cal. Dec. 23, 1998) .......................... 15

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ........................................................... 6, 7

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101,
    182 L. Ed. 2d 882 (2012) ..................................................................... 4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    580 F. Supp. 2d 896 (N.D. Cal. 2008) ................................................... 16

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................... 15

*Terra Ins. Co. v. New York Life Inv. Mgmt.*,
    2009 U.S. Dist. LEXIS 67102 (N.D. Cal. July 30, 2009) ........................... 15

*In re TFT-LCD Antitrust Litig.*,
    586 F. Supp. 2d 1109 (9th Cir. 2005) ................................................... 15

*U.S. v. Benny*,
    786 F.2d 1410 (9th Cir. 1986), *cert. denied*, 479 U.S. 1017 (1986) ........... 5, 6

*Usher v. City of Los Angeles*,
    828 F.2d 556 (9th Cir. 1987) ............................................................... 4

*Washington v. Baenziger*,
    673 F. Supp. 1478 (N.D. Cal. 1987) ..................................................... 15

*Watts v. Allstate Indem. Co.*,
     2009 U.S. Dist. LEXIS 56275 (E.D. Cal. June 30, 2009) ......................................7, 8, 9

**Statutes**

18 U.S.C. section 1962(c) .........................................................................................6, 7, 12

**Other Authorities**

Fed. R. Civ. P. 8 ...................................................................................................2, 15, 16

Fed. R. Civ. P. 9 ...................................................................................................*passim*

Fed. R. Civ. P. 12 ...............................................................................................................4

Fed R. Civ. P. 15 ..............................................................................................................18

Case No.: 2:13-cv-08833-CAS

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

## I.     INTRODUCTION

Through this case, Plaintiff seeks to recover money paid for appraisal services, which were promised, but never performed.  The facts underlying Plaintiff's claims have been thoroughly vetted and *all* the Defendants are amply familiar with them -- each of the Defendants were the targets of a successful *qui tam* action brought by Kyle Lagow, a former LandSafe employee who first brought Defendants' fraudulent appraisal activities to the attention of the U.S. Department of Justice.  After years of litigation between Defendants and the United States, Mr. Lagow's complaint was ultimately unsealed and Defendants paid substantial sums of money to the government.  Additionally, Mr. Lagow was paid more than $14 million for serving as a whistleblower.  It is now time for consumers to seek redress.

Under the circumstances here, Defendants indisputably understand the nature of the claims asserted against them.  However, rather than answer for their conduct, Defendants filed four successive motions to dismiss.  But, motion practice has only served to strengthen Plaintiff's case.  Forged by the guidance provided in the Court's rulings, Plaintiff's claims have been refined and sharpened.  At this point, it cannot reasonably be disputed that the parties are ready to proceed to the discovery phase of the case.

Nevertheless, in a last ditch effort to avoid incurring liability to consumers for their fraudulent appraisal scheme, Defendants yet again move to dismiss Plaintiff's claims.  This time, they reached for the kitchen sink, and employing a hyper-technical, myopic view of the facts and the law, Defendants dedicate the majority of their motion to the argument that Plaintiff fails to adequately allege a "distinct" RICO enterprise, because Defendants are "related entities, affiliates, and subsidiaries."  However, Defendants' argument, relies entirely on Sixth Circuit precedent, which is not only inapplicable, but, runs contrary to case law from the Ninth Circuit and district courts in California.  Most notably, in *In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*, 601 F. Supp. 2d 1201 (S.D. Cal. 2009), another case involving RICO claims against each of the Defendants in this matter, the court expressly rejected the argument that Defendants again

assert here -- that a "parent corporation and its subsidiaries cannot legally constitute a RICO enterprise." *Id.* at 1213.  In that case, the district court held that plaintiffs properly alleged an associated-in-fact enterprise comprised of "(1) ***Countrywide*** and (2) ***Countrywide's subsidiaries, including its LandSafe loan closing services subsidiaries***." *Id.* at 1213 (emphasis added).  Consistent with that holding and the weight of authority in California, this Court should deny Defendants' motion as it relates to Plaintiff's RICO allegations.

The remainder of Defendants' motion brazenly reasserts, at times verbatim, the same arguments this Court previously *rejected* in prior rulings.  For instance, undeterred by the Court's October 10, 2014 Order denying Defendants' motion to dismiss Plaintiff's unjust enrichment and UCL claims, Defendants once again contend that those claims "fail as a matter of law."  (*See* Dkt. 45 (Order on Motion to Dismiss SAC) at 9-10.)

