Robert E. Boone III, SBN 132780
Douglas A. Thompson, SBN 155619
Linda C. Hsu, SBN 239880
Richard P. Steelman, Jr., SBN 266449
**BRYAN CAVE LLP**
120 Broadway, Suite 300
Santa Monica, CA  90401-2386
Telephone:  (310) 576-2100 // Facsimile: (310) 576-2200
E-Mail:      reboone@bryancave.com
             douglas.thompson@bryancave.com
             linda.hsu@bryancave.com
             ricky.steelman@bryancave.com

Attorneys for Defendants
Countrywide Home Loans, Inc. (erroneously sued as "Countrywide Home Loans"); Countrywide Financial Corporation; Bank of America, N.A., as successor by April 27, 2009 de jure merger with Countrywide Bank, FSB (formerly known as Countrywide Bank, N.A.); Bank of America Corporation; LandSafe, Inc.; and LandSafe Appraisal Services, Inc. (now known as "CoreLogic Valuation Solutions, Inc.") (erroneously sued as "Landsafe Appraisal Inc.")

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA WALDRUP, individually, and on behalf of other members of the general public similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, COUNTRYWIDE HOME LOANS, a New York corporation; COUNTRYWIDE BANK, N.A., a national association, BANK OF AMERICA CORPORATION, a Delaware corporation, LANDSAFE INC., a Delaware corporation; LANDSAFE APPRAISAL INC., a California corporation,<br><br>    Defendants.<br><br>ELIZABETH WILLIAMS, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*,<br><br>    Defendants. | Case No. 2:13-cv-08833-CAS-AGR (Lead Case)<br><br>(Consolidated with Case No. 2:16-cv-4166-CAS-AGR)<br><br>**DECLARATION OF PATRICK AMES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**<u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>** |

USA01\10490537.3

# DECLARATION OF PATRICK AMES

I, Patrick Ames, declare as follows:

1. From approximately February 2005 until September 2015, I worked at LandSafe Appraisal Services, Inc. (erroneously sued as "LandSafe Appraisal Inc." and now known as "CoreLogic Valuation Solutions, Inc.") ("LandSafe Appraisal") in various capacities including but not limited to Senior Vice President and Executive Vice President in appraisal production and review and President of LandSafe Appraisal. The facts set forth here are true based on my own personal knowledge. I submit this Declaration in support of Defendants' opposition to Plaintiffs Barbara Waldrup ("Plaintiff Waldrup"), Elizabeth Williams ("Plaintiff Williams"), Beckie Reaster ("Plaintiff Reaster"), and Rebecca Murphy's ("Plaintiff Murphy") (collectively, "Plaintiffs") Motion for Class Certification filed on August 28, 2017.

2. As part of my job responsibilities, I am familiar with LandSafe Appraisal's appraisal policies and procedures, appraisal compliance requirements, and its general appraisal review guidelines and requirements. As part of my job responsibilities, I also know that as part of the regular course of its business, LandSafe Appraisal maintained appraisal information and images of documents related to appraisal orders in its document database called LSO. The information in LSO was recorded in the regular course of LandSafe Appraisal's business of conducting appraisals and appraisal reviews. LSO includes, among other things, information on appraisal orders. I know that pursuant to LandSafe Appraisal's policies and procedures, the information in LSO is recorded at or near the time of the acts, events, or conditions that are being recorded. Additionally, I know that pursuant to LandSafe Appraisal's policies and procedures, images of documents are scanned into LSO's document databases without alteration at or near the time they are generated or received.

3. I have reviewed the applicable appraisals at issue on Plaintiffs' homes

as identified in Plaintiffs' lawsuits (Case Numbers 2:13-cv-08833-CAS-AGR and 2:16-cv-4166-CAS-AGR), including the 2004 appraisal and 2007 appraisals on Plaintiff Waldrup's property located at 15313 Kingfield Drive, Houston, Texas (the "Waldrup Property"), the 2007 appraisal on Plaintiff Williams' property located at 109 Henry Clark Lane, Richmond, CA 94801 (the "Williams Property"), the 2006 appraisal on Plaintiff Reaster's property located at 3365 Pegaso Avenue, New Smyrna Beach, FL 32168 (the "Reaster Property"), and the 2007 appraisal on Plaintiff Murphy's property located at 640 Mount Olympus Boulevard, New Smyrna Beach, FL, 32168 (the "Murphy Property"). True and correct copies of the aforementioned appraisals are attached hereto as **Exhibit A**.

