**[REDACTED] CIVIL MINUTES – GENERAL**           **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL<br>CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL<br>CORPORATION ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

Not Present                                          Not Present

**Proceedings:**      [REDACTED]  (IN CHAMBERS)

PLAINTIFFS' MOTION TO CERTIFY CLASS (Case No. 2:13-cv-08833, Dkt. 171; Case No. 2:16-cv-04166, Dkt. 58, filed August 28, 2017)

DEFENDANTS' MOTIONS TO STRIKE PORTIONS OF PLAINTIFFS' EXPERT REPORTS (Case No. 2:13-cv-08833, Dkts. 185, 186; Case No. 2:16-cv-04166, Dkts. 69, 70, filed August 28, 2017)

## I.     INTRODUCTION

In these consolidated putative class actions, plaintiffs Barbara Waldrup ("Waldrup"), Elizabeth Williams ("Williams"), Rebecca Murphy ("Murphy"), and Beckie Reaster ("Reaster")—on behalf of themselves and a proposed nationwide class of similarly situated home mortgagors—allege that defendants Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, N.A. (collectively, "Countrywide"), Bank of America Corporation ("BofA"), LandSafe Inc., and LandSafe Appraisal Services, Inc. (collectively, "LandSafe") engaged in a fraudulent appraisal scheme that charged each class member hundreds of dollars in fees for home appraisals that failed to comply with the Uniform Standards of Professional Appraisal Practice ("USPAP").

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Waldrup filed suit on November 27, 2013.  Following motions to dismiss, Waldrup filed her operative Third Amended Complaint ("TAC") on October 27, 2014, alleging five claims for relief: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (2) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (3) conspiracy to engage in racketeering in violation of RICO, 18 U.S.C. § 1962(d); (4) fraud; and (5) unjust enrichment.  On June 10, 2016, plaintiffs Williams, Murphy, and Reaster (collectively, the "Williams plaintiffs") filed their class action complaint against defendants alleging similar claims for relief.[1]  On November 14, 2016, the Court consolidated the Waldrup and Williams actions.  The Court denied defendants' motion to dismiss the Williams complaint on March 13, 2017.

On August 28, 2017, Waldrup and the Williams plaintiffs filed a joint motion for class certification.[2]  Dkt. 171 ("Mot.").  Although the complaints plead several state common law and statutory claims, plaintiffs are not seeking to certify a nationwide class based on any state law claim.  Rather, plaintiffs move to certify a single nationwide class based on their RICO claim, hereafter the "Nationwide RICO Class," defined as "[a]ll residents of the United States of America who, during the period January 1, 2003 through December 31, 2008, obtained an appraisal from LandSafe in connection with a loan originated by Countrywide."  Mot. at 12.  In addition, plaintiffs seek certification of a

---

[1] The Williams plaintiffs allege the following claims: (1) violation of RICO, 18 U.S.C. § 1962(c); (2) conspiracy to engage in racketeering in violation of RICO, 18 U.S.C. § 1962(d);  (3) violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"); (4) violations of California's UCL; (5) violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. ("FDUTPA"); and (6) unjust enrichment.  See Case No. 2:16-cv-04166, Dkt. 1 ("Williams Compl.").  On January 20, 2017, the Court dismissed the RESPA claim without prejudice pursuant to the parties' stipulation.

[2] The parties' moving papers are substantially identical.  For the sake of clarity and convenience, the Court refers to the relevant docket entries in the Waldrup action unless otherwise noted.

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

separate class limited to Texas residents to prosecute their claims for unjust enrichment under Texas law, hereafter the "Texas Unjust Enrichment Class," defined as "[a]ll residents of the State of Texas who, during the period January 1, 2003 through December 31, 2008, obtained an appraisal from LandSafe in connection with a loan originated by Countrywide." Id.

On October 2, 2017, defendants filed an opposition. Dkt. 182 ("Opp'n"). Defendants also filed objections to certain evidence proffered by plaintiffs in support of the class certification motion and moved to strike portions of the plaintiffs' expert reports. Dkts. 183, 185, 186. On November 13, 2017, plaintiffs filed a reply. Dkt. 208 ("Reply"). The Court held a hearing on December 4, 2017. Having carefully considered the parties' arguments, and all the documents and papers filed in support of and in opposition to the motion, the Court finds and concludes as follows.

## II.  BACKGROUND

Plaintiffs allege that defendants perpetrated a fraudulent appraisal scheme that allowed them to rapidly close home loans by circumventing their legal obligation to perform appraisals in accordance with USPAP's ethical and competency rules. Dkt. 46 ("Waldrup TAC") ¶ 1. Plaintiffs allege that in the course of obtaining home mortgages through Countrywide, they and members of the putative class were required to pay hundreds of dollars for appraisals performed by LandSafe that were represented to be compliant with USPAP. Id. ¶ 7, 11. However, plaintiffs allege that the appraisals failed to conform to USPAP as a result of a corrupt relationship between Countrywide and LandSafe and a series of companywide policies and practices that systematically violated USPAP standards. Id. ¶ 8–10.

### A.  Real Estate Appraisal Standards

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. §§ 3331 et seq. ("FIRREA") requires federally-insured financial institutions to obtain written appraisals that conform with USPAP in connection with any mortgage loans insured by the Fair Housing Administration ("FHA"). Waldrup TAC ¶ 38. Federal law requires such appraisals to be "performed in accordance with uniform standards, by individuals who have demonstrated competence and whose professional conduct is

**[REDACTED] CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

subject to effective supervision." Id. (quoting 12 U.S.C. § 1708(g)). The USPAP standards, which are incorporated into federal law, see 12 C.F.R. § 34.44, require appraisers to conduct their appraisals independently and competently. Id. ¶¶ 39, 43. "An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests." Id. ¶ 39 (quoting USPAP Ethics Rule). The USPAP Ethics Rule also provides that an appraiser must not accept an assignment, or have a compensation arrangement for an assignment, that is contingent on: (1) the reporting of a predetermined result (e.g., an opinion of value), (2) a direction in assignment results that favors the cause of the client, (3) the amount of a value opinion, (4) the attainment of a stipulated result, or (5) the occurrence of a subsequent event directly related to the appraiser's opinions and specific to the assignment's purpose. Id. ¶¶ 39, 41.

### B.    Alleged Fraudulent Appraisal Scheme

Countrywide Financial, and its subsidiaries Countrywide Home Loans and Countrywide Bank, originated mortgages through their retail operations, in which Countrywide Home Loans acted as the broker and Countrywide Bank acted as the lender. Id. ¶ 46. Countrywide Financial also formed a joint venture with KB Home known as Countrywide KB Home Loans ("Countrywide-KB"). Williams Compl. ¶ 41. On July 1, 2008, Countrywide Financial and its subsidiaries merged with BofA, which became a successor-in-interest to the Countrywide family of businesses, including Countrywide Financial, Countrywide Home Loans, Countrywide Bank, Countrywide Mortgage Ventures, LLC ("Countrywide Ventures"), and Countrywide-KB.[3] Id. ¶ 24.

As the real estate market grew during the early 2000s, Countrywide began loosening its underwriting efforts to rapidly close and sell loans on the secondary market. Plaintiffs allege that Countrywide viewed the appraisal process as an obstacle to its goal of originating as many mortgages as possible. Waldrup TAC ¶ 47. As part of the lending

---

[3] Plaintiffs identify KB Home, Countrywide Ventures, and Countrywide-KB as unnamed co-conspirators and members of the alleged RICO enterprise. Williams Compl. ¶¶ 38–41.

---

| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

transaction, Countrywide required borrowers to used LandSafe as its "approved" USPAP vendor. However, plaintiffs allege that "[i]n reality LandSafe was Countrywide's captive, wholly-owned subsidiary over which Countrywide exerted complete dominion and control, and through LandSafe, Countrywide controlled the process and outcome of the so-called USPAP appraisal, a fact not disclosed to prospective borrowers and homeowners." Id. ¶ 7. Plaintiffs allege that "through their uniform practice of systematically corrupting the appraisal process," defendants "produced so-called 'appraisal reports' which were *not* legitimate opinions of value" but rather "reports of a predetermined value that favored Countrywide's cause of rapidly closing loans." Id. ¶ 10 (emphasis in original).

## 1. LandSafe Whistleblower Allegations

Plaintiffs' allegations are based in part on a *qui tam* complaint filed under seal by Kyle Lagow ("Lagow") on May 13, 2009 against Countrywide, BofA, LandSafe and others pursuant to the False Claims Act, 31 U.S.C. § 3729, et seq. Mot., Declaration of Mark Pifko ("Pifko Decl."), Ex. 17. Lagow was employed by LandSafe from June 2004 through November 2008 at the company's Plano, Texas headquarters as one of the company's original supervisory home appraisers before being promoted to Field Valuation Manager, then Area Manager, and ultimately Assistant Vice President, Area Appraisal Manager. Waldrup TAC ¶¶ 34, 50. The *qui tam* complaint was unsealed on May 13, 2012, and Lagow's allegations were incorporated into the complaints in this case. See Waldrup TAC ¶¶ 48–57; Williams Compl. ¶¶ 54–63. [REDACTED]

Lagow alleges that Countrywide addressed the problem of "independent appraisals" impeding its ability to rapidly originate mortgages by conspiring with LandSafe to inflate appraisal values. Pifko Decl., Ex. 17 at 228. He alleges that through LandSafe, Countrywide could "use its market power to pressure appraisers to inflate values to whatever Countrywide needed and punish appraisers who refused to 'play ball' and . . . use fraudulent appraisal 'reviews' to support fraudulently inflated appraisals and increase the values on accurate appraisal reports to arrive at the level needed to 'close the deal.' " Id. Lagow alleges that he witnessed first-hand defendants' corruption of the appraisal process including by: "blacklisting, retaliating against, auditing, and firing appraisers who refuse to corrupt their appraisal reports"; "allowing home developers to

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| | 2:13-cv-08833-CAS (AGRx) | | |
| Case No. | 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

choose appraisers from an 'approved list' of corrupted appraisers who will appraise at pre-determined values"; and "retaliating against those persons who question or criticize the pattern and practice of defendants to require inflation of *bona fide* appraisal to meet an inflated loan amount where that inflated appraisal does not meet federal requirements and is simply the product of fraud and manipulation." Id. at 206–07.

Lagow explained that LandSafe assigned appraisal requests to either outside "fee" appraisers or its own staff appraisers. Id. at 228. He alleges that the "fee appraisers were pressured to inflate values through the use of targeted values and the threat of blacklisting" while "the staff appraisers were pressured directly by their employer, LandSafe, to inflate values falsely, as necessary to close a deal." Id. Lagow further alleges that LandSafe employed a "sham" appraisal review process that "ostensibly operated as a quality control measure" but in fact allowed for "rewriting and inflating of any appraisal valuations that, if left undisturbed, would prevent the associated loan from closing." Id. In early 2005, Lagow attended a meeting with LandSafe's President, Todd Baur ("Baur"), and a group of other appraisal managers. Lagow alleges that Baur told the managers that "they needed to quit thinking of an appraisal as a separate unit"; "LandSafe appraisers were there to help facilitate a closing"; and "they needed to change their thought process, the clear implication being that they needed to stop thinking like appraisers and think instead like lenders trying to close a loan." Id. at 230–31.

[REDACTED]

## 2. Countrywide and LandSafe Policies and Practices

Plaintiffs also point to evidence produced during discovery regarding defendants' companywide policies and practices that allegedly resulted in systematic USPAP violations. [REDACTED]

## B. Plaintiffs' Expert Reports

[REDACTED]

## C. Defendants' Expert Reports

[REDACTED]

**[REDACTED] CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

## III.  LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Longest v. Green Tree Servicing LLC, 308 F.R.D. 310, 320 (C.D. Cal. 2015) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)).  Federal Rule of Civil Procedure 23 governs class actions.  For a suit to be maintained as a class action, the proposed class must "satisfy the criteria set forth in subdivision (a) . . ., and it also must fit into one of three categories described in subdivision (b)." Shady Grove Orthopedic Assocs., P .A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule." Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. at 351.  However, the Supreme Court has strongly cautioned that "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013).

First, plaintiffs must demonstrate that the four requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 155 (1982) (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).  Second, if a court finds that the Rule 23(a) requirements are met, the court must consider whether the class is maintainable under one of the three alternatives set forth in Rule 23(b). Dukes, 564 U.S. at 345.  Plaintiffs here seek to maintain certification under Rule 23(b)(3), which requires "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

"The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). If "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then adjudication on a representative basis is appropriate. Id. Otherwise, individualized adjudication is more appropriate. Therefore, the Court must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members. In re N.D. Cal., Dalkon Shield IUD Products Liability Litig., 693 F.2d 847, 856 (9th Cir. 1982).

In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests that members in the class have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190–1193 (9th Cir. 2001), opinion amended on denial of reh'g, 273 F.3d 1261 (9th Cir. 2011).

## IV. DISCUSSION

### A. Evidentiary Objections

As an initial matter, defendants raise several objections to plaintiffs' proffered evidence concerning the Lagow and [REDACTED]. Dkt. 183 ("Obj."). First, defendants contend that Lagow's "unverified" allegations are irrelevant and should be excluded under Federal Rule of Evidence 403. Id. at 3–4. [REDACTED] Because Lagow's allegations and corresponding testimony are relevant, probative of the alleged USPAP violations in this case, and there is no apparent danger of unfair prejudice or confusing the issues, defendants' objection is **OVERRULED**.

[REDACTED]

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| | 2:13-cv-08833-CAS (AGRx) | | |
| Case No. | 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |
| | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

### B. Motions to Strike Expert Reports

Defendants move to strike portions of the expert reports prepared by [REDACTED] pursuant to Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 589 (1993). Dkts. 185, 186. An expert witness may testify at trial if the expert's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness must be "qualified as an expert by knowledge, skill, experience, training, or education" and may testify if (1) the "testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case." <u>Id.</u> Under <u>Daubert</u>, the trial court must act as a "gatekeeper" to ensure that expert testimony "is not only relevant, but reliable." 509 U.S. at 589. The trial court has broad discretion in deciding how to determine the reliability of an expert's testimony and whether the testimony is in fact reliable. <u>United States v. Hankey</u>, 203 F.3d 1160, 1167–68 (9th Cir. 2000). Where, as here, the reliability of non-scientific testimony depends on the knowledge and expertise of the expert, the <u>Daubert</u> factors (peer review, publication, potential error rate, etc.) are inapplicable. <u>Hangarter v. Provident Life & Acc. Ins. Co.</u>, 373 F.3d 998, 1017 (9th Cir. 2004).

[REDACTED] However, an "expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." <u>Daubert</u>, 509 U.S. at 592. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." <u>In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.</u>, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013) (internal quotation marks and citation omitted). [REDACTED] Accordingly, defendants' motions to strike are **DENIED**.

### C. Federal Rule of Civil Procedure 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have

**[REDACTED] CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx) | | |
|---|---|---|---|
| | 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |
| | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

found that numerosity is satisfied when class size exceeds 40 members." <u>Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.</u>, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015). "Where the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the Numerosity requirement is satisfied." <u>Longest</u>, 308 F.R.D. at 321 (internal quotation marks omitted). [REDACTED] Defendants do not dispute that Rule 23(a)(1)'s numerosity requirement is met in this case. Accordingly, the Court finds that the requirement is satisfied.

### 2. Commonality

Under Rule 23(a)(2), plaintiffs must demonstrate that "there are questions of law or fact in common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 564 U.S. at 350 (internal quotation marks and citations omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." <u>Id.</u>

Here, plaintiffs indicate that their RICO and unjust enrichment claims "all rise or fall on resolution of a single common question: whether the appraisals performed by LandSafe for loans originated by a Countrywide entity were improper." Mot. at 14. Plaintiffs allege that all appraisals performed by LandSafe systematically and uniformly violated USPAP due to defendants' companywide policies and practices. Plaintiffs further allege that defendants uniformly misrepresented to borrowers that the appraisals were, in fact, USPAP-compliant, and uniformly required borrowers to pay hundreds of dollars in fees for the appraisals. Accordingly, plaintiffs have demonstrated that class members have "suffered the same injury" and that "common answers" to the question in this case will resolve their claims. <u>Dukes</u>, 564 U.S. at 350. Defendants maintain that "[t]his 'common question' cannot be answered with common proof" rather there are "only individualized issues and answers." Opp'n at 5. Defendants thus focus their opposition on plaintiffs' purported failure to establish the predominance of common

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

issues under Rule 23(b)(3). The Court addresses these arguments in the predominance section below.

### 3. Typicality

Rule 23(a) requires plaintiffs to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020; accord Just Film, Inc. v. Buono, 847 F.3d 1108, 1116 (9th Cir. 2017). However, the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156. "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)). A court should not certify a class if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Hanon, 976 F.2d at 508.

In this case, the named plaintiffs claim to have paid fees for appraisals performed by LandSafe in connection with loans originated by Countrywide that were misrepresented to be USPAP compliant and now seek reimbursement for those fees. Mot. at 16. Thus, plaintiffs' claims are typical of the putative class because they have allegedly suffered the same injury as other class members based on common conduct by defendants. Defendants nevertheless argue that the typicality requirement is not satisfied on several grounds.

#### a. Waldrup

Defendants first argue that Waldrup's claim is atypical because the appraisal of her home in 2004 was not performed by LandSafe, but rather a third-party appraiser selected by Full Spectrum Lending ("FSL"), Countrywide's subprime lending division. Opp'n at 5. However, defendants acknowledge that FSL required LandSafe at that time to review appraisals that were not performed by or obtained through LandSafe. Id. [REDACTED]

**[REDACTED] CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Moreover, because there is no dispute that her 2007 appraisal was performed by LandSafe, Waldrup is clearly a member of the class.

Second, defendants argue that Waldrup's claim is not typical because her 2007 appraisal produced a valuation insufficient to refinance her home and the proposed loan never closed. Opp'n at 6. [REDACTED] Plaintiffs contend that the fact Waldrup's 2007 appraisal was not overvalued is irrelevant to her claim because the appraisal was performed pursuant to the same companywide policies and practices that allegedly resulted in uniform and systematic USPAP violations. Reply at 13. As discussed in further detail below, plaintiffs' theories of liability and damages do not depend on the valuation outcome in each individual appraisal. Rather, plaintiffs contend that because every appraisal was not USPAP compliant as represented due to systematic violations of USPAP's independence and impartiality requirements, class members are entitled to a refund of the appraisal fees.

Finally, defendants argue that Waldrup cannot represent the Texas unjust enrichment subclass because her appraisal was governed by a "Lock-In Agreement" and, under Texas law, "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory such as unjust enrichment." Opp'n at 9–10 (quoting Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000)). Defendants maintain that this agreement bars Waldrup's claim because it contains references to Countrywide's promise to "exercise reasonable efforts to obtain third-party documentation" in funding the loan. Id. at 10, Declaration of Lanisa Jenkins ("Jenkins Decl."), Ex. C ¶ 15. Accordingly, defendants argue that "[b]ecause Texas law does not recognize Waldrup's claim based on the existence of this contract, she cannot be 'typical' for the unjust enrichment subclass." Opp'n at 10.

However, individual defenses do not preclude a finding of typicality unless there is a "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Hanon, 976 F.2d at 508. This does not appear to be a unique defense because the agreement is a standard form contract. And even if the agreement applies only to Waldrup, "[d]efenses unique to a class representative counsel against class certification only where they 'threaten to become the focus of the litigation.' " Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting Hanon, 976 F.2d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

508).  Here, the agreement plainly does not "cover[] the subject matter of the parties' dispute" such that Waldrup would be barred from recovery.  Fortune, 52 S.W.3d at 684.  The only reference to appraisal is a requirement that the loan applicant conduct "repairs required by the appraiser as a valuation condition."  Jenkins Decl., Ex. C ¶ 9.  The agreement does not obligate either party with respect to the procurement, payment, or conditions of the appraisal.  Reply at 17–18.

Accordingly, Waldrup's claim is typical of both the nationwide RICO and Texas unjust enrichment classes.

### b.     Williams Plaintiffs

Defendants argue that the claims of Williams, Murphy, Reaster are not typical because they are not class members and their claims are subject to unique defenses.  First, defendants contend that the Williams plaintiffs' mortgages were not originated by "Countrywide" as described in the class definitions, but rather Countrywide-KB, a joint venture between Countrywide Ventures and KB Home, which is not a named defendant and not "Countrywide" as defined by the complaints.  Opp'n at 7.  However, the complaint states that Countrywide Financial and its subsidiaries merged with BofA, which became a successor-in-interest to the Countrywide family of businesses, including Countrywide Ventures and Countrywide-KB.  Williams Compl. ¶ 24.  The complaint also identifies Countrywide Ventures and Countrywide-KB as non-defendant co-conspirators and members of the alleged RICO enterprise.  Id. ¶¶ 38–41.  The Williams plaintiffs' mortgages were thus originated by a Countrywide entity identified in the complaint as an non-defendant co-conspirator that merged along with all of Countrywide Financial's subsidiaries into BofA.  Accordingly, the Court finds that the class definitions articulated in the complaints and the motion for class certification encompass the Williams plaintiffs' claims such that they are members of the putative class.

Second, defendants argue that the Williams plaintiffs' claims are atypical because "they paid nothing for the appraisals."  Opp'n at 9.  Defendants contend these plaintiffs "do not and cannot identify any out-of-pocket payment" because closing cost credits *may* have been applied to the appraisal fees.  Id.  However, defendants provide no evidence to support the assertion that the Williams plaintiffs did not pay for the appraisals out of

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL<br>CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL<br>CORPORATION ET AL. | | |

pocket.[4] Rather, defendants cite deposition testimony indicating the plaintiffs could not recall how closing cost credits were allocated when they purchased their homes. Id., Steelman Decl., Ex. 2 at 85–86, Ex. 3 at 151–52, Ex. 4 at 275–77. This testimony does not establish that they did not pay for their appraisals out of pocket. [REDACTED] Moreover, even if a borrower's appraisal fees were covered by closing cost credits, the Court finds that charging the fee to the borrower still constitutes a financial injury in the same amount as an out-of-pocket expense. Whether a borrower paid out of pocket or was charged a fee covered by closing credits that would have otherwise applied to different closing costs, the injury is effectively identical. Thus, the Williams plaintiffs' claims are typical because they suffered the "same or similar injury" as the other class members. Hanon, 976 F.2d at 508.

Third, defendants argue that "Murphy is not a class member because she is not a loan applicant or borrower." Opp'n at 7. Defendants cite to the deposition of her husband, Frank Murphy, who testified that he was the sole borrower. Id., Steelman Decl., Ex 5 at 45–46. However, plaintiffs indicate that because both Murphy and her husband are identified as borrowers on the mortgage and both signed the mortgage as borrowers before a notary, Murphy is considered a co-borrower under Florida law. Reply at 13 (citing Smith v. Reverse Mortg. Sols., Inc., 200 So. 3d 221, 225–26 (Fla. Dist. Ct. App. 2016)). Accordingly, the Court finds that Murphy is a member of the putative class.[5]

---

[4] Defendants cite Reaster as testifying that "[n]o funds had immediately come out of our pocket for this appraisal. Those funds came out of our pocket at the closing table." Opp'n at 9, Steelman Decl., Ex. 2 at 58. However, this quotation is not found on any page of the attached excerpts of Reaster's deposition.

[5] Defendants also assert Murphy is an inadequate class representative because she "cannot attend trial in Los Angeles in June 2018." Opp'n at 7. But Murphy did not testify that she cannot attend trial, only that it would be difficult for her to do so because her daughter is homeschooled, she did not know whether she will be able to secure child care, and she lacks the personal financial resources to travel to Los Angeles for two

| | [REDACTED] CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Finally, defendants argue that "Reaster and Murphy are not class members because their claims are barred by the statute of limitations." Opp'n at 8. Civil RICO claims are subject to a four-year statute of limitations, which begins to run when a plaintiff knows or should have known of the injury underlying the action. Pincay v. Andrews, 238 F.3d 1106, 1109 (9th Cir. 2001). Defendants indicate that Reaster made hand written notes on her appraisal report upon receipt in 2007 because she had concerns about the appraiser's work. Opp'n at 8, Steelman Decl., Ex. 2 at 31–53. In August 2009, Reaster read an article regarding the investigation by Hagens Berman Sobol Shapiro LLP into Countrywide and LandSafe appraisal practices and began corresponding with the firm about a potential action against her home builder and lender "regarding home value inflation." Id. at 134–44. In November 2009, Murphy also contacted plaintiffs' counsel with a concern that she overpaid for her home. Id., Ex. 5 at 70–71, 75. Accordingly, defendants argue that because Reaster "knew of the alleged defects in the appraisal" in 2007 and she and Murphy "explored potential claims" with plaintiffs' counsel in August 2009, their claims are time barred. Opp'n at 9.

The Court finds that this individual statute of limitations defense does not defeat typicality. With respect to the contention that Reaster and Murphy "are not class members" because their claims are time barred, Opp'n at 8, defendants cite no authority for the proposition that an individual defense provides a basis to exclude proposed representatives from the class at the certification stage. The purpose of class certification is not to "determine whether class members could actually prevail on the merits of their claims." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983 n.8 (9th Cir. 2011). In some cases, such as where the sole named plaintiff's claim is time barred, lack of standing may preclude class certification and require dismissal of the action. See, e.g., Blackwell v. SkyWest Airlines, Inc., 245 F.R.D. 453, 463 (S.D. Cal. 2007) (citing Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018 (9th Cir. 2003) ("where the sole named plaintiff 'never had standing' to challenge a township's poor-relief eligibility guidelines, and where 'she never was a member of the class she was named to represent,' the case must be remanded with instructions to dismiss"). However, here, Reaster and Murphy are not

---

weeks. Steelman Decl., Ex 3 at 10–12, 227; Pikfo Decl., Ex. 38 at 743–44. Her testimony does not demonstrate inadequacy under Rule 23(a)(4).

| Case No. | 2:13-cv-08833-CAS (AGRx) | | |
|---|---|---|---|
| | 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

the only representative parties; and defendants do not argue that Waldrup or Williams's claims are time-barred. Accordingly, even assuming for sake of argument that Reaster and Murphy lack standing because their claims are time barred, this would not defeat certification.

In addition, defendants do not explain how the statute of limitations is a "unique defense" to Reaster and Murphy's claims. Separately, defendants argue that the same defense applies to absent class members and precludes a finding that common issues predominate under Rule 23(b)(3) because the application of the injury discovery rule and equitable tolling would require individual inquiries. See Cohen v. Trump, 303 F.R.D. 376, 383 (S.D. Cal. 2014) (finding that purportedly unique statute-of-limitations and standing defenses "were not properly considered under the 'typicality' framework" where the defendant raised the same defenses to challenge predominance). Insofar as Reaster and Murphy's factual circumstances render the statute of limitations a "unique defense" as applied to their claims, there is no indication that it "threaten[s] to become the focus of the litigation." Hanon, 976 F.2d at 508. Again, defendants do not assert this defense against Waldrup and Williams, who would continue to represent the class even if Reaster and Murphy's claims are found to be time barred.

In sum, the Court finds that the named plaintiffs and other members of the putative class have suffered the "same or similar injury" based on defendants' conduct and that there are no "unique defenses" that "threaten to become the focus of the litigation." Hanon, 976 F.2d at 508. Rule 23(a)(3)'s typicality requirement is accordingly satisfied.

### 4.     Adequacy of Representation

In assessing the adequacy of representation under Rule 23(a)(4), the court must determine whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020. Here, plaintiffs indicate that there are no conflicts of interest among members of the class and that the named plaintiffs are willing to carry out their duties as class representatives. Mot. at 17. Plaintiffs also indicate that "proposed class counsel are experienced attorneys with a history of complex litigation and a strong class action track record of successfully representing similar categories of clients." Id. Defendants do not dispute that plaintiffs'

**[REDACTED] CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

counsel are able to prosecute these actions vigorously or contend that there are any conflicts of interest that would defeat certification. Accordingly, the Court finds that the adequacy requirement is satisfied.

## B. Federal Rule of Civil Procedure 23(b) Requirements

Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Predominance

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case, and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) (quoting Hanlon, 150 F.3d at 1022). The predominance inquiry is similar to the one for commonality under Rule 23(a)(2) but it is more rigorous. Hanlon, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022. In contrast, when "claims require a fact-intensive, individual analysis," then class certification would "burden the court" and be inappropriate. Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 947 (9th Cir. 2009). The predominance inquiry begins with an analysis of the elements of the underlying cause of action. Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011).

### a. RICO Fraud Claim

Plaintiffs allege RICO violations based on predicate acts of mail and wire fraud. To establish a civil RICO claim, a plaintiff must show: "(1) conduct (2) of an enterprise

**[REDACTED] CIVIL MINUTES – GENERAL**   '**O**'

| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

(3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." Just Film, 847 F.3d at 1116 (internal quotation marks omitted). The RICO statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity," as applicable to this case, is defined as "any act which is indictable under . . . section 1341 (relating to mail fraud) [or] section 1343 (relating to wire fraud)." Id. § 1961(1)(B). A "pattern of racketeering activity" "requires at least two acts of racketeering activity," occurring within ten years of each other. Id. § 1961(5). Any RICO claim for damages requires proof of an injury to "business or property by reason of a violation of section 1962." Id. § 1964(c). "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." Eclectic Properties E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014). "Mail and wire fraud can be premised on either a non-disclosure or an affirmative misrepresentation." Eller v. EquiTrust Life Ins. Co., 778 F.3d 1089, 1092 (9th Cir. 2015) (citation omitted).

Here, plaintiffs allege that Countrywide Financial, Countrywide Home Loans, FSL, Countrywide Ventures, KB Home, Countrywide-KB, Countrywide Bank, LandSafe, and BofA, including their directors, employees and agents, formed an "association-in-fact" enterprise under 18 U.S.C. § 1961(4). Waldrup TAC ¶ 113; Williams Compl. ¶ 133. Plaintiffs allege that Countrywide controlled and directed the enterprise and used its instrumentalities to carry out a fraudulent scheme to "systemically and uniformly produce and charge borrowers for phony 'appraisals' of properties in connection with home loans originated by Countrywide." Waldrup TAC ¶ 116; Williams Compl. ¶ 136. Plaintiffs allege that the enterprise engaged in a pattern of racketeering activity by using the mail and wires to "knowingly and intentionally implement[] the scheme to misrepresent and conceal their statements about the preparation, use and charging" for the non-USPAP compliant appraisals. Waldrup TAC ¶ 122; Williams Compl. ¶ 148. Because plaintiffs "unknowingly paid for a fraudulent appraisal," plaintiffs are direct victims and their

**[REDACTED] CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

injuries were proximately caused by defendants' conduct. Waldrup TAC ¶ 154; Williams Compl. ¶ 128.

### (1) Racketeering Allegations

The parties sharply dispute whether common or individual issues predominate with respect to these RICO allegations. Defendants' primary argument is that the predicate acts of mail and wire fraud cannot be established by class-wide evidence because the only way to determine whether the appraisals at issue were "materially defective and overvalued" or otherwise violated USPAP is by "adjudicating the facts and circumstances of each individual loan application and appraisal." Opp'n at 1, 16. However, plaintiffs emphasize that their theory of liability does not depend on whether any particular appraisal was overvalued. Reply 1, 4–5. Rather, plaintiffs assert that "classwide evidence establishes that *every* appraisal" performed by defendants violated USPAP's independence requirement "as a result of the *systemic*, corrupt relationship" between Countrywide and LandSafe in addition to their "unlawful companywide policies and practices." Id. at 1 (emphasis in original). Accordingly, plaintiffs intend to establish through class-wide proof that every appraisal for which class members paid fees "falsely stated" that it was prepared in conformity with USPAP. Id.

Plaintiffs offer substantial evidence that could be used to prove the alleged RICO scheme on a class-wide basis. First, plaintiffs argue that defendants' organizational structure, i.e., the allegedly "corrupt" relationship between Countrywide and LandSafe, violated USPAP's appraiser independence requirement. Mot. at 4–6, Reply at 7. [REDACTED]

Second, plaintiffs contend that defendants' companywide policies and practices resulted in systematic and uniform violations of USPAP's independence requirement. Mot. at 6–8; Reply at 1–9. In support of this contention, plaintiffs intend to offer Lagow's testimony regarding defendants' alleged companywide practice of pressuring appraisers to inflate values, misuse of appraisal review procedures, and Baur admonishing appraisal managers to "stop thinking like appraisers and think instead like lenders trying to close a loan." Pifko Decl., Ex. 17 at 206–07, 228–31. [REDACTED]

**[REDACTED] CIVIL MINUTES – GENERAL**     '**O**'

| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Defendants argue that uniform USPAP violations cannot be established by plaintiffs' proffered evidence. [REDACTED]

[REDACTED]

Accordingly, the Court finds that plaintiffs have offered a class-wide method of proving uniform USPAP violations based on the allegedly improper relationship between LandSafe and Countrywide in addition to their companywide policies and practices. This class-wide evidence may enable plaintiffs to prove a pattern of racketeering activity based on predicate acts of mail and wire fraud because every class member's appraisal report would have contained a uniform misrepresentation that it was prepared in compliance with USPAP. Thus, the Court finds that common issues predominate with respect to the method of proving the alleged RICO violation.

### (2) Injury and Causation

Defendants argue that individualized issues concerning the elements of injury and causation predominate over any common issues. See Opp'n 20–24. Under RICO's "by reason of" requirement, "to state a claim . . . the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.' " Hemi Grp., LLC v. City of New York, 559 U.S. 1, 9 (2010) (quoting Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992)). Establishing both actual and proximate causation is crucial to proving any violation of RICO. Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 656–60 (2008). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006). Tailored to the predominance inquiry, the question is whether the causal link between defendants' actions and the class's injuries can be established by common proof.

First, defendants argue there is no direct causal link between the alleged USPAP violations and any injury to class members because there is no class-wide evidence of overvaluation or other material appraisal defects. See Opp'n at 23–24. [REDACTED] However, as previously discussed, plaintiffs indicate that "the appraisal value is not the critical element" of the alleged fraudulent scheme. Reply at 27. Rather, plaintiffs allege they were injured by being required to pay fees for appraisals that defendants represented

**[REDACTED] CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|----------|-----------------------------------------------------|------|------------------|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

to be USPAP compliant when, in fact, the appraisals uniformly failed to meet USPAP standards due to defendants' systematic abandonment of appraiser independence. Id. at 1, 27. Plaintiffs essentially allege they were fraudulently overcharged for appraisals based on defendants' misrepresentation of USPAP compliance. "In the ordinary context of a commercial transaction, a consumer who has been overcharged can claim an injury to her property, based on a wrongful deprivation of her money. . . . Money, of course, is a form of property." Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 976 (9th Cir. 2008). Accordingly, plaintiffs allege a sufficient injury based on assessed appraisal fees, notwithstanding the actual appraisal valuation in each individual case.

Defendants also argue that "there are no uniform misrepresentations" of USPAP compliance. Opp'n at 20–21. However, this assertion is not supported by the record. Each of the named plaintiffs' appraisal reports contains an express, nearly identical representation that it was performed according to USPAP standards. See Opp'n, Declaration of Patrick Ames ("Ames Decl."), Ex. A at 16, 36, 55, 67, 86. [REDACTED] Nevertheless, defendants contend that plaintiffs cannot demonstrate class members' reliance on representations in the appraisals because Williams alleged she did not receive an appraisal and Waldrup testified that she did not remember receiving a copy of her 2007 appraisal. Opp'n at 20–21. Although defendants' contentions *may* constitute individualized defenses, they do not defeat plaintiffs' theory of class-wide proof. Indeed, it has long been established in the Ninth Circuit that the "defense of non-reliance is not a basis for denial of class certification." Hanon, 976 F.2d at 509 (citing Blackie v. Barrack, 524 F.2d 891, 906 n.17 (9th Cir. 1975)).

More importantly, defendants' representations of USPAP compliance need not necessarily have been communicated directly to the class members because proof of reliance is not required under RICO to establish causation. In Bridge, the Supreme Court indicated that a "person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations." 553 U.S. at 649. The Court explained that "[p]roof that the plaintiff relied on the defendant's misrepresentations may in some cases be sufficient to establish proximate cause, but there is no sound reason to conclude that such proof is always necessary." Id. at 659. It further recognized that "the absence of first-party reliance may in some cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement, but it is not in and of itself

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

dispositive." Id. Ultimately, "[r]eliance . . . whether characterized as an element of the claim or as a prerequisite to establishing proximate cause, simply has no place in a remedial scheme keyed to the commission of mail fraud [i.e., RICO], a statutory offense that is distinct from common-law fraud and that does not require proof of reliance." Id. at 656.

Following Bridge, the Fifth Circuit affirmed the certification of a RICO class arising from a pyramid scheme, reasoning that because the causation requirement for fraud-based RICO claims does not require proof of first-party reliance, and pyramid schemes are "*per se* mail fraud, which include inherent concealment about the deceptive payment scheme, one who participates in a pyramid scheme can be harmed as RICO requires 'by reason of' the fraud regardless of whether he or she relied on a misrepresentation about the scheme." Torres v. S.G.E. Mgmt., L.L.C., 838 F.3d 629, 639 (5th Cir. 2016) (en banc). Under a "foreseeability" theory of causation, the court reasoned that because the plaintiffs had alleged the defendants "operated a fraudulent pyramid scheme, which has caused them financial losses," there can be "no question that the Plaintiffs are both the direct and foreseeable victims of the alleged fraud." Id. at 640. The court also adopted an "inference-based theory of causation," finding that defendant's holding itself out as a legitimate entity, "when in fact it was a fraudulent pyramid scheme, gives rise to a reasonable inference that that misrepresentation induced" the class members to make payments and directly "caused their losses." Id. at 641.

Many courts have also found that class-wide circumstantial evidence of reliance is sufficient to allege RICO causation for purposes of Rule 23(b)(3). For example, in the context of fraudulent overbilling and overcharge schemes, courts commonly recognize that "payment . . . may constitute circumstantial proof of reliance." In re U.S. Foodservice Pricing Litig., 729 F.3d 108, 119–20 (2d Cir. 2013). In that case, the Second Circuit held that customers who were allegedly overbilled by a food distributor's inflated invoices scheme could be certified as a class. Id. at 122. The court reasoned that "customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed." Id. at 120. Similarly, the Tenth Circuit in CGC Holding Co., LLC v. Broad and Cassel, 773 F.3d 1076 (10th Cir. 2014) held that class members' payment of non-refundable up-front fees in exchange for loan commitments the defendant lenders

**[REDACTED] CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:13-cv-08833-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| | 2:16-cv-04166-CAS (AGRx) | | |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |
| | ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

never intended to fulfill constituted "circumstantial proof of reliance on the misrepresentations and omissions" regarding the fraudulent scheme and defendants' "ability or intent to actually fund the promised loan." Id. at 1091–92. And in Bias v. Wells Fargo & Co., 312 F.R.D. 528 (N.D. Cal. 2015), the district court certified a RICO class based on defendant home loan servicers' scheme to charge borrowers for broker's price opinion ("BPO") costs without disclosing mark-ups. The court found that class members' reliance could be established by circumstantial evidence applicable to the class as a whole: payment of the BPO charges. Id. at 542.

In light of Bridge and the foregoing authorities, the Court finds that the issue of causation in this case is susceptible to class-wide proof such that individualized issues of reliance do not predominate. First, plaintiffs allege and have come forward with class-wide evidence that defendants operated a fraudulent appraisal scheme that directly caused class members financial injury through the assessment of fees for systematically non-USPAP compliant appraisals. Here, as in Torres, it is clear that the class members "are both the direct and foreseeable victims of the alleged fraud." 838 F.3d at 640. Furthermore, to the extent first-party reliance is required to demonstrate causation under these circumstances, class-wide evidence of fee payment supports a common-sense inference that defendants' uniform misrepresentations of USPAP compliance induced the class members to make payments and directly caused their injuries. If every LandSafe appraisal was illegitimate because of defendants' alleged systematic USPAP violations as plaintiffs allege, it is reasonable to infer that no rational class member would have paid the fees if the illegitimacy of the appraisal process had been disclosed.[6]

---

[6] In addition, plaintiffs contend that because this case primarily involves a failure to disclose (an omission), a presumption of reliance may be invoked under Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–54 (1972). Mot. at 21. However, the Ninth Circuit has indicated that if this securities fraud presumption applies in the RICO context, it may be invoked only in a case based primarily on omissions, and not in a case of misrepresentations or a mixed case of misrepresentations and omissions. Poulos v. Caesars World, Inc., 379 F.3d 654, 667 (9th Cir. 2004) (citing Binder v. Gillespie, 184 F.3d 1059, 1064 (9th Cir. 1999)). Because plaintiffs allege both affirmative misrepresentations and a failure to disclose, this appears to be a mixed case and

**[REDACTED] CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Accordingly, the Court finds that causation under RICO may be established by class-wide proof such that individual issues of class member reliance on the alleged misrepresentations do not predominate.

### (4)    Association-in-Fact Enterprise

Defendants contend that individual issues predominate as to the RICO claim because plaintiffs cannot establish by common proof an association-in-fact among the defendants and [REDACTED].  Defendants rely on In re Ins. Brokerage Antitrust Litig., 618 F.3d 300 (3d Cir. 2010), an antitrust case where the Third Circuit held, in the context of an alleged "broker-centered" insurance bid-rigging scheme, that plaintiffs failed to demonstrate the brokers at the "hub" of the enterprise and the various insurers that constituted the "spokes" functioned together as a coherent group absent a "unifying rim" of interrelationships among the insurers.  Id. at 374.  However, plaintiffs do not allege that the individual appraisers were members of the RICO enterprise—the racketeering allegations center on LandSafe and Countrywide, and are based on companywide policies and practices, not the individual conduct of the appraisers.  Defendants nevertheless argue that plaintiffs are required to prove that the enterprise encompassed every appraiser.  This is a merits question more properly decided on a motion for summary judgment.  But given plaintiffs' RICO enterprise allegations, defendants' argument does not defeat class certification.

### (5)    Statute of Limitations Defense

Finally, defendants argue that the application of the statute of limitations, the injury discovery rule, and equitable tolling raise predominant individual issues.  Opp'n at 25–26.  The "injury discovery" rule applies to civil RICO's four-year statute of limitations, establishing a "disjunctive two-prong test of actual or constructive notice, under which the statute begins running under either prong."  Pincay, 238 F.3d at 1109.  A plaintiff is "deemed to have had constructive knowledge if it had enough information to

---

accordingly reliance cannot be presumed as it may be in a case based primarily on omissions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL<br>CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL<br>CORPORATION ET AL. | | |

warrant an investigation which, if reasonably diligent, would have led to discovery of the fraud." Id. at 1110 (citing Beneficial Standard Life Ins. Co. v. Madariaga, 851 F.2d 271, 275 (9th Cir. 1988)). Once the injury is discovered, a plaintiff is responsible for determining within the limitations period whether their injury was caused by a pattern of racketeering activity. See Rotella v. Wood, 528 U.S. 549, 555–56 (2000). "Equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases." Grimmett v. Brown, 75 F.3d 506, 514 (9th Cir. 1996); see also Rotella, 528 U.S. at 561 (noting that equitable tolling may apply "where a pattern [of racketeering activity] remains obscure in the face of a plaintiff's diligence in seeking to identify it"). To establish fraudulent concealment, a plaintiff must show that (1) "the defendant took affirmative acts to mislead the plaintiff"; (2) the plaintiff did not have "actual or constructive knowledge of the facts giving rise to its claim"; and (3) "the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1060 (9th Cir. 2012).

Defendants maintain that a "borrower-by-borrower analysis is necessary to determine when each putative class member became aware of potential claims and the applicability of equitable tolling, a highly individualized inquiry not suitable for class treatment." Id. at 25. However, the Ninth Circuit has repeatedly rejected this argument, instead holding that individual issues as to when class members' discovered their injuries do not predominate where, as here, plaintiffs allege that defendants' omissions and misrepresentations resulted in plaintiffs remaining unaware of their injuries. Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 485 (C.D. Cal. 2012); see Cameron v. E.M. Adams & Co., 547 F.2d 473, 478 (9th Cir. 1976) (holding that the "existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones" where plaintiff alleged that defendant made misrepresentations and omissions in its communications with class members); see also Williams v. Sinclair, 529 F.2d 1383, 1388 (9th Cir. 1975) ("The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones.").

Moreover, where, as here, plaintiffs assert equitable tolling based on the doctrine of fraudulent concealment, courts have held that the predominance requirement is satisfied because the application of the doctrine involves proof "common to the defendants," namely, "the act of concealing" the defendant's wrongdoing. In re

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

Linerboard Antitrust Litig., 305 F.3d 145, 163 (3d Cir. 2002); see also In re U.S. Foodservice Pricing Litig., 729 F.3d at 128 ("the district court did not abuse its discretion in determining that common evidence of this concealment will predominate in resolving whether the relevant statutes of limitations were tolled").

Here, plaintiffs indicate that the relevant injury for the purposes of the discovery rule is payment for non-USPAP compliant appraisals. Reply at 14. Accordingly, plaintiffs allege that they and other class members' claims did or will only accrue upon discovery of the true nature of the appraisals for which they were charged. Waldrup TAC ¶ 81. Plaintiffs allege they first were placed on notice that their appraisals were fraudulently non-USPAP compliant on May 13, 2012, when the Lagow *qui tam* complaint alleging misconduct by LandSafe and Countrywide was first unsealed. Williams Compl. ¶¶ 111, 113. Plaintiffs argue that borrowers such as Reaster who may have had concerns about their appraisers' work or home valuation were not put on inquiry notice of their injuries because the evidence of non-compliance is Countrywide and LandSafe's allegedly "corrupt" relationship and their internal policies and procedures, which were concealed from the public and remain subject to a protective order in this case prohibiting public release. Reply at 14–15. Thus, plaintiffs indicate that common evidence regarding defendants' concealment of their fraudulent scheme would predominate over any individual statute of limitations issues.

[REDACTED] Plaintiffs assert that an improper valuation does not necessarily identify or reveal the alleged injury in this case. Reply 14. [REDACTED] Moreover, defendants argue that Reaster's claim is time barred because she viewed an article online regarding Hagens Berman's investigation of defendants' appraisal practices and contend her claim is atypical "particularly where defendants offer evidence, as here, that 'there was widespread dissemination or publicity of the facts comprising the plaintiff's claims.'" Opp'n at 8–9 (quoting Vaccarino v. Midland Nat. Life Ins. Co., No. CV 11-5858 CAS (MANx), 2013 WL 3200500, at *15 (C.D. Cal. June 17, 2013).

At this juncture, the Court finds that the application of defendants' statute of limitations defenses does not defeat predominance and would be manageable. The Hagens Berman article was available to the general public, thus whether it placed class members on inquiry notice of their injuries could be adjudicated on a class-wide basis.

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

See In re Monumental Life Ins. Co., 365 F.3d 408, 421 (5th Cir. 2004) (finding "no difficulty concluding that whether plaintiffs were provided constructive notice is an issue that can be decided on a classwide basis" in light of widespread publicity). [REDACTED]

     In accordance with the foregoing, the Court finds plaintiffs have demonstrated that the predominance requirement of Rule 23(b)(3) is satisfied with respect to their RICO claims. However, the Court acknowledges this is a close question, particularly because the alleged USPAP violation underlying plaintiffs' claims is based on an ethical standard that is seldom, if ever, subject to judicial scrutiny. The Court emphasizes that plaintiffs will be held to their theory of proof, in particular, uniform violations of USPAP's independence requirement must be proven through class-wide evidence of the allegedly improper relationship between LandSafe and Countrywide and their companywide policies and practices.

            **b.**   **Unjust Enrichment Claim Under Texas Law**

     Defendants argue that individualized issues will also dominate the plaintiffs' unjust enrichment claim for the Texas Unjust Enrichment Class, raising many of the same arguments previously discussed. Opp'n at 33. A claim for unjust enrichment arises when a one "has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." Heldenfels Bros., Inc. v. City of Corpus Cristi, 832 S. W. 2d 39, 41 (Tex. 1992). Under Texas law, "unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." Eun Bok Lee v. Ho Chang Lee, 411 S. W. 3d 95, 111 (Tex. App. 2013) (citation omitted). Here, plaintiffs contend that defendants "have unjustly enriched themselves at the expense of . . . class members by charging a fee for pretextual appraisals that failed" to comply with USPAP. Mot. at 22–23. Because plaintiffs have offered a class-wide method for proving that every appraisal violated USPAP and fees were uniformly charged for these allegedly fraudulent appraisals, the Court finds that common issues predominate and the Texas unjust enrichment claim is amenable to class treatment.

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx) | | |
|---|---|---|---|
| | 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

### d.     Damages Calculations

Defendants contend Rule 23(b)(3)'s predominance requirement is not satisfied because plaintiffs have failed to demonstrate a class-wide method for determining damages. Opp'n at 33–35. Under Comcast Corp. v. Behrend, 569 U.S. 27 (2013), courts can only certify a Rule 23(b)(3) class if there is evidence demonstrating the existence of a class-wide method of awarding relief that is consistent with the plaintiffs' theory of liability. The Ninth Circuit has explained, however, that "uncertain damages calculations alone cannot defeat class certification because Comcast stood only for the proposition that 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.' " Lambert v. Nutraceutical Corp., 870 F.3d 1170, 1182 (9th Cir. 2017) (citing Leyva v. Medline Indus. Inc., 716 F.3d 510, 513–14 (9th Cir. 2013)). Thus, "[u]ncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages." Id.

[REDACTED] The out-of-pocket loss theory for fraud damages is based on the "the difference in actual value between what the plaintiff[s] gave and what [they] received." In re First Alliance Mortg. Co., 471 F.3d 977, 1001–02 (9th Cir. 2006). [REDACTED]

Defendants argue that this damages model fails to satisfy Comcast for two reasons. First, relying on this Court's opinion in Miller v. Fuhu Inc., No. 2:14-cv-06119-CAS-AS, 2015 WL 7776794 (C.D. Cal. Dec. 1, 2015) and similar products liability and food misbranding cases, defendants contend that a "full refund" theory of relief is inappropriate because class members may have derived benefits from the appraisals and individualized inquiries would be required to determine damages. Opp'n at 34–35. [REDACTED]

In seeking a full refund, plaintiffs will have the burden at trial to prove that defendant's USPAP violations rendered the appraisals worthless to borrowers. In Miller, the Court found the "full refund" model inapplicable where many, if not the majority, of the tablet computers in that case had not manifested a defect, and even when they "malfunctioned, consumers were often able to derive at least some benefit from their tablets." 2015 WL 7776794, at *19; see also In re POM Wonderful LLC, No. ML 10-

| | **[REDACTED] CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:13-cv-08833-CAS (AGRx) 2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

02199 DDP RZX, 2014 WL 1225184, at *2 (C.D. Cal. Mar. 25, 2014) (finding full refund model did not account for value consumers received from falsely advertised but otherwise nutritious juice). However, these products liability and food misbranding cases are distinguishable. [REDACTED] In light of plaintiffs' allegations that they were required to pay for illegitimate and pre-textual appraisals that systematically violated USPAP, the Court finds that a full refund could be found to be an appropriate remedy and therefore plaintiffs' damages model is consistent with their theory of liability. See Comcast, 569 U.S. at 35.

In addition, defendants argue that plaintiff's damages model fails to satisfy Comcast because "an untold number of class members paid no out-of-pocket" expenses for their appraisals and "there is no way to determine who paid what amount for any given appraisal without examining the details of each transaction." Opp'n at 34, Jenkins Decl. ¶¶ 34–39. [REDACTED] However, as discussed in the typicality section above, there is no evidence, as defendants assert, that the Williams plaintiffs did not pay for their appraisals out of pocket; [REDACTED]. Whether the appraisal fee was paid out-of-pocket or assessed and covered by closing cost credits, the evidence submitted by plaintiffs indicates that individual borrowers uniformly suffered a financial injury in the amount of the assessed appraisal fee. [REDACTED] Moreover, to the extent the application of closing cost credits may result in uncertainty regarding the amount of damages, the Ninth Circuit has been clear that "uncertain damages calculations alone cannot defeat class certification." Lambert, 870 F.3d at 1182.

### 2. Superiority

"In addition to establishing predominance of a common question, a class proponent must also demonstrate that the class action is superior to other methods of adjudicating the controversy." Just Film, 847 F.3d at 1123 (citing Fed. R. Civ. P. 23(b)(3)). A class action may be superior where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." Id. at 1234. Rule 23(b)(3) provides the following non-exhaustive list of four factors to consider in this assessment: (A) "the interest of members of the class in individually controlling the prosecution or defense of separate actions;" (B) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;" (C) "the desirability or

**[REDACTED] CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

undesirability of concentrating the litigation of the claims in the particular forum;" (D) "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190 (quotation marks omitted).

In cases in which the plaintiffs seek to recover relatively small sums and the disparity between litigation costs and the recovery sought may render plaintiffs unable to proceed individually, "[c]lass actions may permit the plaintiffs to pool claims which would be uneconomical to litigate individually." Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1163 (9th Cir. 2001) (internal quotation and alteration omitted). Here, the vast majority of class members paid $899 or less for the allegedly fraudulent appraisals, and accordingly individual litigation is not economically feasible for class members. Mot. at 25. Plaintiffs also indicate they are not aware of any other pending cases challenging defendants' appraisal fees, thus there is no "threat of multiplicity" or "risk of inconsistent adjudications" in proceeding as a class action. Id. (quoting Zinser, 253 F.3d at 1191).

Defendants contend that class treatment is not superior because predominant individual issues would make trial unmanageable. Opp'n at 24. However, these manageability concerns are largely based on defendants' argument that plaintiffs cannot prove systematic USPAP violations using generalized proof. As previously discussed, plaintiffs have presented a class-wide method of proving that defendants uniformly and systematically violated USPAP, and accordingly the Court has determined that common issues predominate in this case—making class resolution more efficient as a whole. Defendants also protest that plaintiffs have not offered a trial plan. Id. Defendants' counsel suggested at oral argument that certifying the class in this case before a trial plan is submitted would constitute an abuse of discretion. See RT 18. The Court disagrees. "Nothing in Rule 23 requires Plaintiff to submit a formal trial plan along with her motion for class certification." Sullivan v. Kelly Servs., Inc., 268 F.R.D. 356, 365 (N.D. Cal. 2010) (citing Chamberlan v. Ford Motor Co., 402 F.3d 952, 961 n.4 (9th Cir. 2005) ("Nothing in the Advisory Committee Notes suggests grafting a requirement for a trial plan onto the rule.")).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**[REDACTED] CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:13-cv-08833-CAS (AGRx)<br>2:16-cv-04166-CAS (AGRx) | Date | February 6, 2017 |
|---|---|---|---|
| Title | BARBARA WALDRUP v. COUNTRYWIDE FINANCIAL CORPORATION ET AL.<br>ELIZABETH WILLIAMS ET AL. v. COUNTRYWIDE FINANCIAL CORPORATION ET AL. | | |

In sum, the small amount of appraisal fees at issue in each individual case makes individual litigation unfeasible, however a class action would offer these individuals the opportunity for meaningful redress. Therefore, certifying the class is superior to, and more manageable than, any other procedure available for the treatment of factual and legal issues raised by plaintiffs' claims.

## V.     CONCLUSION

In accordance in the foregoing, plaintiffs' joint motion for class certification is hereby **GRANTED**.  The Nationwide RICO Class is defined as follows:

> All residents of the United States of America who, during the period January 1, 2003 through December 31, 2008, obtained an appraisal from LandSafe in connection with a loan originated by Countrywide.

The Texas Unjust Enrichment Class is defined as follows:

> All residents of the State of Texas who, during the period January 1, 2003 through December 31, 2008, obtained an appraisal from LandSafe in connection with a loan originated by Countrywide.

The Court appoints Baron & Budd, P.C. and Hagens Berman Sobol Shapiro LLP as class counsel.

**IT IS SO ORDERED.**

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |