Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Evan Zucker (SBN 266702)
ezucker@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone:   (818) 839-2333
Facsimile:    (818) 986-9698

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
Thomas E. Loeser (SBN 202724)
toml@hbsslaw.com
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone:   (206) 623-7292
Facsimile:    (206) 623-0594

Christopher R. Pitoun (SBN 290235)
christopherp@hbsslaw.com
Hagens Berman Sobol Shapiro LLP
301 North Lake Avenue, Suite 920
Pasadena, California 91101
Telephone:   (213) 330-7150
Facsimile:    (213) 330-7152

Attorneys for Plaintiffs
BARBARA WALDRUP, ELIZABETH
WILLIAMS, BECKIE REASTER,
REBECCA MURPHY individually, and
on behalf of those similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| BARBARA WALDRUP, individually, and on behalf of other members of the general public similarly situated,<br><br>           Plaintiff,<br>    vs.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, et al.,<br><br>           Defendants. | Case Number: 2:13-cv-08833-CAS(AGRx)<br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY ACTION PENDING DECISION ON RULE 23(f) PETITION AND APPEAL**<br><br>Date:  March 26, 2018<br>Time:  10:00 a.m.<br>Place: Courtroom 8D<br>Judge: Hon. Christina A. Snyder |

| | |
|---|---|
| ELIZABETH WILLIAMS, BECKIE REASTER, REBECCA MURPHY, individually, and on behalf of all others similarly situated, | consolidated with Case Number: 2:16-cv-4166 CAS(AGRx) |
| Plaintiffs, | |
| vs. | |
| COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, et al. | |
| Defendants. | |

**REDACTED VERSION OF DOCUMENT**

**PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................ 2

III.  LEGAL ARGUMENT ....................................................................... 3

    A.   Standard of Review ................................................................ 3

    B.   The Ninth Circuit Is Unlikely to Grant Review ...................... 3

        1.   Defendants Have Failed to Show that the Order Creates a "Death Knell" Scenario ................................................................ 4

        2.   Defendants Have Not Demonstrated that the District Court's Order Was Manifestly Erroneous. .......................................... 6

            a.   The Court Thoroughly Addressed Defendants' Reliance Defense. .......................................................................... 7

            b.   Defendants' Statute of Limitations Argument Has Fallen Flat Several Times Before this Court and No New Facts or Evidence Suggests that this Is a Ripe Issue for Appellate Review. ........................................................................... 8

            c.   The Injury Is Common Across the Class. ....................... 10

            d.   The Court's Ruling Relies on Common Proof. ............... 10

        3.   The Order Does Not Depart or Conflict With Decisions of Other Courts. ................................................................................ 12

    C.   Any Harm Defendants Suffer If This Case Is Not Stayed Is Self-Imposed ............................................................................... 13

    D.   A Stay Will Prejudice the Plaintiffs' Rights ........................... 15

    E.   The Complete Stay Defendants Request Is Not in the Public Interest .. 15

IV.  CONCLUSION ................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Air West,*
542 F.2d 522 (9th Cir. 1976) .......................................................................... 16

*Anza v. Ideal Steel Supply Corp.,*
503 U.S. 451 (2006) ..........................................................................................7

*Apple, Inc. v. Samsung Electronics Co., Ltd.,*
No. 12–CV–00630–LHK, 2012 WL 2576132 (N.D.Cal. July 3, 2012) ................ 14

*Astiana v. Kashi Co.,*
2013 WL 12064548 (S.D. Cal. Sept. 18, 2013) ...................................... 14

*Cameron v. E.M. Adams & Co.,*
547 F.2d 473 (9th Cir. 1976) ..........................................................................9

*CGC Holding Company, LLC v. Broad and Cassel*
553 U.S. 639 (2008) ................................................................... 7, 8, 13

*Chamberlan v. Ford Motor Co.,*
402 F.3d 952 (9th Cir. 2005) ........................................................ 1, 3, 4, 5

*In re ConAgra Foods, Inc.,*
2014 WL 12580052 (C.D. Cal. Dec. 29, 2014)........................................ 16

*Grimmett v. Brown,*
75 F.3d 506(9th Cir. 1996) ..........................................................................9

*Guido v. L'Oreal, USA, Inc.,*
No. 2:11-CV-01067-CAS, 2014 WL 6603730 (C.D. Cal. July 24, 2014)..................................................................................................6

*Leiva-Perez v. Holder,*
640 F.3d 962 (9th Cir. 2011) ..........................................................................3

*Monaco v. Bear Stearns Companies, Inc.,*
2012 WL 12506860 (C.D. Cal. Dec. 5, 2012)........................................ 14

- ii -

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................3

*Pincay v. Andrews*,
    238 F.3d 1106 (9th Cir. 2001) ................................................................9

*Prado–Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir.2000) ...............................................................5

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) ................................................................6

*Rotella v. Wood*,
    528 U.S. 549 (2000) .................................................................................9

*Taddeo v. Am. Invesco Corp.*,
    No. 08-1463, 2011 WL 3957392 (D. Nev. Sept. 7, 2011) ..................... 12

*Willcox v. Lloyds TSB Bank, PLC*,
    No. CV 13-00508 ....................................................................................7

*Williams v. Sinclair*,
    529 F.2d 1383 (9th Cir. 1975) ................................................................9

**Statutes**

Fed. R. Civ. P. 23................................................................................... *passim*

PLAINTIFFS' OPPOSITION TO MTN TO STAY
ACTION PENDING DECISION ON RULE 23(f) PETITION

# I.    INTRODUCTION

Defendants ask this Court to put the brakes on this litigation even though it is highly unlikely the Ninth Circuit will grant review of their Petition.  Neither the allegations of this case, nor the Court's ruling, implicate an unsettled and fundamental issue of law or an issue of first impression.  Nor does this case present a death-knell situation for either party or, as Defendants framed their argument to the Ninth Circuit, issues this Court "mishandled" resulting in "manifest errors of law."  Rather, Defendants' Petition will most likely be denied because it simply attempts to re-litigate the merits of this Court's discretionary legal and factual findings, rather than identify any misapplication of Rule 23 or controlling precedent that would establish this Court's order is "virtually certain" to be reversed on appeal, as is the standard under the Ninth Circuit's holding in *Chamberlan v. Ford Motor Co.*, 402 F.3d 952 (9th Cir. 2005).

On January 19, 2018, this Court granted the parties' Joint Stipulation Modifying Current Case Schedule and Requesting Scheduling Conference, thereby ordering that the current case schedule and deadlines established by the Court be vacated. (Dkt. 243.)  Thus, as it currently stands, there are no case deadlines or an imminent trial.  No prejudice, hardship or inequity will be suffered by Defendants in being required to go forward with pre-trial discovery as the Ninth Circuit considers their 23(f) Petition.

On the other hand, this case is nearly four years old, relating to an alleged conspiracy more than fifteen years old.  Under the present circumstances, there is simply no justification to grind this litigation to a halt.  Defendants have made no factual showing that they will suffer "substantial harm due to weighty litigation expenses and notification expenses," as they suggest.  And, critically, Plaintiffs offered, *in writing,* to delay issuance of class notice until 60 days after resolution of Defendants' Petition pursuant to a joint stipulation to which Defendants never responded.  (*See* Declaration of Daniel Alberstone in Support of Plaintiffs' Opposition

to Defendants' Motion to Stay Action Pending Decision on Rule 23(f) Petition and Appeal ("Alberstone Decl.") at Ex. 1).  On the other hand, with over ███████ class members affected by Defendants' misconduct, there is a compelling public interest that this case be resolved.

Plaintiffs renew their proposal that a limited stay as to class notice be granted. This would allow the parties to continue with pre-trial discovery while eliminating any concerns regarding confusion or the cost of class notice.

## II.    BACKGROUND

On November 27, 2013, Plaintiff Barbara Waldrup initially brought this lawsuit on behalf of herself and a class of borrowers against Defendants for falsely representing that the appraisals the class members paid for complied with the strict ethical and competency rules of the Uniform Standards of Appraisal Practice.

On August 28, 2017, Plaintiffs filed their motion for class certification.[1] On February 8, 2018, this Court certified both Plaintiffs' nationwide RICO class and Texas unjust enrichment class.

Following the issuance of the Court's class certification order, the parties met and conferred regarding Defendants' request to stay proceedings in this matter pending the outcome of Defendants' Rule 23(f) petition. While Plaintiffs did not agree to a complete stay as Defendants proposed, *Plaintiffs did agree to a stay on class notice pending resolution of Defendants' Rule 23(f) petition.*[2] Defendants never responded to Plaintiffs' proposal, and instead filed this motion.

On February 22, 2018, Defendants filed a Rule 23(f) petition seeking permission to appeal to the Ninth Circuit.

---

[1] Mot. for Class Cert. Dkt. 172.

[2] *See* Alberstone Decl. at Ex. 1.

PLAINTIFFS' OPPOSITION TO MTN TO STAY
ACTION PENDING DECISION ON RULE 23(f) PETITION

### III.   LEGAL ARGUMENT

**A.   Standard of Review**

Rule 23(f) expressly holds that "an appeal does not stay proceedings in the district court unless the district court judge or the court of appeals so orders." Thus, "[a] stay is not a matter of right, even if irreparable injury might otherwise result."[3] Rather, it is "an exercise of judicial discretion."[4] "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."[5] The Ninth Circuit considers the following four factors in determining whether a party has overcome the strong presumption against a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[6] "The first two factors…are the most critical."[7] Here, Defendants have failed to meet their burden on any of these four factors.

**B.   The Ninth Circuit Is Unlikely to Grant Review**

"Like other circuits that have considered the issue, [the Ninth Circuit] is of the view that petitions for Rule 23(f) review should be granted sparingly."[8] "Although Rule 23(f) expands opportunities to appeal certification decisions, the drafters intended interlocutory appeal to be the exception rather than the rule. Interlocutory

---

[3] *Nken v. Holder*, 556 U.S. 418, 426 (2009) quoting *Virginian R. Co. v. U.S.*, 272 U.S. 658, 672, 47 S.Ct. 222, 71 L.Ed. 463 (1926).

[4] *Nken*, 556 U.S. at 426 (citations omitted).

[5] *Id.* (citations omitted).

[6] *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) quoting *id.*

[7] *Nken*, 556 U.S. at 434.

[8] *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005)(denying defendant's Rule 23(f) petition).

PLAINTIFFS' OPPOSITION TO MTN TO STAY ACTION PENDING DECISION ON RULE 23(f) PETITION

appeals are generally disfavored because they are 'disruptive, time-consuming, and expensive.'"[9] As the Seventh Circuit recognized in *Blair v. Equifax Check Servs, Inc.*,:

> Rule 23(f) is drafted to avoid delay. Filing a request for permission to appeal does not stop the litigation unless the district court or the court of appeals issues a stay - and a stay would depend on a demonstration that the probability of error in the class certification decision is high enough that the costs of pressing ahead in the district court exceed the costs of waiting. ... Because stays will be infrequent, interlocutory appeals under Rule 23(f) should not unduly retard the pace of litigation.[10]

*Chamberlan* identified three circumstances upon which the court may grant review of a certification decision:  (1) a death-knell; (2) an unsettled and fundamental issue of class action law that is likely to evade end-of-the-case review; or (3) a ruling that is manifestly erroneous.[11]  In recent years, the Ninth Circuit has only granted 14.6% of Rule 23(f) petitions filed by Defendants.[12]  Thus, it is exceptionally difficult to demonstrate the probability of success on a Rule 23(f) petition.  Moreover, this case does not satisfy the *Chamberlan* standard.

### 1. Defendants Have Failed to Show that the Order Creates a "Death Knell" Scenario

Defendants must "sufficiently demonstrate" that "a grant of certification may force a defendant to settle rather than incur the cost of defending a class action and run the risk of potentially ruinous liability."[13]  Here, Defendants argue that because treble

---

[9] *Id.* citing *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 293 (1st Cir. 2000)

[10] 181 F.3d 832, 835 (7th Cir. 1999).

[11] 402 F.3d at 959.

[12] Study Reveals US Courts of Appeal Are Less Receptive to Reviewing Class Certification Rulings, Skadden Insights (April 29, 2014) (*available at* https://www.skadden.com/insights/study-reveals-us-courts-appeal-are-less-receptive-reviewing-class-certification-rulings) (last viewed on March 2, 2018).

[13] *Chamberlan*, 402 F.3d at 957; *see also Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1274 (11th Cir 2000) (limiting death knell review "to those cases

damages make this a ████████████ claim, "[t]hose stakes alone support immediate appellate review."[14] This simplistic argument does not satisfy Defendants' burden.  Defendants make "no showing that [it] lacks the resources to defend this case to conclusion and appeal if necessary or that doing so would run the risk of ruinous liability."[15]  Nor could they.  Instead, Defendants' claims are "conclusory and are not supported by declarations, documents, or other evidence" demonstrating their financial condition.[16]  Without such proof, Defendants have not met the burden they have under the "death-knell" scenario.

Defendant Bank of America's total assets are in excess of $2.2 trillion.[17]  Bank of America net income in 2017 alone was $18.2 billion.[18]  Stated differently, the net income Bank of America earned in less than two months more than covers the aggregate amount of damages in this case.   Thus, although the "potential recovery here may be unpleasant to a behemoth company [it] is hardly terminal."[19]

Defendants cite to a D.C. Circuit Court case (but no Ninth Circuit authority) for the proposition that the standard for the "death-knell" is that the Petitioner would be under "unwarranted pressure to settle nonmeritorious or marginal claims."[20]  But as

---

where the district court's ruling, as a practical matter, effectively prevents the petitioner from pursuing the litigation.").)

[14] Mtn to Stay at 6:18-19.

[15] *Chamberlan*, 402 F.3d at 960. To the contrary, Defendants have enlisted ample resources and employed highly sophisticated legal counsel to deftly litigate this matter for over four years. Moreover, in advance of filing their Rule 23(f) Petition, Defendants have retained a second law firm, Goodwin Proctor L.L.P., for their defense in this matter.

[16] *Id.*

[17] Bank of American Corp., Annual Report (Form 10-K) (Feb. 22, 2018) at 21.

[18] *Id.*

[19] *Chamberlan*, 402 F.3d at 960.

[20] Mtn to Stay at 5:1-7 citing *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013)("*Rail Freight Fuel Surcharge*").

this Court has pointed out, *Rail Freight Fuel Surcharge* is not the law in this circuit.[21] Moreover, the facts in *Rail Freight Fuel Surcharge* are not analogous to the facts here. The Court noted that the Defendants "adduced just enough facts to satisfy the [death-knell] standard" demonstrating that "certification exposed [defendants] to potential liability so massive it would exceed their cumulative adjusted net income for all of 2003-2011."[22]  As discussed above, the total potential liability in this case represents Bank of America's net income for less than two months; far less than the eight years contemplated in *Rail Freight Fuel Surcharge*.  The kind of "pressure" presented here simply does not compare.

Lastly, the *Rail Fright Fuel Surcharge* court noted that "even when the numbers are dispositive, though, a death knell alone does not warrant interlocutory review.  Not only must certification push litigants inexorably toward settlement, but the certification decision must itself be 'questionable'"[23]  Here, Defendants only support that the certification decision being "questionable" is that the Court noted because Plaintiffs' claims are based, in part, on an ethical standard that is seldom, if ever, subject to judicial scrutiny, [predominance] was a "close question."[24]  Something being a "close question" is not the same as an entire certification decision being "questionable."

## 2.    Defendants Have Not Demonstrated that the District Court's Order Was Manifestly Erroneous.

Defendants' argument that they must "merely show that their Rule 23(f) petition raises 'serious legal questions'" is an incomplete statement of the standard.[25]  As Defendants' own cited case law points out, "[w]hen relying on a serious legal question

---

[21] *Guido v. L'Oreal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL 6603730, at *14 (C.D. Cal. July 24, 2014)

[22] *Rail Freight Fuel Surcharge*, 725 F.3d at 252.

[23] *Id.*

[24] Order on Class Cert. at 35.

[25] Mtn. to Stay at 7:19-20.

to satisfy the [success on the merits] prong, a movant must also show that the balance of hardships tips *sharply* in its favor."[26] Here, none of the four "serious legal questions" presented in Defendants' motion demonstrate "manifest error or a departure from precedent." And even if they did, as discussed later in this opposition, Defendants fail to prove that the balance of hardships tip "sharply" in their favor.

### a. The Court Thoroughly Addressed Defendants' Reliance Defense.

Defendants argue that this Court misreads the Supreme Court's decision in *Bridge v. Phoenix Bond & Indemnity Co.* in holding that "proof of reliance is not required to establish causation."[27] Yet, it is actually Defendants who misread *Bridge* as the Supreme Court clearly held that "…*no showing of reliance is required* to establish that a person has violated §1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of mail fraud."[28] The *Bridge* Court continued, "[a]ccordingly, it may well be that a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance in order to prove causation. 'But the fact that proof of reliance is often used to prove an element of the plaintiff's cause of action, such as the element of causation, *does not* transform reliance itself into an element of the cause of action.'"[29]

---

[26] *Willcox v. Lloyds TSB Bank, PLC*, No. CV 13-00508 ACK-RLP, 2016 WL 917893, at *4 (D. Haw. Mar. 7, 2016)(emphasis added) citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir.2011)(additional citations omitted).

[27] Mtn. to Stay at 8:6-11 citing *CGC Holding Company, LLC v. Broad and Cassel* 553 U.S. 639 (2008).

[28] 553 U.S. at 649 citing to *Anza v. Ideal Steel Supply Corp.*, 503 U.S. 451, 476 (2006)(emphasis added).

[29] 553 U.S. at 659 citing *Anza*, 503 U.S. at 476 (emphasis added). Moreover, Defendants overstate the holding in *In re Actimmune Mktg. Litig.* as reading *Bridge* to require reliance in a RICO claim. Mtn to Stay at 8:15-16 citing 614 F. Supp. 2d 1037 (N.D. Cal. 2009), aff'd, 464 F. App'x 651 (9th Cir. 2011). In its order granting defendants' motion to dismiss, the court does discuss reliance. But the problem for plaintiffs in that case was more fundamental. In contrast to the case here, plaintiffs failed to identify what the misrepresentations were and how they caused the injury. "The Supreme Court [in *Bridge*] explained that while a person can be injured 'by reason of' a pattern of fraud, even if he has not relied on any misrepresentations, the injury must still have occurred as a result of the fraud to state a cause of action under

- 7 -

Moreover, Defendants disparage the Court's reliance on out-of-circuit authority to conclude that "class-wide circumstantial evidence of reliance is sufficient to allege RICO causation."[30] Yet, Defendants conveniently ignore that the Court also relied on *Bias v. Wells Fargo & Co*., where the district court certified a RICO class based on defendant home loan servicers' scheme to charge borrowers for broker's price opinion costs ("BPO") without disclosing the mark-ups.[31]  Relying on Ninth Circuit law, the *Bias* court found that class members' reliance could be established by circumstantial evidence applicable to the class as a whole: payment of the BPO charges.[32]

Finally, Defendants' unsupported contention that it is unreasonable to infer that no rational class member would have paid the fees for an appraisal that was the product of a corrupt enterprise, flies in the face of common sense.  According to Defendants' logic, "[w]hat matters to most borrowers is not USPAP compliance, but loan approval necessary to purchase a home or refinance a loan to lower payments." But what "matters most" is not mutually exclusive with something that matters. Rational consumers expect something of value in return for their dollars, and the purchase of a worthless appraisal based on false representations causes financial injury to the consumer, which, in turn, gives rise to legal liability.

### b. Defendants' Statute of Limitations Argument Has Fallen Flat Several Times Before this Court and No New Facts or Evidence Suggests that this Is a Ripe Issue for Appellate Review.

Plaintiffs' claims are not time barred. Even though RICO has a four-year statute of limitations,[33] "[e]quitable tolling doctrines, including fraudulent concealment, apply

---

RICO. [*Bridge*, 553 U.S. at 649]. Applying this reasoning to the instant case, therefore, no plaintiff has alleged an injury that *is sufficiently related* to the alleged fraudulent conduct to satisfy RICO. Again, this deficiency is a result of plaintiffs lack of specificity with respect to defendants' alleged misrepresentations."

[30] Mtn. to Stay at 8:20-24 citing 773 F.3d 1076 (10th Cir. 2014).

[31] 312 F.R.D. 528 (N.D. Cal. 2015)

[32] *Id.* at 541-42 citing *Binder v. Gillespie*, 184 F.3d 1059, 1063–64 (9th Cir. 1999).

[33] *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001).

PLAINTIFFS' OPPOSITION TO MTN TO STAY
ACTION PENDING DECISION ON RULE 23(f) PETITION

in RICO cases."[34] The Court has held that these doctrines apply in this case.[35] While Defendants are correct that each Plaintiff will have to present evidence of the timeliness of their claims, the Court squarely rejected Defendants' argument that "a borrower-by-borrower analysis is necessary."[36] As the Court held, "[t]he Ninth Circuit has repeatedly rejected [Defendants'] argument instead holding that individual issues as to when class members' discovered their injuries do not predominate where, as here, plaintiffs allege that defendants' omissions and misrepresentations resulted in plaintiffs remaining unaware of their injuries."[37] And the Court explicitly held that applications of the statute of limitations defenses would be "manageable."[38] Such a determination is unlikely to be upset by an appellate court. In contrast to the Court's ruling grounded in Ninth Circuit law, none of the unpublished or out-of-circuit case law Defendants cite demonstrates how the statute of limitations defeats predominance where the facts demonstrate that equitable tolling may apply.[39] *Moussouris v. Microsoft Corp.* does not even discuss predominance.  Instead citing to Fed. R. Civ. P. 23(a)(2), the court found that equitable tolling did not apply as a matter of law.[40] Moreover, the holding in *EQT Prods. Co. v. Adair* has never been cited or relied on by any court in the Ninth Circuit.[41] In sum, there is no legal issue—let alone a "serious" legal issue—in controversy here.

---

[34] *Grimmett v. Brown*, 75 F.3d 506, 514(9th Cir. 1996); *see also Rotella v. Wood*, 528 U.S. 549, 553-54, 561 (2000).

[35] *See* Order on Mtn. to Dismiss, dkt 47 at 13-17 citing dkt 22 at 5-8.

[36] Order on Class Cert. at 33.

[37] *Id*. at 33 citing *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012); *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976); *and Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975).

[38] *Id*. at 35.

[39] Mtn. to Stay at 9:18-25

[40] No. 15-1483, 2016 WL 6037978, at *8 (W.D. Wash. Oct. 14, 2016).

[41] 764 F.3d 347, 370 (4th Cir. 2014).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c.     The Injury Is Common Across the Class.

Defendants cite no case law whatsoever in its argument that the Court's ruling on Plaintiffs' damage theory presents a serious legal issue. That is because they cannot. Relative to most other class actions of this nature, Plaintiffs' damage theory seeking out-of-pocket losses is clear and was carefully evaluated by the Court.[42] Defendants seek to muddy the issue by arguing that many borrowers did not pay for the appraisals because lender or seller closing cost credits covered the cost of the appraisal. However, Defendants provide no evidence for the record to support that contention. Nor do they provide any case law that demonstrates that closing credits can be considered an offset to any particular fee such in a mortgage transaction. In contrast, "the evidence submitted by [Respondents] indicates that individual borrowers uniformly suffered a financial injury in the amount of the assessed appraisal fee."[43]

Defendants also argue that borrowers received other benefits from their loan transactions and therefore there is no common answer on how much value each borrower received. But this unsupported factual contention raises no serious legal issue. The Ninth Circuit is clear that "uncertain damages calculations alone cannot defeat class certification." And as this Court held, the idea that "a borrower could 'enjoy important benefits' from an overvalued appraisal appears conjectural."[44]

### d.     The Court's Ruling Relies on Common Proof.

Defendants' claim that Plaintiffs' theory depends on the notion that Defendants compromised the independence and impartiality of every single appraiser, but that Plaintiffs purportedly concede that not all appraisers were compromised.

However, Defendants mischaracterize the nature of Plaintiffs' claims.  This case does not depend, as the Court noted, on evaluating each individual appraiser to determine whether their independence was compromised.  Instead, as the Court

---

[42] Order at 36-39.

[43] *Id.* at 38.

[44] *Id.*

recognized, Defendants' "theories of liability and damages do not depend on the valuation outcome in each individual appraisal."[45]  Moreover, "appraisal management companies such as LandSafe have the same ethical obligations under USPAP as individual appraisers."[46] And, to that end, it is the "'corrupt' relationship between Countrywide and LandSafe [that] violated USPAP's appraiser independence requirement."[47]

Further, Defendants' contention that Plaintiffs conceded that not all appraisers were compromised is wrong.  In support of that position, Defendants point to the appraiser who did Plaintiff Waldrup's appraisal.[48]  However, not only did Plaintiffs never make such a concession, but also the Court evaluated, and rejected, Defendants' attempts to show otherwise.  The Court explained that although Defendants contended that Waldrup's appraisal was "atypical" because a third-party appraiser performed it, LandSafe was required to review third-party appraisals, and "Plaintiffs allege that LandSafe's review procedure was one of the companywide policies employed by Defendants to encourage predetermined valuations."[49]  As such, Court held that Waldrup's "claim is 'reasonably coextensive' with and thus typical of the class."[50]

Defendants' contention that Plaintiffs and this Court relied on policies and practices that only applied to a limited number of appraisers falls flat. The Court held that Plaintiffs offered "substantial evidence" to support their claims on a classwide basis and that Plaintiffs' expert found that there was "strong evidence" that the scheme "was exerted on a systemic, nationwide basis."[51]

---

[45] *Id.* at 18.

[46] *Id.* at 26.

[47] *Id.* at 25.

[48] Mot. To Stay at 11:6.

[49] Order at 17.

[50] Order at 18.

[51] Order at 25-26.

Finally, Defendants mistakenly rely on *Taddeo v. Am. Invesco Corp.*[52] and *Brinker v. Chicago Title Ins. Co.* for the proposition that appraisal cases are difficult to bring as class actions.[53]  Both of these unpublished cases are inapposite.  The theories in both *Taddeo* and *Brinker* depended on a finding that the appraisals at issue were inflated, which is not the case here.  Indeed, in *Brinker*, the "[p]laintiffs' expert indicated that in order to opine as to the veracity of any particular appraisal report, the report and other documents would have to be reviewed."[54]  The same is true in *Taddeo*, where the "[p]laintiffs aver[red] that a critical component of the fraud was misrepresentation based on inflated appraisal of the units which given the variability in the real estate market would have been different for each unit."[55]   In contrast, here the Court held that the opinion of Plaintiffs' expert "was not based solely on an individualized analysis of appraisals, but also the proffered evidence of Defendants improper companywide policies and practices."[56]  Indeed, "'the appraisal value is not the critical element' of the alleged fraudulent scheme."[57]   Again, there is no serious legal question related to common proof.

### 3.    The Order Does Not Depart or Conflict With Decisions of Other Courts.

Defendants' argument that the Court's class certification Order departs from or conflicts with decisions from other courts rings particularly hollow. Defendants identify no split of authority that is ripe for clarification between various district courts in the circuit.  In fact, Defendants fail to cite a single published case in any California District Court or anywhere in the Ninth Circuit that they identify as having an issue of

---

[52] No. 08-1463, 2011 WL 3957392 (D. Nev. Sept. 7, 2011).

[53] No. 10-1199, 2012 WL 1081211, at *14 (M.D. Fla. Feb. 9, 2012).

[54] 2012 WL 1081211, at *14.

[55] 2011 WL 3957392 at *5.

[56] Order at 27.

[57] Order at 28.

- 12 -

law requiring guidance.[58]  Instead, Defendants cite to a Third Circuit case, *In re Linerboard Antitrust Litig.*, for the proposition that the "division of authority" on whether individualized diligence or notice defeats the predominance element of Rule 23(b) "underscores the need for Rule 23(f) review."[59] But as this Court's citation to *In re Linerboard Antitrust Litig.* points out, "challenges based on the statute of limitations, fraudulent concealment, releases, causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability."[60] Similarly, Defendants contention that *Bridge*'s holding on reliance requires Ninth Circuit review falls short. As discussed above, the language of *Bridge* is plain: reliance is *not* an element of a RICO claim.[61] Finally, Defendants provide no reasoning whatsoever for their statement that "the question of when reliance may be inferred from 'circumstantial evidence'…deserves the Ninth Circuit's attention."[62] Defendants have not identified a split of authority, uncertainty, or need for guidance on this—or any other—issue.

## C.    Any Harm Defendants Suffer If This Case Is Not Stayed Is Self-Imposed

"Courts evaluate whether litigation expenses constitute irreparable harm based on the specific circumstances of each case."[63] "Several courts have held that in a Rule 23(f), run of the mill litigation costs do not amount to irreparable injury."[64]

---

[58] Defendants do cite to *Moussouris*, 2016 WL 6037978, at *7-8. As noted above, this case is distinguishable and unpublished.

[59] Mtn. to Stay at 12:23-25 citing 305 F.3d 145, 161 (3d Cir. 2002).

[60] Order at 35 citing 305 F.3d at 163 citing Newberg & Conti, *Newberg on Class Actions* §4.26 (3d. ed.).

[61] 553 U.S. at 659.

[62] Mot. to Stay at 13.

[63] *Astiana v. Kashi Co.*, 2013 WL 12064548, at *3 (S.D. Cal. Sept. 18, 2013) citing *Brown v. Wal-Mart Stores, Inc.*, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012).

[64] *See e.g. Astiana*, 2013 WL 12064548, at *3; *see also Monaco v. Bear Stearns Companies, Inc.*, 2012 WL 12506860, at *4 (C.D. Cal. Dec. 5, 2012).

1  "[D]iscovery can be burdensome. However, such a burden, while regrettable, does not

2  constitute an irreparable injury."[65]

3        Here, Defendants complain that absent a stay, they will be forced to incur

4  expenses related to thirteen depositions, written discovery, preparation for summary

5  judgment and trial. These expenses fall squarely within the definition of "run of the

6  mill litigation costs." Defendants do not claim that the costs in this case will be

7  "atypical or unusually severe, nor do they argue that Plaintiffs' conduct is causing

8  them economic injury."[66] With regard to the deposition notices, as Defendants admit,

9  these deposition notices were first served on December 7, 2017 – a mere three days

10  after the hearing on the class certification.[67] During the two-month period where the

11  Court's class certification order was pending, Defendants refused provide dates for

12  *any* of the individuals noticed. While Defendants may have hoped that a favorable

13  ruling would have made the notices moot, that did not come to pass. And Defendants'

14  refusal to engage in discovery unfortunately persists.  Discovery should be allowed to

15  continue forward.

16        Defendants also assert that they will incur substantial notification expenses

17  absent a stay. However, Defendants' admit, as they must, that Plaintiffs offered, in

18  writing, to agree to a stay of class notice pending the Ninth Circuit's review.[68] What

19  Defendants omit in their admission is that Plaintiffs not only offered to agree to a stay

20  of class notice, but Plaintiffs made that offer such that "neither party waives their right

21  to seek a stay on other grounds."[69] Defendants never responded to Plaintiffs' offer.[70]

22

23  [65] *Monacco*, 2012 WL 12506860, at *4 (citation omitted).

24  [66] *Id. Cf. Apple, Inc. v. Samsung Electronics Co., Ltd.,* No. 12–CV–00630–LHK, 2012 WL 2576132, at *9 (N.D. Cal. July 3, 2012) (holding that plaintiff was likely to suffer irreparable harm based on defendant's potentially patent-infringing product).

25

26  [67] Mot. to Stay at 4:19-22.

27  [68] Mot. to Stay at 14 fn. 1.

28  [69] *See* Alberstone Decl. at Ex. 1.

[70] *Id.*

PLAINTIFFS' OPPOSITION TO MTN TO STAY ACTION PENDING DECISION ON RULE 23(f) PETITION

Instead, Defendants decided to save the class notice issue as an argument to support their Motion to Stay rather than stipulate to what the parties could agree to. Putting aside that the cost of class notice actually falls on Plaintiffs at this stage of the litigation, for Defendants to now complain that they risk the costs of class notice when they had a standing offer to avoid that risk is disingenuous at best. Thus, the balance of hardships do not weigh "sharply" in favor of Defendants and this factor does not support Defendants' requested stay.

**D.     A Stay Will Prejudice the Plaintiffs' Rights**

This litigation has been ongoing since November 2013. It relates to events dating back to between 2003 and 2008. Indeed, memories of witnesses and access to relevant documents are particularly vulnerable under these circumstances. "Delay in resolving litigation always poses the risk of lost evidence and fading memories, a risk that is amplified by the unknown duration of the stay [Defendants] seek[]."[71] The Plaintiffs should be allowed to have their case move forward. "The potential length of a stay is a relevant consideration in determining whether to grant [an application seeking such relief]."[72] Here, a stay could bring the litigation to a sudden halt for an unknown period of time. A stay of this entire case at this point is not appropriate in light of the status of this litigation where no trial is imminent.

**E.     The Complete Stay Defendants Request Is Not in the Public Interest**

As Defendants admit, Defendants' appraisal practices affected as many as █. This large segment of the American public, ████████ ██████, is deserving of having this matter resolved. To the extent that Defendants charged so many consumers with appraisals that had no value, there is a compelling public interest in having those individuals compensated as quickly as

---

[71] *In re ConAgra Foods, Inc.*, 2014 WL 12580052, at *7 (C.D. Cal. Dec. 29, 2014); *see also Anderson v. Air West*, 542 F.2d 522, 524 (9th Cir. 1976) (a presumption of injury arises from delay in resolving an action).

[72] *Id.*

- 15 -

possible. Conversely, to the extent that Defendants did not act to the detriment of so many consumers, they should have the opportunity to mount their defense as soon as possible as well.

Again, while Defendants argue that a stay would preserve judicial and party resources, nothing contemplated goes beyond ordinary litigation costs such that a stay is warranted. Regarding concerns about confusion amongst class members in the absence of a stay, Plaintiffs have already offered to stay class notice until after the Ninth Circuit rules on Defendants' Rule 23(f) petition.[73] Plaintiffs renew that offer here. While Defendants argue that the stay will help resolve important issues raised in this case, again as discussed above, Defendants have entirely failed to identify what those important issues are or how they will impact the development of class action law.

## IV.   CONCLUSION

The Court should deny Defendants' motion to stay all proceedings, and stay class notice until sixty days after resolution of Defendants' Rule 23(f) Petition.

Dated: March 5, 2018                         HAGENS BERMAN SOBOL SHAPIRO LLP


By */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
toml@hbsslaw.com

---

[73] *See* Alberstone Decl. at Ex. 1.

Christopher Pitoun (SBN 290235)
Hagens Berman Sobol Shapiro LLP
301 N. Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
christopherp@hbsslaw.com

Daniel Alberstone (SBN 105275)
Roland Tellis (SBN 186269)
Mark Pifko (SBN 228412)
Evan Zucker (SBN 266702)
Baron & Budd, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698

*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFFS' OPPOSITION TO MTN TO STAY
ACTION PENDING DECISION ON RULE 23(f) PETITION