Similarly, Defendants repeat, word-for-word, their argument that Plaintiff fails to allege each defendant's "specific misrepresentations or wrongdoing" in furtherance of the fraudulent appraisal scheme.  The Court also addressed this argument in its prior Order, stating that it "d[id] not doubt that some of the underlying facts are exclusively 'within the opposing party's knowledge,' and thus cannot be pled by plaintiff with particularity at this juncture."  (*Id.* at 8.)  The Court went on to hold that Plaintiff's fraud and RICO claims were not alleged with "sufficient particularity" under Rule 9(b), because she failed to identify the "LandSafe appraisers and Countrywide employees who transmitted the appraisals."  (*Id.*)  But, as set forth at length herein, the allegations in Plaintiff's Third Amended Complaint ("TAC") resolve the Court's previously identified concerns regarding the fraud and RICO allegations.

Ultimately, it cannot reasonably be disputed that the TAC provides the requisite detail under Rules 8 and 9(b), and that Plaintiff has adequately alleged the elements of her claims.  Defendants' assertions to the contrary are both factually and legally unsupported.

## II.    SUMMARY OF ALLEGATIONS

"During the period 2003 to 2008 . . . Countrywide reaped hefty profits based on the quantity, not the quality, of the loans it successfully originated and sold to Wall Street investors."  (Dkt. 46, Third Amended Complaint ("TAC") ¶ 2.)  In connection with the loans it originated, Defendants Countrywide and BofA were required to obtain "real estate appraisals in accordance with the strict ethical and competency rules of the Uniform Standards of Appraisal Practice ("USPAP")"  (*Id.* ¶ 1.)  Understanding, however, that an independent, legitimate, "legally-mandated USPAP appraisal had the potential to . . . limit Countrywide's ability to securitize and sell such loans to Wall Street," Defendants developed a scheme to remove the independence and objectivity from the appraisal process.  (*Id.* ¶¶ 6-10.)

In furtherance of this scheme, "LandSafe, at Countrywide's behest, employed a uniform practice of engaging in systematic, unlawful conduct with respect to the preparation of all appraisals for Countrywide loans originated from [2003] through 2008, which was designed to ensure that appraisal reports contained an inflated or manipulated property 'value' which always exceeded the Countrywide loan amount, regardless of the true value of the property."  (*Id.* ¶ 9.)  "In effect, through their uniform practice of systematically corrupting the appraisal process, Defendants produced so-called 'appraisal reports' which were not legitimate opinions of value.  Rather, they were reports of a predetermined value that favored Countrywide's cause of rapidly closing loans."  (*Id.* ¶ 10.)

Moreover, adding insult to injury, Defendants required borrowers to *pay* hundreds of dollars for these uniformly prepared inflated USPAP "appraisals."  (*Id.* ¶ 11.)  Indeed, Plaintiff unknowingly paid $720 for two fraudulent "appraisals," which were conducted on or around July 22, 2004 and July 3, 2007 pursuant to Defendants' scheme.  (*Id.* ¶¶ 58, 60-66, 68-75, 77.)  Had Plaintiff and members of the Class been aware of Defendants' uniform, systematic manipulation, they would not have paid for the manipulated and inflated "appraisals."  (*Id.* ¶ 106.)

### III.   DEFENDANTS CONFLATE STANDARDS OF PLEADING WITH PROOF

As the Supreme Court has explained, the issue on a motion to dismiss is "whether the claimant is entitled to offer evidence to support the claims," not "whether a plaintiff will ultimately prevail." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.* Instead, a Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2011). And, in evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Ultimately, a plaintiff need only plead those details necessary to allow a defendant to prepare an answer and "defend against the charge[s]." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009).

Applying this standard, a complaint will survive a Rule 12(b)(6) motion as long as it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). A complaint must proceed if a plaintiff's theory is but *one* plausible interpretation of the facts alleged. *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101, 182 L. Ed. 2d 882 (2012) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).")

### IV.   DISCUSSION

#### A.   Plaintiff Adequately Alleges an Enterprise under RICO

A RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Newcal Indus., Inc. v. IKON Office Solution*, 513 F.3d 1038, 1056 (9th Cir. 2007) (quoting 18 U.S.C. § 1961(4)). As the Ninth Circuit noted in *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007), this definition of an enterprise is "not very

demanding." *Id.* at 548; *see also Boyle v. United States*, 556 U.S. 938, 944, 129 S. Ct. 2237, 173 L. Ed. 2d 1265 (2009) ("[T]he very concept of an association in fact is expansive.").

Nevertheless, Defendants argue that Plaintiff fails to adequately allege an enterprise, because, according to Defendants, (1) a parent corporation and its subsidiaries cannot form an associated-in-fact RICO enterprise (*see* Mot. at 6:28 - 8:11), and (2) the TAC does not sufficiently identify the role played by each defendant, (*see* Mot. 8:12 - 9:1). As set forth below, both of these arguments are meritless.

### i. Under Applicable Supreme Court and Ninth Circuit Precedent, a Parent Corporation and Its Subsidiary Can Form a RICO Enterprise

Defendants argue that members of a corporate family cannot constitute a RICO enterprise. (Mot. at 6: 28 - 7:7, 7:19 - 8:2.) To support of this argument, Defendants exclusively rely on *In re Countrywide Fin. Corp. Mortgage-Backed Securities Litig.* ("*In re CFC MBS Litig.*"), 2012 U.S. Dist. LEXIS 184429 (C.D. Cal. June 29, 2012). Critically, however, in making their argument, Defendants downplay the fact that the *In re CFC MBS Litig.* court was addressing a violation of ***Ohio law*** and the *In re CFC MBS Litig.* court relied exclusively on ***Sixth Circuit precedent*** to reach its holding:

> Cause of Action Six alleges a violation of the Ohio Corrupt Activities Act ("OCAA"), Ohio Rev. Code §§ 2923.31-36. . . . The parties agree that the Court should look to federal law for interpretation of the OCAA. They disagree as to which Circuit's precedent is most helpful. The Court is interpreting an Ohio law. Ohio courts, though not bound by decisions from courts within the Sixth Circuit, frequently cite such decisions and would likely find them more persuasive than decisions from outside the Sixth Circuit. The Court therefore gives preference to decisions from within the Sixth Circuit in the OCAA portion of this Order.

*Id.* at *25-28. Because the *In re CFC MBS Litig.* court's holding was based entirely on inapplicable Sixth Circuit law, it is inapposite to the current matter.

More importantly, the Sixth Circuit law applied in *In re CFC MBS Litig.* is inconsistent with Ninth Circuit precedent bearing on this issue. To this end, in *U.S. v.*

*Benny*, 786 F.2d 1410 (9th Cir. 1986), *cert. denied*, 479 U.S. 1017 (1986), the Ninth

Circuit addressed a Section 1962(c) cause of action naming the owner of a sole

proprietorship as the "person" and his sole proprietorship as the "enterprise" with which

he "associated." *See id.* at 1414-16.  The Ninth Circuit recognized that if the single

proprietor had no employees, a Section 1962(c) claim might not be available.  *Id.* at 1415.

However, the *Benny* court reasoned that if the alleged "enterprise" had been a *corporation*

and the "person" a *sole shareholder*, that individual would not have been shielded from

liability under RICO:

> Concededly, the distinction wears thin when one considers that a
> sole shareholder of a corporation would, under the language of
> the statute, be able to "associate" with that corporation.
> However, such a corporate "one-man band" does receive some
> legal protections from the corporate form, and it is this sort of
> legal shield for illegal activity that Congress intended RICO to
> pierce.   While a sole proprietorship with employees or
> associates does not receive similar legal protections "the only
> important thing is that [the enterprise] be either formally (as
> when there is a corporation) or practically (as when there are
> other people beside the proprietor working in the organization)
> separable from the individual."

*Id.* at 1416 (quoting *McCullough v. Sutter*, 757 F.2d 14, 143-44 (7th Cir. 1985)).

Accordingly, the Ninth Circuit held that the owner of a company was "distinct" from the

company for purposes of Section 1962(c).  *Id.* at 1416 (expressly adopting the Seventh

Circuit's analysis in *McCullough* as the rule in the Ninth Circuit).  Therefore, a parent

company and its subsidiary can be associated together to form an enterprise under RICO.

Later, in *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992), the Ninth

Circuit considered a complaint alleging that Alaska Pulp Corporation ("APC") was the

enterprise and the individual officers and employees of APC were the "persons" under

RICO.  *Id.* at 1534.  The Ninth Circuit cited its prior reasoning in *Benny*, and ultimately

held that the officers and employees were "distinct" from the corporation itself,

notwithstanding "the inability of the corporation to operate except through its officers."

*Id.*; *see also River City Markets, Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461 (9th

Cir. 1992) (holding that "an individual cannot associate or conspire with himself" but

"can associate with a group of which he is a member, with the member and the group remaining distinct entities").

The Ninth Circuit's holding in *Sever* is consistent with *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) ("*Cedric Kushner*"), where the U.S. Supreme Court held that Section 1962(c) applies "when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner -- whether he conducts those affairs within the scope, or beyond the scope, of corporate authority." *Id.* at 166.  As the Supreme Court explained, "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status.  And we can find nothing in the statute that requires more 'separateness' than that." *Id.* at 163 (citing *McCullough*, 757 F.2d at 144).

Relying on *Cedric Kushner* and *Sever*, a California district court recently held that a "corporate parent is distinct from its corporate subsidiary such that one may be 'associated with' the other for purposes of a claim under 18 U.S.C. section 1962(c)." *See Watts v. Allstate Indem. Co.*, 2009 U.S. Dist. LEXIS 56275, at *18 (E.D. Cal. June 30, 2009).  In reaching this holding, the *Watts* court explained that:

> [*Cedric Kushner*] held that the only distinctiveness required was "a legally different entity with different rights and responsibilities due to its different legal status." *Sever* adopted a similar test, and held that formal distinctiveness was itself sufficient, regardless of whether there was also practical separation.  A separately-incorporated subsidiary satisfies the tests articulated by both [*Cedric Kushner*] and *Sever*.

*Id.* at *16-18.

Citing *Watts*, in *Negrete v. Allianz Life Ins. Co. of N. Am.*, 926 F. Supp. 2d 1143 (C.D. Cal. 2013), this Court held that plaintiffs properly alleged Allianz Life Insurance Company of North America, Inc. ("Allianz") formed an enterprise with 19 subsidiaries and affiliated companies in order to "induce class members to purchase deferred annuities issued by Allianze by means of misleading statements and omissions regarding the value of those annuities." *Id.* at 1145, 1151 (reviewing Ninth Circuit precedent and citing *Watts*, 2009 U.S. Dist. LEXIS 56275, at *6).  According to the *Negrete* court, the "formal

separation" between Allianz and the other 19 corporate entities "[was] alone sufficient to support a finding of distinctiveness" for purposes of RICO.  *Id.*

*Negrete* and *Watts* are not alone in holding that a parent corporation and its subsidiaries can form an associated-in-fact RICO enterprise.  Critically, in *In re Countrywide Fin. Corp. Mortgage Mktg. & Sales Practices Litig.*, 601 F. Supp. 2d 1201 (S.D. Cal. 2009) ("*In re Countrywide*") -- a case upon which Defendants rely on in their motion (*see* Mot. at 7:12-19) -- the district court that held that plaintiffs properly alleged an associated-in-fact enterprise comprised of "(1) ***Countrywide*** and (2) ***Countrywide's subsidiaries, including its LandSafe loan closing services subsidiaries***."[1]  *Id.* at 1213 (emphasis added).

In reaching this holding, the *In re Countrywide* court stopped short of adopting a *per se* rule that a parent corporation is distinct from its subsidiary.  Instead, it held that a plaintiff must allege "something more" than formal legal separation to satisfy the distinctiveness requirement.  *Id.* at 1214.  The *In re Countrywide* court ultimately held that plaintiffs' allegations satisfied this "something more" test:

> Without conceding that [the "something more" test] is the proper test for distinctiveness, Plaintiffs assert that their allegations satisfy this test.  They specifically rely on their allegations that: participation by the LandSafe subsidiaries in the Countrywide Enterprise allows the enterprise to function more effectively, given that many of the functions provided by these entities, such as appraisals, would normally be conducted by independent entities.  LandSafe's participation in the enterprise allows the normal checks and balances within the mortgage process to be eliminated, permitting Defendants to advance their scheme and conceal the fraudulent activity they have been engaging in.
>
> These allegations . . . satisfy the "something more" test. . . . Plaintiffs allege that the decision to operate through the Landsafe Defendants [i.e. LandSafe, Inc. and LandSafe Appraisal Services, Inc.] facilitated the activity of the

---

[1] The defendants in *In re Countrywide* included many of the Defendants in this case, including, among others, Countrywide Financial Corp., Countrywide Bank, FSB, Countrywide Home Loans, Inc., LandSafe, Inc., LandSafe Appraisal Services, Inc., and Bank of America Corp.  *See In re Countrywide*, 601 F. Supp. 2d at 1207.

> enterprise by removing a potential for "checks and balances" from the loan process.  Plaintiffs also allege that each individual in the Countrywide Enterprise had a distinct role. . . . These allegations satisfy the distinctiveness requirement, and are sufficient to withstand Defendants' motion to dismiss.

*Id.* at 1214-15 (internal citations omitted).  As discussed below, Plaintiff's allegations comport with the "something more" test.

### ii.   Plaintiff Adequately Alleges that Defendants Formed an Associated-in-Fact Enterprise

This is ***not*** a case where Plaintiff is attempting to merely hold Countrywide liable for "act[s] of corporate malfeasance" committed solely by its subsidiaries, as Defendants incorrectly suggest in their motion.  (Mot. at 8:12-27.)  To the contrary, the TAC goes into significant detail concerning the specific role that ***each member*** of the alleged Countrywide Enterprise played in the 5-year long fraudulent appraisal scheme.  (*See* TAC ¶¶ 1-3, 6-9, 32, 34, 46, 48-57.)  Accordingly, whether the Court applies *Watts* and *Negrete*, or the "something more" test adopted in *In re Countrywide*, it is indisputable that Plaintiff has properly alleged a "distinct" RICO enterprise.

As an initial matter, the TAC alleges that, from 2003 through 2008, "Countrywide originated mortgages through its retail operations, primarily branded as 'Countrywide Home Loans,' where Countrywide acted as the loan broker (through Countrywide Home Loans) and the lender (through Countrywide Bank)."  (TAC ¶ 46.)  Plaintiff further alleges that "LandSafe Appraisal is a wholly-owned and controlled subsidiary of LandSafe, Inc. with shared management and employees, and purports to offer appraisal services in connection with mortgage loan closings."  (*Id.* ¶ 34.)  Under *In re Countrywide*, this alone would be sufficient to identify each member's "distinct role" in the Countrywide Enterprise.  *See In re Countrywide*, 601 F. Supp. 2d at 1213.  Countrywide originated the loans and LandSafe provided the fraudulent appraisal services.

Additionally, as in *In re Countrywide*, Plaintiff  specifies how the Landsafe subsidiaries allowed the Countrywide Enterprise to operate more effectively by removing the "checks and balances" normally provided by independent appraisal entities:

> [T]o further address the "problem" of "independent" appraisers impeding Countrywide's ability to rapidly originate and sell loans, Countrywide targeted and developed an affiliation with Landsafe. Through Landsafe, Countrywide could (1) use its market size to pressure appraisers to disregard the appraisal "independence" requirements and permit Countrywide to rapidly close a loan; (2) punish appraisers who refused to "play ball;" and (3) use fraudulent appraisal "reviews" to revise legitimate appraisals to arrive at values needed to close a loan.

(*Id.* ¶ 48.)

Plaintiff further alleges that the Countrywide Enterprise was operated according to "policies and procedures established by Countrywide and LandSafe's excecutives," including:

> refusing to utilize bona fide appraisers; paying above-market fees to those appraisers who disregarded the appraisal 'independence' requirements and manipulated the market values of subject properties; rewarding appraisers who produced manipulated appraisals; blacklisting, retaliating against, and firing appraisers who refused to engage in such corrupt conduct; requiring appraisers to rely upon information outside the relevant market to justify manipulated valuations in appraisals; and providing appraisers with false sales information and comparables to ensure the production of inflated appraisals.

(*Id.* ¶ 116.)

These and other allegations are supported by the previously sealed *qui tam* complaint brought by whistleblower Kyle Lagow. (*Id.* ¶ 49.) Mr. Lago was an employee of LSI from 2004 to 2008, where he served as a Field Valuation Manager, then Area Manager, and ultimately Assistant Vice President. (*Id.*) During his tenure at LSI, Lagow was personally "involved in communications between Countrywide loan originators, through LandSafe, to fee appraisers," and "had direct exposure to the false statements, records and/or claims made by LandSafe, its affiliate Countrywide Home Loans, FSB, Countrywide Bank and their parent Countrywide Financial." (*Id.* ¶¶ 51, 54-56.) Lagow also "witnessed first-hand Defendants' corruption of the appraisal process in a variety of ways," including:

- "knowingly and fraudulently inflating, and causing inflation of property appraisals on, among others, FHA-backed loans";

Case No.: 2:13-cv-08833-CAS

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

- "refusing to supply bona fide appraisers with documents and other materials necessary for appraisals";

- "paying above-market fees to those appraisers who disregarded the appraisal independence requirements in contravention of the law";

- "rewarding appraisers who produced corrupt appraisals and appraisal reviews at a rate of as many as 400 per month";

- "blacklisting, retaliating against, auditing, and firing appraisers who refused to corrupt their appraisal reports in contravention of the law";

- "requiring appraisers to rely upon information outside the relevant market to justify manipulated valuations in the subject appraisals";

- "providing appraisers with false sales information, not reflecting concessions made by sellers at the time of closing, further corrupting the use of comparables to complete legitimate appraisals"; and

- "retaliating against persons who questioned or criticized the pattern and practice of preparing illegitimate appraisals."

(*Id.* ¶ 51)

Taking these detailed factual allegations as true,[2] there can be no real argument that Countrywide and Landsafe were "engaged in nothing more than a legitimate corporate and financial relationship" and merely conducting their "usual business activities," as Defendants suggest. (*See* Mot. at 8:3-27.)

Nor can Defendants credibly contend that Plaintiff fails to sufficiently identify BofA's "specific alleged conduct in the enterprise." (Mot. at 8:24) In making this argument, Defendants seem to ignore allegations in the TAC that that BofA ***continued*** the fraudulent scheme after it acquired ownership of the other members of the enterprise. (TAC ¶ 32 ("BofA also continued the conduct alleged herein ***after*** its acquisition of

---

[2] In reviewing Defendants' motion to dismiss, the Court must: (1) construe the Complaint in the light most favorable to Plaintiff; and (2) accept all well-pled allegations in the Complaint as true. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337 (9th Cir. 1996).

Countrywide in July 1, 2008 through the end of the class period on December 31, 2008.'"))

Plaintiff further alleges that:

> [a]ccording to Lagow, just prior to his termination *in late 2008* [after BofA acquired the Countrywide entities], he learned of a formal internal audit . . . [which] found that the appraisals conducted by LandSafe were pre-textual, and the appraisal reports *always* communicated an inflated value necessary for Countrywide to close a loan. Despite these audit results, *LandSafe continued its uniform practice of systematically preparing and charging for illegitimate appraisals* . . .

(*Id*. ¶ 57 (emphasis added).)  The fact that BofA was affiliated with the enterprise after it acquired the Countrywide entities simply cannot be disputed.

Therefore, the factual allegations in the TAC indisputably meet the more stringent "something more" test set forth in *In re Countrywide*. *See In re Countrywide*, 601 F. Supp. 2d at 1214-15.  Defendants' challenge to Plaintiff's RICO enterprise allegations must be denied.

## B.    Plaintiff Adequately Alleges her RICO Conspiracy Claim

Defendants erroneously contend that because Plaintiff's Section 1962(c) RICO claim fails, Plaintiff's claim RICO conspiracy claim under Section 1962(d) also must fail. (Mot. at 9:7-11.)  For the reasons discussed above, this argument fails -- Plaintiff alleges her RICO claims with sufficient specificity.  *See* Section IV.A., *supra*.

## C.    Plaintiff's Common Law Fraud and RICO Claims Are Pled with Sufficient Particularity under Rule 9(b)

### i.    Defendants Previously Asserted the Same Argument it Asserts Here and Plaintiff's Allegations in the TAC Resolve the Deficiencies Identified by the Court in its Prior Order

Defendants argue that, under Rule 9(b), Plaintiff's fraud and RICO claims against "CFC, LSI, BAC and BANA" must be dismissed because:

> Plaintiff does not allege how CFC, LSI, BAC and BANA <u>each</u> made representations and concealments as to the use of the appraisals and the charging of the appraisals.  She does not identify a single employee of CFC, LSI, BAC and BANA who purportedly made any specific verbal or written misrepresentation to Plaintiff or to any putative class member.

(Mot. at 10:21-25 (emphasis in original, internal citations omitted).)

Defendants previously made this same argument, word-for-word, in their motion to dismiss Plaintiff's Second Amended Complaint.[3]  In response, the Court, in its October 6, 2014 Order (Dkt. 45), identified the issues and provided direction with respect to how they could be resolved.  Specifically, the Court explained that:

> [P]laintiff has not identified the specific corporate individuals who made the representations regarding the appraisals and the authority of those individuals to make such representations. Plaintiff resists this conclusion, and cites <u>Moore v. Kayport Package Exp., Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989), for the proposition that the requirements of Rule 9(b) are relaxed in cases of corporate fraud where "plaintiffs will not have personal knowledge of all the underlying facts."  The Court does not doubt that some of the underlying facts are exclusively "within the opposing party's knowledge," and thus cannot be pled by plaintiff with particularity at this juncture.  *However, plaintiff does not explain why the identities of the LandSafe appraisers and Countrywide employees who allegedly transmitted the appraisals to plaintiff are not within her personal knowledge.*  Accordingly, the Court finds that plaintiff has not pled her common law fraud and RIC claims with sufficient particularity.

(Dkt. 45 at 8 (emphasis added, internal citations omitted).)  In other words, in response to Defendants' particularity argument, the same argument it now assets again, the Court explained that Plaintiff needed to (1) "identif[y] the specific corporate individuals who made the representations regarding the appraisals and the authority of those individuals to make such representations" or (2) "explain why the identities of the LandSafe appraisers and Countrywide employees who allegedly transmitted the appraisals to plaintiff are not within her personal knowledge."  In the TAC, Plaintiff has done precisely that.

Plaintiff now alleges that, in connection with the purchase of her home in 2004, she "dealt primarily with Countrywide loan officer Shawna Oakley, though Plaintiff also received communications from Ms. Oakley's colleagues and/or staff who did not identify

---

[3] *See* Dkt. 39 (Motion to Dismiss SAC) at 9:6-10 ("Plaintiff does not allege how <u>each</u> of the Defendants made representations and concealments as to the use of the appraisals and the charging of the appraisals.  She does not identify a single employee of any of the Defendants who purportedly made any specific verbal or written misrepresentation to Plaintiff or to any putative class member.") (emphasis in original, internal citations omitted).

themselves by name." (TAC ¶ 58.)  When she applied to refinance her home through CHL, Plaintiff "dealt with Countrywide loan officers or agents Kerry Hunt and Christopher Rollman." (*Id.* ¶ 68.)  Plaintiff further alleges that, as part of the fraudulent appraisal scheme at issue in this case, each of these Countrywide loan officers or agents was "authorized by Countrywide" to provide, and, in fact, did provide, "Plaintiff with loan-related documents, including a loan application, Disclosure Statements, Good Faith Estimates, HUD-1 Settlement Statements, appraisals, and other loan-related documents, which contained the misrepresentations and omissions at issue in this case." (*Id.* ¶¶ 58, 60-62, 64, 68-70, 72-73.)  Plaintiff also alleges that the 2004 Appraisal was prepared and transmitted to her by "Landsafe, through its agents, including Barry Johnson of William & Stuart Appraisal Corporation," and that the 2007 Appraisal was prepared and transmitted to her by "Landsafe, through its agents, including Landsafe Senior Appraiser David K. Dotson." (*Id.* ¶¶ 63-64, 71-72.)

Consistent with the Court's October 6, 2014 Order, these detailed factual allegations are sufficient for Plaintiff to "[plead] her common law fraud and RICO claims with sufficient particularity." (Dkt. 45 at 8.)  Accordingly, Defendants' motion to dismiss must be denied.

### ii. Plaintiff Adequately Alleges her Claims against Defendants

Notwithstanding the above, Defendants' motion also must be denied because the TAC alleges, in detail, the specific "wrongdoing" of each member of the Countrywide Enterprise in connection with the 5-year long fraudulent appraisal scheme.  (*See* TAC ¶¶ 1-3, 6-9, 32, 34, 46, 48-57.)  But, turning a blind eye to Plaintiff's detailed factual allegations, Defendants argue that Plaintiff's claims against "CFC, LSI, BAC and BANA" must be dismissed for lack of specificity under Rule 9(b).  (Mot. at 9:14 - 11:2.)

As a threshold matter, Defendants' argument must be denied because it improperly conflates standards of pleading with proof.  "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge

and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Courts have made it clear that although Rule 9(b) imposes a more exacting standard for pleading fraud, it does not require a plaintiff to allege every conceivable detail. The Ninth Circuit has explained that courts "cannot make Rule 9(b) carry more weight than it was meant to bear." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Instead, Rule 9(b) "must be read in harmony with Fed. R. Civ. P. 8's requirement of a 'short and plain' statement of the claim." *Baas v. Dollar Tree Stores, Inc.*, 2007 U.S. Dist. LEXIS 65979, at *5 (N.D. Cal. Aug. 29, 2007). *See also*, *Schlagal v. Learning Tree Int'l.*, 1998 U.S. Dist. LEXIS 20306, at *25 (C.D. Cal. Dec. 23, 1998) ("The Court must strike a careful balance between insistence on compliance with demanding pleading standards and ensuring that valid grievances survive.")

Ignoring this Ninth Circuit precedent, Defendants argue that the TAC is deficient, because "Plaintiff does not allege how CFC, LSI, BAC and BANA each made representations and concealments as to the use of the appraisals and the charging of the appraisals." (Mot. at 10:21-23 (emphasis in original).) In so arguing, Defendants overlook the fact that where, as here, the fraud consists of omissions and fraudulent concealment, "a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) ("[A] fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim."). As a result, courts have held that "[i]t is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly when the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the [defendants]." *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1120 (9th Cir. 2005); *see also Terra Ins. Co. v. New York Life Inv. Mgmt.*, 2009 U.S. Dist. LEXIS 67102 at *7 (N.D. Cal. July 30, 2009) (explaining that, "[i]n cases of corporate fraud . . . the

pleading standard is relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to each defendant as an individual").

Numerous other cases support Plaintiff's position.  Defendants demand far beyond what is required, and Plaintiff need not allege more than she has.  For example, in *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896 (N.D. Cal. 2008), "[d]efendants also argue[d] even if [p]laintiffs' overall allegations are sufficient to survive a motion to dismiss, the complaint should be dismissed because [p]laintiffs have failed to allege how each individual [d]efendant participated in the alleged conspiracy." *Id.* at 904.  Denying this argument, the court held:

> [d]efendants' arguments fail because they rely upon the standard for a motion for summary judgment.  Although [p]laintiffs will need to provide evidence of each [d]efendants' participation in any conspiracy, they now only need to make allegations that plausibly suggest that each [d]efendant participated in the alleged conspiracy.

*Id.  See also, Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (in order to state a plausible claim under Rule 8, a plaintiff need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Defendants are well aware of the factual background giving rise to Plaintiff's claims.  As alleged by Plaintiff, Defendants litigated with the United States concerning these issues for many years in a sealed case pending in the Eastern District of New York. (*See*, *e.g.*, TAC ¶¶ 49-57.)  Requiring Plaintiff to plead facts which are unknown to Plaintiff, but well known to Defendants, puts form over substance.  Defendants indisputably are aware of the charges against them.

Apparently ignoring Plaintiff's new allegations concerning the identity of the Countrywide and Landsafe employees Plaintiff dealt with, Defendants still argue that, by failing to identify the specific Countrywide or LandSafe *employees* who were responsible for the alleged corporate fraud, the TAC is deficient under Rule 9(b).  (Mot. at 8:17-24, 9:6-10, 19-22.)  But, again, this argument, mistakenly assumes that there is a heightened

pleading standard in a fraud action against a corporation where Plaintiff, at the pleading stage, does not know the identity of all of the corporate players. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (explaining that the requirements of Rule 9(b) are "*relaxed* 'in cases of corporate fraud' where 'plaintiffs will not have personal knowledge of all of the underlying facts'") (emphasis added). Moreover, where, as here, Defendants familiar with the allegations and Plaintiff's claims are "apparent and sufficient to put [D]efendants on notice of the claims against them," the fact that the SAC does not reference each Defendant's specific corporate officers does not render the SAC deficient under Rule 9(b). *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1096 (N.D. Cal. 2010).

In the end, Defendants simply cannot explain how Plaintiff's detailed factual allegations leave them unable to "defend against the charge[s]" or "prepare an adequate answer from the allegations." *Kearns,* 567 F.3d at 1124; *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866 (9th Cir. 1977) (citations omitted). Accordingly, if the Court considers the merits of Defendants' verbatim Rule 9(b) argument once again, then it should nevertheless deny the motion.

### D. Consistent with the Court's Previous Rulings, There Is No Basis to Dismiss Plaintiff's Unjust Enrichment and UCL Claims

Defendants contend that "the unjust enrichment and derivative UCL claims against CFC, LSI, BAC and BANA . . . fail as a matter of law," because Plaintiff purportedly fails to allege a "distinct RICO enterprise against Defendants." (Mot. at 10 n. 4.) As an initial matter, Plaintiff has, in fact, sufficiently alleged that Defendants formed an associated-in-fact RICO enterprise. *See* Section IV.A.ii., *supra.* More importantly, in its October 10, 2014 Order (the "Order"), this Court already held that, although Plaintiff's RICO allegations were not sufficiently pled, she had properly stated unjust enrichment and UCL claims against *all* Defendants. (Dkt. 45 (Order on Motion to Dismiss SAC) at 8-10.) As such, this Court should deny Defendants' motion to the extent it seeks dismissal of Plaintiff's unjust enrichment and UCL claims.

## V.   CONCLUSION

For each of the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss Plaintiff's TAC be denied in its entirety.  If this Court is inclined to grant any portion of the Defendants' Motion, Plaintiff requests leave to amend.  Leave to amend should be "freely granted when justice so requires."  Fed R. Civ. P. 15(a).

Dated:  December 15, 2014                  BARON & BUDD, P.C.

By:  /s/ Mark Pifko
Mark Pifko

Daniel Alberstone (SBN 105275)
Roland Tellis (SBN 186269)
Mark Pifko (SBN 228412)
Isaac Miller (SBN 266459)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:  (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiff
BARBARA WALDRUP, individually,
and on behalf of other members of the
public similarly situated