  4. Based on my review of the 2004 appraisal on the Waldrup Property, LandSafe Appraisal had no involvement in selecting the appraiser, assigning the appraisal, or receiving the 2004 appraisal for the property that Plaintiff Waldrup wished to purchase. Instead, the appraisal indicates it was performed by Barry Johnson of William & Stuart Appraisal Corporation appraisal company.

  5. LandSafe Appraisal performed a Desk Review of the 2004 Barry Johnson appraisal relating to the Waldrup Property. Countrywide Home Loans, Inc.'s ("CHL") Full Spectrum Lending ("FSL") Division required LandSafe Appraisal to perform a Desk Review when an appraisal was neither performed by nor obtained through LandSafe Appraisal. A Desk Review is not an appraisal, but is instead a quality control procedure to determine if the proper procedures appears to have been followed and if the comparable sales appear to support the appraiser's valuation. A true and correct copy of the Desk Review in connection with the Waldrup Property is attached hereto as **Exhibit B**.

  6. Based on my review of the 2007 appraisal on the Waldrup property, LandSafe Appraisal appraiser David Dotson conducted the aforementioned 2007 appraisal. Mr. Dotson's appraisal estimated a $98,000 value to the Waldrup Property. A true and correct copy of Mr. Dotson's 2007 appraisal on the Waldrup

1  Property is attached hereto as **Exhibit C**.

2      7.    I never was asked by Todd Baur, President of LandSafe Appraisal, to
3  violate or assist in the violation of any provision of the Uniform Standards of
4  Professional Appraisal Practice (also known as "USPAP"). I never agreed with
5  Todd Baur to violate or assist in the violation of any provision of the USPAP.

6      8.    I never asked David Mentesana, Senior Vice President of LandSafe
7  Appraisal Governance, to violate or assist in the violation of any provision of the
8  USPAP. I never agreed with David Mentesana to violate any provision of the
9  USPAP.

10      9.    I never asked Tracy Sanderson, one of my departmental direct report
11  managers, to violate or assist in the violation of any provision of the USPAP. I never
12  agreed with Tracy Sanderson to violate any provision of the USPAP. Nor did I ask
13  any other member of my direct reporting team or any member of my LandSafe
14  Appraisal appraisal production department to do so.

15      10.    I never conspired with, nor did I agree with, any CHL employee to
16  violate any provision of USPAP. I never agreed with any CHL employee to violate
17  any provision of USPAP. In short, I did not agree with any individual to prepare
18  unlawful appraisals in violation of USPAP.

19      11.    I never conspired with Todd Baur, David Mentesana or any other
20  LandSafe Appraisal employee to inflate the appraised values on appraisals
21  conducted by LandSafe Appraisal. I never conspired with, nor did I agree with, any
22  CHL employee to inflate the appraised values on appraisals conducted by LandSafe
23  Appraisal. I never conspired with, nor did I agree with, anyone to inflate the
24  appraised values on appraisals conducted by LandSafe Appraisal.

25      12.    As part of my job responsibilities at LandSafe Appraisal, I had over
26  400 employees whom I supervised or who reported to me. I never instructed my
27  direct reports to inflate appraisal values or to violate USPAP. I never instructed any
28  LandSafe Appraisal employee to inflate appraisal values or to violate USPAP. I

always instructed my direct reports and employees to work with David Mentesana and LandSafe Appraisal leadership to comply with USPAP and appraisal compliance because appraisal compliance and governance review were critical to the success and integrity of LandSafe Appraisal.

13. As part of my job responsibilities at LandSafe Appraisal, I know that LandSafe Appraisal did not knowingly and fraudulently inflate, or cause inflation of property appraisals.

14. As part of my job responsibilities at LandSafe Appraisal, I know that LandSafe Appraisal did not refuse to supply appraisers with documents and other materials necessary for appraisals.

15. As part of my job responsibilities at LandSafe Appraisal, I know that LandSafe Appraisal did not purposefully provide appraisers with false and/or incomplete sales information.

16. As part of my job responsibilities at LandSafe Appraisal, I know that LandSafe Appraisal did not purposefully require appraisers to rely upon information outside the relevant market.

17. As part of my job responsibilities at LandSafe Appraisal, I know that LandSafe Appraisal required fee panel appraisers to comply with USPAP and to acknowledge they would do so in acknowledging any LandSafe Appraisal assignment. A copy of a LandSafe Appraisal engagement letter for a 1004 appraisal report is attached as **Exhibit D**

18. As part of my job responsibilities at LandSafe Appraisal, I did not ask any fee panel appraiser to disregard her/his independence. I did not authorize, and do not believe, that LandSafe Appraisal ever paid above-market fees to appraisers in exchange for any supposed disregard of the appraiser's independence.

19. As part of my job responsibilities at LandSafe Appraisal, I did not ask any fee panel appraiser to corrupt his or her appraisal reports or specifically reach any predetermined value. As part of my job responsibilities at LandSafe Appraisal, I did not blacklist, retaliate against, audit or fire any appraisers who supposedly refused to corrupt his or her appraisals. I do not believe that LandSafe Appraisal did any of these supposed practices either.

20. As part of my job responsibilities at LandSafe Appraisal, I know that LandSafe Appraisal required its appraisals to be USPAP compliant.

21. As part of my job responsibilities at LandSafe Appraisal, I attended meetings with Todd Baur and David Mentesana. Mr. Baur and Mr. Mentesana never instructed me nor any other LandSafe Appraisal employees in the meetings to violate USPAP. Mr. Baur and Mr. Mentesana never instructed me or any other LandSafe Appraisal employee to inflate appraised values.

22. During my employment with LandSafe Appraisal and specifically during the 2003 through 2008 time frame, I never enacted any policy at LandSafe Appraisal or CHL. Specifically, I never enacted any appraisal policy allowing CHL, LandSafe Appraisal or any individual to exert pressure on appraisers to meet minimum values.

23. 

24.

USA01\10490537.3

5

DECLARATION OF PATRICK AMES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10 25.
11
12
13
14
15
16
17
18
19 26.
20
21
22
23
24
25
26
27
28     27. As part of my job responsibilities at LandSafe Appraisal and as a

USA01\10490537.3      6

DECLARATION OF PATRICK AMES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

licensed appraiser, I know that for each appraisal transaction ordered by LandSafe Appraisal, a number of individuals and/or personnel in addition to the appraiser would have had to agree to and taken affirmative steps to implement any supposed appraisal fraud. Such implementation did not occur.

28. As part of my job responsibilities at LandSafe Appraisal, I know that LandSafe Appraisal marketed its appraisal services to mortgage lenders like CHL. LandSafe Appraisal did not market any appraisals products to any consumer or borrower. LandSafe Appraisal had no direct business relationship with any of the Plaintiffs or any CHL borrower (or prospective borrower).

29. As part of my job responsibilities at LandSafe Appraisal, I know that LandSafe Appraisal managed the approved fee panel of third party appraisers. Among other things, LandSafe Appraisal vetted their qualifications and licensure. Once vetted and approved, LandSafe Appraisal monitored the fee panel appraisers work product quality.

30. As part of my job responsibilities at LandSafe Appraisal, I know that on occasion, LandSafe Appraisal lender clients might suggest the inclusion of certain appraisers on LandSafe Appraisal's panel. In such events, the lender could not place them directly on the LandSafe Appraisal panel. LandSafe Appraisal undertook its own process of vetting and approving the appraiser.

31. As part of my job responsibilities at LandSafe Appraisal, I know that LandSafe Appraisal's business goal was to enhance the overall quality of the appraisals on which affiliated lenders relied. LandSafe Appraisal also used various mechanisms to ensure the integrity of its products and compliance with USPAP, including a robust Governance department to monitor and address processes and individual issues. The Governance department was responsible for establishing and implementing a variety of policies and procedures concerning the substance of appraisals and the independence of the process. As part of my job responsibilities and my experience at LandSafe Appraisal, I also know that the senior vice president

of LandSafe Appraisal's Governance department was part of the executive team that reported directly to LandSafe Appraisal's president.

32. As part of my job responsibilities at LandSafe Appraisal, I know that appraisers who failed to meet performance standards were placed on the Unacceptable Vendor List ("UVL") to protect the business against recurring problems. The results of the Governance process were reported regularly to the Business Unit Risk Committee, whose members were executives who met to monitor these functions and metrics and to direct Governance on any adjustments.

33. 

34. Attached as **Exhibit E** are excerpts from a report generated by LandSafe Appraisal as part of its regular business reporting in the regular course of its business. I am familiar with the reports shown on LSA.352046 and LSA.352049 and the statistics they present.



I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 29th day of September, 2017, at Irvine, California.

Patrick Ames

USA01\10490537.3          9
DECLARATION OF PATRICK AMES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION