Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Evan Zucker (SBN 266702)
ezucker@baronbudd.com
Elizabeth Smiley (SBN 318165)
esmiley@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:   (818) 839-2333
Facsimile:    (818) 986-9698

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Telephone:   (206) 623-7292
Facsimile:    (206) 623-0594

Christopher R. Pitoun (SBN 290235)
christopherp@hbsslaw.com
Hagens Berman Sobol Shapiro LLP
301 North Lake Avenue, Suite 920
Pasadena, California  91101
Telephone:   (213) 330-7150
Facsimile:    (213) 330-7152

Attorneys for Plaintiffs
BARBARA WALDRUP, ELIZABETH
WILLIAMS, BECKIE REASTER,
REBECCA MURPHY individually, and
on behalf of those similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| BARBARA WALDRUP, individually, and on behalf of other members of the general public similarly situated,<br><br>　　　　　Plaintiff,<br>　vs.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, et al.,<br><br>　　　　　Defendants. | Case Number:  2:13-cv-08833-CAS(AGRx) CLASS ACTION<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTION OF NOTICE UNDER FED. R. CIV. P. 23(E)**<br><br>District Court Judge:  Christina A. Snyder<br>Magistrate Judge:  Alicia G. Rosenberg<br><br>Date:　　　　　March 30, 2020<br>Time:　　　　　10:00 a.m.<br>Location:　　　Dept. 8D |

| | |
|---|---|
| ELIZABETH WILLIAMS, BECKIE REASTER, REBECCA MURPHY, individually, and on behalf of all others similarly situated, <br><br>       Plaintiffs, <br>    vs. <br><br> COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, et al. <br><br>       Defendants. | Action Filed:    November 27, 2013 <br> Trial Date:     January 14, 2020 <br><br> Consolidated with <br> Case Number:  2:16-cv-4166 CAS(AGRx) |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on March 30, 2020, at 10:00 a.m., in Department 8D of the above-captioned Court, located at 350 W. First Street, Courtroom 8D, 8th Floor, Los Angeles, CA 90012, the Honorable Christina A. Snyder presiding, Plaintiffs Barbara Waldrup, Beckie Reaster, and Rebecca Murphy ("Plaintiffs" and the "Settlement Class Representatives")[1] on behalf of themselves all others similarly situated, will, and hereby do, move this Court to:

   1.   Preliminarily approve the settlement described in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Roland Tellis;

   2.   Conditionally certify the Settlement Class;

   3.   Appoint Plaintiffs as Settlement Class Representatives;

   4.   Appoint the undersigned counsel as Settlement Class Counsel;

   5.   Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

   6.   Appoint EPIQ Systems as the Settlement Administrator; and

---

[1] Class Counsel have concurrently filed a motion to remove Plaintiff Elizabeth Williams as a named plaintiff and class representative.

7.     Set a hearing date and briefing schedule for Final Settlement Approval and Plaintiffs' motion for fees and expenses.

This Motion is based upon: (1) this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement and Class Notice; (2) the Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action Settlement and Class Notice; (3) the Declaration of Roland Tellis; (4) the Declaration of Professor Eric D. Green; (5) the Declaration of Cameron R. Azari, Esq.; (6) the Settlement Agreement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

A form of proposed Preliminary Approval is attached the Settlement Agreement as Exhibit A and has been separately lodged with the Court in accordance with the Local Rules.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place over several weeks commencing on January 29, 2020.

Dated:  February 19, 2020          BARON & BUDD, P.C.

By: /s/ *Roland Tellis*
                                   Roland Tellis

                                   Daniel Alberstone
                                   Roland Tellis
                                   Evan Zucker
                                   BARON & BUDD, P.C.
                                   15910 Ventura Boulevard, Suite 1600
                                   Encino, California  91436
                                   Telephone:  (818) 839-2333
                                   Facsimile:   (818) 986-9698

                                   Christopher R. Pitoun
                                   Hagens Berman Sobol Shapiro LLP
                                   301 North Lake Avenue, Suite 920
                                   Pasadena, California 91101
                                   Telephone:  (213) 330-7150
                                   Facsimile:   (213) 330-7152

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:   (206) 623-7292
Facsimile:    (206) 623-0594

Attorneys for Plaintiffs
BARBARA WALDRUP, ELIZABETH
WILLIAMS, BECKIE REASTER,
REBECCA MURPHY individually, and on
behalf of those similarly situated

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ............................................................................... 1

II.   BACKGROUND .................................................................................. 2

    A.    Summary of Plaintiffs' Allegations ................................................. 2

    B.    History of this Litigation ................................................................. 3

        i.    Commencement of this Action and Motion Practice ............................ 3

III.  TERMS OF THE SETTLEMENT ....................................................... 5

    A.    The Settlement Class Definition ...................................................... 5

    B.    The Settlement Terms ...................................................................... 5

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT .................................................................................... 7

    A.    The Class Action Settlement Process ............................................... 7

    B.    The Standard for Preliminary Approval ............................................ 7

V.    THIS SETTLEMENT MERITS PRELIMINARY APPROVAL UNDER THE RULE 23(E)(2) FACTORS ........................................... 10

    A.    Class Representatives and Class Counsel Have and Will Continue to Zealously Represent the Class ................................... 10

    B.    The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations, and It Is Fair ................................. 11

    C.    The Settlement Provides Significant Benefits in Exchange for the Compromise of Strong Claims .................................................. 12

        i.    The Settlement Mitigates the Risks, Expenses, and Delays the Class Would Bear with Continued Litigation ...................... 12

        ii.   The Settlement Allows Class Members to Obtain Relief Easily and Does Not Require the Submission of Any Claims or Other Proof ................................................. 14

Case No.:  2:13-cv-08833-CAS(AGRx)

        iii.    Counsel Will Seek Reasonable Attorneys' Fees and Costs ............... 15

    D.    The Proposed Settlement Treats All Class Members Equitably Relative to One Another ............................................................................. 16

VI.    CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES BECAUSE THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23(A) AND (B)(3) ............................................................................. 17

    A.    The Settlement Class Meets the Requirements of Rule 23(a) ..................... 17

        i.    The Settlement Class is Sufficiently Numerous ................................ 17

        ii.    There Are Common Questions of Law and Fact ................................ 18

        iii.    Plaintiffs' Claims Are Typical of the Settlement Class Members' Claims ................................................................................. 19

        iv.    Class Counsel and the Settlement Class Representatives Have Protected, and Will Continue to Protect, the Interests of the Settlement Class ............................................................................... 20

    B.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ................ 21

        i.    Common Issues of Law and Fact Predominate ................................. 21

        ii.    Class Treatment Is Superior to Other Available Methods for the Resolution of This Case. .................................................................... 22

VII.    THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND SHOULD BE APPROVED ........................................................................................... 23

VIII.    THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE .................................................................................................. 26

IX.    CONCLUSION ................................................................................................. 26

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS NOTICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)..................................................................... 17, 23

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ................................................. 14

*Byrne v. Santa Barbara Hospitality Services, Inc.*,
  2017 WL 5035366 (C.D. Cal. 2017) ............................................ 10

*Churchill Vill., L.L.C., v. GE*,
  361 F.3d 566 (9th Cir. 2004) ....................................................... 24

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ....................................................... 7

*Cohen v. Trump*,
  303 F.R.D. 376 (S.D. Cal. 2014) .................................................. 18

*In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*,
  2011 WL 6325877 (S.D. Cal. Dec. 16, 2011) .............................. 13

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ................................................ 19, 20

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ....................................................... 21

*Friedman v. 24 Hour Fitness USA, Inc.*,
  No. CV 06-6282 AHM, 2009 WL 2711956 (C.D. Cal. Aug. 25, 2009) ...................... 22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................... 9, 12, 21, 22

*Jimenez v. Allstate Ins. Co.*,
  765 F.3d 1161 (9th Cir. 2014) ..................................................... 18

*Kenneth Glover, et al. v. City of Laguna Beach, et al.*,
  2018 WL 6131601 (C.D. Cal. 2018) .............................................. 9

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ................................................................. 22

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012), *cert. denied,* 134 S.Ct. 8 (2013) .................................. 8

*Loritz v. Exide Technologies*,
    No. 2:13–CV–02607–SVW–E, 2015 WL 6790247 (C.D. Cal. Apr. 21,
    2016) ................................................................................................. 20

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d at 459 ..................................................................................... 11

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................ 24

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................... 9, 10, 13

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
    238 F.R.D. 482 (C.D. Cal. 2006) ................................................................. 18

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..................................................... 9

*Nobles v. MBNA Corp.*,
    2009 WL 1854965 (N.D. Cal. June 29, 2009) .................................................... 13

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
    822 F.3d 650 (2d Cir. 2016) ...................................................................... 13

*Officers for Justice v. Civil Service Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................... 7, 8, 9

*In re Omnivision Technologies, Inc.*,
    559 F.Supp.2d 1036 (N.D. Cal. 2008) ............................................................ 14

*Palmer v. Stassinos*,
    233 F.R.D. 546 (N.D. Cal. 2006) ................................................................. 18

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..................................................................... 19

*Radcliffe v. Experian Info. Sols., Inc.*,
    715 F.3d 1157 (9th Cir. 2013) .................................................................... 20

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ........................................................................ 19

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................... 16

*Rosales v. El Rancho Farms*,
    2015 WL 4460918 (E.D. Cal. July 21, 2015) ........................................... 12, 14

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ................................................................... 17

*Stockwell v. City & Cty. of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) ........................................................................ 18

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) ......................................................................... 7

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................................... 18

**Statutes**

False Claims Act *Id.* at 49 ..................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................ *passim*

## I.     INTRODUCTION

After almost seven years of hard fought litigation, and on the eve of a hearing on Defendants' summary judgment and decertification motions and approximately 45-days from the scheduled trial date, Plaintiffs and Defendants Countrywide Home Loans, Inc., Countrywide Financial Corporation, Bank of America, N.A., Bank of America Corporation, LandSafe, Inc., and LandSafe Appraisal Services, Inc. (collectively, "Defendants") have reached a proposed class action settlement (the "Settlement") to resolve allegations that, from January 1, 2003 and through December 31, 2008, Defendants charged class members fees for home appraisals that failed to comply with the Uniform Standards of Professional Appraisal Practice ("USPAP").

Defendants have agreed to a **$250 million common fund settlement** (plus an additional $2.5 million for settlement administration costs) from which funds will be used to send settlement checks to Plaintiffs and the Settlement Class *without* the need for claim forms or documentary "proof."  This Settlement is the result of contentious, prolonged, arm's length negotiations during three in-person mediation sessions, between February 2019 and November 2019, with the Court-appointed mediator, Professor Eric D. Green, as well as numerous other telephonic and written discussions between the parties. The Settlement confers substantial relief for Class members who will automatically receive a refund check for a percentage of the appraisal fees they paid, without having to complete a cumbersome claim form, answer any questions or provide any documentation.

A qualified settlement administrator, EPIQ Systems ("EPIQ"), has designed a direct mail and publication notice campaign that builds on the class contact information EPIQ obtained after this Court's grant of class certification.  EPIQ provided notice of the Court's class certification order to the Class and is therefore familiar with the case and the scope and breadth of the Class.  Additionally, the settlement administrator will update the Class notice website to provide information concerning the Settlement and the rights of the Settlement Class. The proposed notice program far exceeds all applicable requirements of law, including Rule 23 and Constitutional Due Process, to apprise

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS NOTICE

Settlement Class members of the pendency of this action, the terms of the Settlement, and their rights to opt out of, or object to, the Settlement.

As described in detail below, the Settlement provides direct and significant benefits to the Settlement Class, while avoiding the risks and delay associated with further litigation (including resolution of Defendants' summary judgment and decertification motions, trial and appeal). Accordingly, Plaintiffs request that the Court grant this motion for preliminary approval, approve the form and manner of notice to the Settlement Class, and set the Final Approval Hearing.

## II.  BACKGROUND

### A.  Summary of Plaintiffs' Allegations

During the class period (2003-2008), Countrywide was the largest home mortgage lender in the United States. Plaintiffs' Third Amended Complaint, Dkt. 46, ("TAC") ¶1. at ¶2. Appraisals are an integral part of real estate lending transactions. *Id.* at ¶4. The appraisal process protects the financial and public policy interest in real estate transactions by providing an independent estimate of value prior to the funding of a loan. Plaintiffs allege Defendants failed to provide required independent appraisals in accordance with the ethical and independence rules set forth in USPAP, in order to ensure the closing of loans on a mass scale. *Id.* at ¶¶9, 47

On May 13, 2009, a former LandSafe manager named Kyle Lagow filed a sealed complaint against Countrywide, LandSafe, Bank of America, and others for damages and civil penalties under the False Claims Act. *Id.* at 49. In May 2012, Mr. Lagow's complaint was unsealed and his *qui tam* action (1:09-cv-02040-RJD-JMA) regarding LandSafe's appraisal procedures has now been settled, but without providing any relief to borrowers. Shortly after Mr. Lagow's complaint was unsealed, this litigation commenced to obtain relief for borrowers.

### B.    History of this Litigation

#### i.    Commencement of this Action and Motion Practice

On November 27, 2013, Plaintiff Barbara Waldrup filed a putative class action complaint against various Countrywide, LandSafe and Bank of America entities in the Central District of California. (Dkt. 1.) On January 24, 2014, Defendants filed a Motion to Dismiss the Complaint. (Dkt. 14.) After full briefing and a hearing the court granted in part and denied in part Defendants' motion and gave Plaintiff leave to amend to address the Court's order. (Dkt. 22.)  On May 5, 2014, Plaintiff Waldrup filed her First Amended Complaint (Dkt. 23) and on May 22, 2014 and May 30, 2014 respectively, Defendants filed a Motion to Dismiss that complaint along with a supplement to their motion to dismiss. (Dkts. 24, 28.)  Plaintiff opposed this motion on June 2, 2014 (Dkt. 29) and after a hearing on the motion, the court dismissed Plaintiff's First Amended Complaint without prejudice. (Dkt. 36.)

Plaintiff filed her Second Amended Complaint on August 18, 2014. (Dkt. 37) and Defendants filed a motion to dismiss that complaint on September 3, 2014. (Dkt. 39.) After full briefing and a hearing, the Court granted in part and denied in part Defendants' motion. (Dkt. 45.)

Plaintiff filed a Third Amended Complaint on October 27, 2014 (dkt. 46) which was again challenged by a motion to dismiss (Dkt. 47) but that motion, after full briefing and a hearing was denied in its entirety. (Dkt. 52.) The Defendants answered Plaintiff's Third Amended Complaint on January 20, 2015. (Dkt. 53.)

Thereafter, the parties entered into a stipulated protective order and engaged in extensive discovery in preparation for class certification and trial.  Discovery was extensive. In addition to the normal procedure of document production pursuant to categorical requests, the parties engaged in a detailed, negotiated ESI discovery protocol which resulted in the production of more than 615,000 pages of documents, comprised of, among other things, email correspondence, company procedures, corporate documentation and class member information. Due to disputed document production, in addition to

Magistrate Judge Rosenberg, the parties engaged the services of the now-retired Magistrate Judge Carla Worele as a discovery master to review and determine privilege issues for thousands of documents.

Class Counsel deposed 26 witnesses who were either employees/contractors or ex-employees of Defendants, including five 30(b)(6) depositions, as well as six expert witnesses put forth by Defendants. (Tellis Decl. at ¶ __.)  On November 14, 2016 this Court granted Plaintiff's request to consolidate the pending *Waldrup* matter with the then recently filed *Williams* matter. (Case No. 2:16-cv-4166-CAS-AGR.)

Subsequent to consolidation, Class Counsel defended depositions for each of the four named class representatives, as well as their spouses. Also, Class Counsel defended absent class member depositions spread around the country. (*Id.*)

On August 28, 2017, Plaintiffs filed their motion for class certification, seeking certification of a nationwide class pursuant to their RICO causes of action as well as a Texas subclass for similar claims under Ms. Waldrup's unjust enrichment claim. (Dkt. 171.) On October 2, 1017, Defendants filed their opposition to class certification along with supporting motions to strike Plaintiffs' experts (dkt. 182-189, 192-197) and on November 13, 2017, Plaintiffs filed their replies and responses. (Dtk. 208.)

On December 4, 2017 the Court heard argument on Plaintiffs' motion for class certification and February 6, 2018 the Court granted the motion. (Dkt. 248.) Defendants then petitioned the Ninth Circuit for an interlocutory appeal of the Court's order granting class certification under Rule 23(f). On March 26, 2018 this Court granted a stay pending the Ninth Circuit's decision on the Rule 23(f) petition. (Dkt. 275.) On May 22, 2018 the Ninth Circuit denied Defendants' petition. (See appellate case number 18-80024, Dkt. 6.)

On February 2, 2019, the Court set this case for trial to begin on January 14, 2020. (Dkt. 338.) Pursuant to the schedule set by the Court, fact discovery closed on July 1, 2019 and after the parties designated and deposed experts, expert discovery closed on August 16, 2019. On September 13, 2019, the dispositive motion deadline, Defendants filed a motion for summary judgment, a motion for decertification and a motion to amend

their answer. (Dkts. 431-435.) On October 14, 2019 Plaintiffs' opposed summary

judgment, class decertification and leave to file an amended answer. (Dkts. 440-444.) On

October 28, 2019, Defendants filed replies in support of the motions. (Dkts. 445-449.)

On November 4, 2019, after a third in-person mediation session with Professor Eric

Green, the parties reached an agreement to settle the claims and filed a notice of

settlement. (Dkt. 453.) Pursuant to an executed settlement agreement between the parties,

Plaintiffs, by this motion, seek preliminary approval of the settlement and leave to provide

notice to the class.

## III.    TERMS OF THE SETTLEMENT

### A.    The Settlement Class Definition

The Settlement Class includes all residents of the United States of America who,

during the period January 1, 2003 through December 31, 2008, made a mortgage loan

application to Countrywide in connection with which LSA obtained an appraisal

excepting those persons who successfully opted out of the class previously.  This

definition is intended to encompass all persons who made any inquiry, expressed an

interest in, or applied for credit, including but not limited to applications within the

meaning of the Equal Credit Opportunity Act, so long as LSA obtained an appraisal in

connection with it.  This definition is also intended to and does, to the best of the Parties'

understanding, embrace the exact same persons who were originally (a) defined as part of

the class when the nationwide class and Texas subclass were certified, and (b) identified

on the earlier master class member list.

### B.    The Settlement Terms

Under the Settlement, Defendants have agreed to pay $250 million to resolve the

claims, and to pay an additional $2.5 million for settlement administration costs. The

appraisal fees charged to borrowers at issue are identifiable from Defendants' records.

Using those records, the Settlement compensates all Settlement Class members who paid

for an appraisal performed during the class period.

The major Settlement terms are as follows:

a.  Settlement Class members will receive direct, first class postcard notice of the Settlement using Defendants' records of their last known contact information as well as confirmed contact information verified by the settlement administrator as a result of the original class notice process;

b.  Settlement Class members will also receive notice via publication notice methods (newspaper and internet banner ads) and be provided an opportunity to opt-out or object to the Proposed Settlement;

c.  Settlement checks will be automatically mailed to each Settlement Class member who does not opt-out of the Proposed Settlement without the need to submit a claim form;

d.  Settlement Class members will receive checks in an amount estimated to represent at least 22% of the appraisal fee assessed in connection the Class member's loan or application;

e.  The Settlement Administrator will engage in outreach to contact Settlement Class members and remind them to cash their checks;

f.  In addition to the amounts paid to the Settlement Class, Defendants shall pay all costs of providing notice to the Settlement Class and administration of the settlement up to an amount of $2,500,000.00;

g.  Each Settlement Class Representative will petition the Court to receive service award payments in a sum not to exceed $15,000; and

h.  Defendants will pay Class Counsel for attorneys' fees and costs approved by the Court in an amount, consistent with Ninth Circuit precedent, not to exceed 25% of the settlement amount.

(Tellis Decl., Ex. 1.)

In exchange for these significant benefits, all Settlement Class members who do not opt-out of the Settlement Class will be subject to a release of their claims against Defendants related to appraisal fees paid in connection with appraisals performed by

Defendants during the class period. (*Id.*)

## IV.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.     The Class Action Settlement Process

Under Rule 23(e) of the Federal Rules of Civil Procedure, class actions "may be settled, voluntarily dismissed, or compromised only with the court's approval." As a matter of "express public policy," federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") §13:1 (5th ed.) (noting that there is a "strong judicial policy in favor of class action settlement").

The *Manual for Complex Litigation (Fourth)* (2004) (the "*Manual*") describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of the notice of the settlement to class members, providing for, among other things, a period for potential objectors and dissenters to raise challenges to the settlement's reasonableness; and (3) a formal fairness and final settlement approval hearing. *Id.* at §21.63. The *Manual* characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentations from the settlement parties. *Id.* at § 21.632.

Here, Plaintiffs request the Court grant preliminary approval of the Settlement and authorize the dissemination of notice of the Settlement to the Settlement Class.

### B.     The Standard for Preliminary Approval

As the Ninth Circuit has explained, the "settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615, 625 (9th Cir. 1982).  Moreover, a district court should not "reach

any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* Rather, "a district court's only role in reviewing the substance of [a] settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.,* 696 F.3d 811, 819 (9th Cir. 2012), *cert. denied,* 134 S.Ct. 8 (2013) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).)

A recent revision to Rule 23(e)(2) includes a list of factors to consider in determining whether a class settlement should be approved. The new formulation of this rule identified the following factors to be used in determining whether a settlement is fair, reasonable, and adequate:

> (A) whether the class representatives and class counsel have adequately represented the class;
>
> (B) whether the proposal was negotiated at arm's length;
>
> (C) whether the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) whether the proposal treats class members equitably relative to each other.

The factors identified in Rule 23(e)(2) are not intended "to displace any factor [previously utilized by district courts], but rather to focus the court and the lawyers on the

core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. Pro. 23, 2018 Amendment Notes to Section (e)(2).

Similar to the newly codified factors, the Ninth Circuit has identified the following factors to be used in determining whether a settlement is fair, reasonable, and adequate to all concerned:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625; *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) ("Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval.")

"If the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval,' the court should grant preliminary approval of the class and direct notice of the proposed settlement to the class." *Kenneth Glover, et al. v. City of Laguna Beach, et al.*, 2018 WL 6131601, at *2 (C.D. Cal. 2018) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007) (citation omitted); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (applying at preliminary approval a "presumption" of fairness to settlement that was "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel.")

## V. THIS SETTLEMENT MERITS PRELIMINARY APPROVAL UNDER THE RULE 23(E)(2) FACTORS

The relevant factors set forth by the Ninth Circuit and recently revised Rule 23(e)(2)(A)-(D) for evaluating the fairness of a settlement weigh in favor of preliminary approval, and there can be no doubt that the Settlement was accomplished in a procedurally fair manner. For these reasons, the Settlement merits an initial presumption of fairness, and thus preliminary approval should be granted. *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527 (stating that if the "settlement follow[s] sufficient discovery and genuine arms-length negotiation," it should be "presumed fair.")

### A. Class Representatives and Class Counsel Have and Will Continue to Zealously Represent the Class

The Settlement Class Representatives and Class Counsel have prosecuted this action on behalf of the Class with vigor and dedication for nearly seven years. *See* Fed. R. Civ. P. 23(e)(2)(A). For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." *Byrne v. Santa Barbara Hospitality Services, Inc.*, 2017 WL 5035366, at *8 (C.D. Cal. 2017) (citation omitted). Here, Class Counsel deposed 26 witnesses who were either employees/contractors or ex-employees of Defendants, including five 30(b)(6) depositions, as well as six expert witnesses put forth by Defendants. (Tellis Decl. at ¶ 6.) Class Counsel also defended each of the four named class representatives, as well as their spouses in contentious depositions. Also, Class Counsel defended absent class member depositions spread around the country. (*Id.*at ¶ 7) Class Counsel also propounded more than 25 sets of document requests, more than 15 sets of interrogatories and engaged in substantive review of over 615,000 pages of documents produced by Defendants on behalf of 3 primary entities. (*Id.* ¶ 8-9.)  Class Counsel responded to in excess of 35 sets of Interrogatories as well as document requests and requests for admission propounded by Defendants. (*Id.* ¶ 9.), including 20 sets served in

the final month before the discovery cutoff. (*Id.*) Class Counsel's analysis of the vast volume of discovery material, publically available data and deposition testimony indisputably establishes they have gathered sufficient information to enter into a reasoned and well-informed settlement. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (holding "significant investigation, discovery and research" supported "district court's conclusion that the Plaintiffs had sufficient information to make an informed decision about the Settlement").

The Settlement Class Representatives were likewise actively engaged. They produced numerous documents, sat for a lengthy depositions, assisted Class Counsel with fact development, answered several dozen sets of discovery requests, and regularly communicated with counsel to remain up to date on the litigation. (Tellis Decl., ¶ 10.) Each of the Settlement Class Representatives were also approved by this Court as Class Representatives upon certification of the contested class. (Dkt. 248 at p. 40-41.) Finally, each of them will continue to protect the interests of the Class until the Settlement is approved and its administration completed. (*Id.* at ¶ 15.)

As such, both Class Counsel and the Settlement Class Representatives have adequately represented the interests of the Class in prosecuting this litigation and negotiating this Proposed Settlement.

## B. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations, and It Is Fair

The proposed Settlement Agreement arises out of serious, informed, and non-collusive negotiations facilitated by a neutral, Court-appointed mediator Professor Eric Green. *See* Fed. R. Civ. P. 23(e)(2)(B). Class Counsel vigorously prosecuted this action for many years before reaching the Class Settlement. Negotiations were difficult, protracted, and often spirited. The parties' negotiations were aided by Professor Eric Green, an unbiased, experienced mediator, selected by the parties through a selection process overseen by the Court. Professor Green played a crucial role in supervising the negotiations and helping the parties bridge their differences and evaluate the strengths

and weaknesses of their respective positions. (*See* Declaration of Professor Eric Green.)

The Parties participated in three separate in-person mediations held in Boston. (Tellis Decl. at ¶3.)  On November 4, 2019, the Parties reached agreement on material terms for a settlement and executed an MOU. Subsequently, the parties spent weeks finalizing the release and settlement agreement as well as the related exhibits. The adversarial nature of the litigation and the aid provided by Professor Green are factors that weigh in favor of preliminary approval. *See Rosales*, 2015 WL 4460918, at *16 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Notably, the Ninth Circuit has determined the 'presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.'")). Therefore, the proposed Settlement is the product of arm's length negotiations by Class Counsel.

## C.   The Settlement Provides Significant Benefits in Exchange for the Compromise of Strong Claims

The Settlement provides substantial Class relief, considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; and (iii) the fair terms of the proposed award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C). The Settlement compensates Settlement Class members who obtained appraisals from LandSafe in connection with a loan originated by Countrywide from January 1, 2003 through December 31, 2008. There can be little doubt that resolving the Settlement Class members' claims through a single class action is superior to potentially millions of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement demonstrate the advantages of a collective bargaining resolution process.

### i.   The Settlement Mitigates the Risks, Expenses, and Delays the Class Would Bear with Continued Litigation

The Settlement secures significant benefits, even in the face of the inherent uncertainties of litigation. Compromise in exchange for certain and timely provision of the

benefits under the Settlement is an unquestionably reasonable outcome. *See Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the Court to balance in determining whether the Settlement is fair.") (citing *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant.")). While Class Counsel believes in the strength of this case, they recognize that there are uncertainties in litigation, trial and appeal, making compromise of claims in exchange for certain and timely provision to the Settlement Class of the significant benefits described herein an unquestionably reasonable outcome. *See Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526 ("'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'") (citation omitted).

The settlement is a product of Parties' assessment of the merits of Plaintiffs' case, the merits of Defendants' defenses, the risks and uncertainty associated with continued litigation, and the possibility that Defendants might be successful either in their motion for Class Decertification, (Dkt. 434) or their Motion for Summary Judgment. (Dkt. 435.) For example, a prior case filed against the same Defendants for other conduct related to their loan practices was denied class certification. *See In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 2011 WL 6325877 (S.D. Cal. Dec. 16, 2011). Additionally, even if the Defendants' motions were denied, Plaintiffs still faced vigorously contested issues at trial and on any potential appeal. As another example, in a *qui tam* action against the same Defendants for other conduct related to their loan practices, the Second Circuit Court of Appeals reversed a jury verdict in favor of the plaintiff on grounds that there was insufficient evidence to support a claim of mail and wire fraud. *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650 (2d Cir. 2016). As such, the Class claims faced significant risk if continued.

Class Counsel, all experienced class action litigators, support the Settlement, and it is highly uncertain whether the Settlement Class would be able to obtain a better outcome through continued litigation and a trial. Given Class Counsel's "experience and familiarity with the facts, their recommendation that the settlement be approved is entitled to significant weight." *Rosales v. El Rancho Farms*, 2015 WL 4460918, at *15 (E.D. Cal. July 21, 2015) (citing *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because '[p]arties represented by competent counsel are better positioned than the courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'") (internal references omitted); *see also Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("In considering the adequacy of the terms of the settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.")

Indeed, should Class Counsel prosecute these claims against Defendants to conclusion, any potential recovery could come years in the future and at far greater expense. There is also a risk that the Settlement Class would receive less or nothing at all at trial. That "risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" strongly favors preliminary approval. *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458).

### ii.   The Settlement Allows Class Members to Obtain Relief Easily and Does Not Require the Submission of Any Claims or Other Proof

The distribution method agreed upon for this Settlement provides significant benefits for the Class members as there will be no need to fill out claims forms or submit any information. Settlement checks will be automatically mailed to each Settlement Class member who does not opt-out of the Proposed Settlement and for whom the EPIQ identifies a valid mailing address.  As discussed in further detail below, the Settlement Administrator, EPIQ Systems ("EPIQ"), will utilize and update the data that Defendants'

have on the contact information for each of the Settlement Class members. (*See* Declaration of Cameron R. Azari Esq. On Settlement Notices and Notice Plan)  EPIQ will also utilize any updates of contact information obtained during the notice of the contested class to make every best attempt to reach settlement class members. In addition, on the class notice website, class members will have the ability to update and/or correct their mailing information. Once a Class member's contact information is verified, EPIQ will directly mail the check to the Class member.  EPIQ will also send follow up notices to Class members reminding them and encouraging them to cash their checks. Finally, EPIQ will directly mail to each Class member a check for a pro-rata share of any amount remaining in the settlement fund after the initial settlement distribution. To the extent there remain funds left over after a subsequent pro-rata payment, and the funds left do not allow for an efficient administrative payment of subsequent settlement benefits, all remaining amounts shall be distributed to a *cy pres* recipient designated as the Center for Responsible Lending (or other *cy pres* recipient mutually-agreeable to the parties and approved by the Court.)  Such an automatic distribution system will allow Settlement Class members to easily collect their recovery from the settlement without the delay or uncertainty of the claims process.

### iii.    Counsel Will Seek Reasonable Attorneys' Fees and Costs

Defendants will pay Class Counsel for attorneys' fees and costs approved by the Court in an amount, consistent with Ninth Circuit precedent, not to exceed 25% of the Settlement recovery.  Class Counsel negotiated the terms and amount of the Settlement separately from the amount of attorneys' fees and costs. Waiting until after the Settlement terms are nailed down before discussing fees is a practice routinely approved by courts as in the Class' best interest. *See Volkswagen.*, 2016 WL 6248426, at *23. Class Counsel will provide information on the amount of attorneys' fees and costs sought before the preliminary approval hearing, in the class notice, and in a fee application, so that Class Members will have the opportunity to comment on or object under Fed. R. Civ. P. 23(h) prior to the final approval hearing.

### D. The Proposed Settlement Treats All Class Members Equitably Relative to One Another

The proposed Settlement fairly and equitably allocates benefits among Class members without any unwarranted preferential treatment of class representatives or segments of the Class. *See* Fed. R. Civ. P. 23(e)(2)(D). Each Class member will receive an estimated 22% of the appraisal fee assessed in connection their Countrywide loan or application. Class members were assessed different fees for each appraisal depending on factors such as the size or features of the property being appraised. Therefore, it is most equitable for Class members to recover an amount based on each of their individually assessed appraisal fees. If any of the settlement amount remains after the expiration of the period for Class Members to cash their settlement checks, then each Class member will receive an additional check with a pro-rata share of the remaining balance.

Class Counsel also requests service awards for the Settlement Class Representatives in the amount of $15,000. Service awards "are fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

A service award is appropriate here and does not constitute preferential treatment, especially in light of the prolonged nature of this litigation. No Settlement Class Representative was promised, nor conditioned their representation on the expectation of a service award. (*See* Tellis Decl. ¶ 1.) The Settlement Class Representatives have spent many hours over the years developing the case, conferring with counsel, answering discovery requests, searching for and producing documents, and preparing and testifying at their depositions. (*Id.*at ¶ 1.)  Further, they have lent their names to this litigation for many years. Plaintiff Waldrup has been involved in this litigation since its inception in 2013, and the remaining Plaintiffs have been involved since 2016. (*Id.* at ¶ 14.) Service awards are particularly appropriate in this case considering the Settlement Class

Representatives continued service to the Class over the many years of hard fought litigation.

Taken together, the Rule 23(e)(2) factors support preliminary approval. The Settlement's substantial and extensive benefits and the procedurally fair manner in which it was reached strongly favor preliminary approval.

## VI. CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES BECAUSE THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23(A) AND (B)(3)

Here, an analysis of the requirements of Fed. R. Civ. P. 23 show that certification of the agreed-upon Settlement Class is appropriate for settlement purposes.[2]

### A. The Settlement Class Meets the Requirements of Rule 23(a)

Before granting preliminary approval of the Settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy of representation, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate. Indeed, through a contested process, the Court already determined that class certification was proper under the circumstances of this case and with an identical class definition for the class sought here for settlement purposes. (Dkt. 248.)

### i. The Settlement Class is Sufficiently Numerous

Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable. Numerosity is generally satisfied when the class exceeds forty members. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Here, Defendants' records indicate that there were approximately 2.4 million Class members for whom

---

[2] When "[c]onfronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there will be no trial." *Amchem Prods.*, 521 U.S. at 620.

Countrywide originated a loan in connection with at least one property during the class period. The large size of the Settlement Class and its geographic dispersal across the United States also renders joinder impracticable. *See Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006) ("Joinder of 1,000 or more co-plaintiffs is clearly impractical."). Therefore, as this Court previously found, numerosity is satisfied. (Dkt. 248 at p. 15-16.)

### ii.   There Are Common Questions of Law and Fact

"Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating that members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014). Commonality "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014). Indeed, "'[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011).

Courts routinely find commonality where the class claims arise from the defendant's uniform course of conduct. *See, e.g.*, *Cohen v. Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014) ("Here, Plaintiff argues his RICO claim raises common questions as to '[Defendant's] scheme and common course of conduct, which ensnared Plaintiff[] and the other Class Members alike.' The Court agrees."); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006) (finding common core of factual and legal issues in "the questions of whether Allianz entered into the alleged conspiracy and whether its actions violated the RICO statute.").

Here, Plaintiffs have argued, and the Court previously held, that the Settlement Class claims are rooted in common questions of fact as to whether the class appraisals complied with the Uniform Standards of Professional Appraisal Practice, and that answering this question would generate common answers "apt to drive the resolution of the litigation" for the Settlement Class as a whole. *See Dukes*, 564 U.S. at 350. Thus, commonality is satisfied for purposes of the Settlement. (Dkt. 248 at p. 16.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### iii.   Plaintiffs' Claims Are Typical of the Settlement Class Members' Claims

Rule 23(a)(3)'s typicality requirement counsels that "'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(3)). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). Typicality "assure[s] that the interest of the named representative aligns with the interests of the class." *Wolin*, 617 F.3d at 1175 (quoting *Hanlon*, 976 F.2d at 508). Thus, where a plaintiff suffered a similar injury and other class members were injured by the same course of conduct, typicality is satisfied. *See Parsons*, 754 F.3d at 685; *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

Here, Plaintiffs have argued, and the Court previously held, that their claims and injuries are typical of the claims of and injuries suffered by the Class because they were charged, and paid for, an appraisal that did not comply with the Uniform Standards of Professional Appraisal Practice. Similarly, Plaintiffs' interest in obtaining a fair, reasonable, and adequate settlement of the claims asserted are identical to the interests of the Settlement Class members. Under the Settlement Agreement here, Plaintiffs and Settlement Class members will be compensated based on an identical methodology. Instead, compensation amounts are based exclusively on the appraisal fee amount charged to each Settlement Class members. Accordingly, the typicality element is satisfied for purposes of this Settlement. (Dkt. 248 at p. 17.)

### iv. Class Counsel and the Settlement Class Representatives Have Protected, and Will Continue to Protect, the Interests of the Settlement Class

Rule 23(a)(4)'s adequacy requirement is met where, as here, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is rooted in due-process concerns—'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020). Adequacy entails a two-prong inquiry: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020). Both prongs are satisfied here.

Plaintiffs, who all seek to be Settlement Class Representatives, have no interests that conflict with the Settlement Class members and will continue to vigorously protect class interests, as they have throughout this litigation. The Settlement Class Representatives understand their duties as class representatives, have agreed to consider the interests of absent Class members, and have actively participated in this litigation and will continue to do so. (Tellis Decl. at ¶ 15); *See, e.g.*, *Loritz v. Exide Technologies*, No. 2:13–CV–02607–SVW–E, 2015 WL 6790247, at *6 (C.D. Cal. Apr. 21, 2016) ("All that is necessary is a 'rudimentary understanding of the present action and … a demonstrated willingness to assist counsel in the prosecution of the litigation.'"). They are more than adequate Settlement Class Representatives.

This Court, in ruling on class certification, appointed Baron & Budd, P.C. and Hagens Berman Sobol Shapiro LLP as Class Counsel. (Dkt. 248 at p. 41.) As this Court has already found, Class Counsel are experienced class action attorneys who specialize in complex litigation. Since the beginning of this lawsuit, Class Counsel have devoted thousands of hours and substantial financial resources to identify, investigate, and successfully litigate the claims of Plaintiffs and the Settlement Class. These efforts led to

a settlement that will provide significant financial benefits to the Settlement Class— $250 million in class benefits and an additional $2.5 million in settlement administration costs. Class Counsel have vigorously prosecuted this action and will continue to do so through final approval. As such, the Court should appoint Baron & Budd, P.C. and Hagens Berman Sobol Shapiro LLP as Class Counsel under Rule 23(g) for purposes of settlement as it did when ruling on contested class certification.[3]

### B.    The Settlement Class Meets the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), a class may be certified if a court finds that, "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### i.    Common Issues of Law and Fact Predominate

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted)). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (citation omitted). "[W]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

The Ninth Circuit favors class treatment of fraud based claims stemming from a "common course of conduct," as Plaintiffs alleged here. *See, e.g., In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006); *Hanlon*, 150 F.3d at 1022-23. Even

---

[3] Class Counsel firm resumes were attached as Exs. 20 and 21 to the Pifko Declaration in support of motion for class certification at Dkt. 171-3 for the Court's reference.

outside of the settlement context, courts in the Ninth Circuit and elsewhere regularly certify RICO based class claims. *See Friedman v. 24 Hour Fitness USA, Inc.*, No. CV 06-6282 AHM (CTx), 2009 WL 2711956, at *8 (C.D. Cal. Aug. 25, 2009) ("Common issues frequently predominate in RICO actions that allege injury as a result of a single fraudulent scheme."); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1256-57 (11th Cir. 2004) (affirming certification of RICO claim where "all of the defendants operate nationwide and allegedly conspired to underpay doctors across the nation, so the numerous factual issues relating to the conspiracy are common to all plaintiffs [and the] corporate policies constitute[d] . . . the very heart of the plaintiffs' RICO claims").  Here, Plaintiffs have argued and this Court previously held that questions of law or fact common to Settlement Class members predominate over any questions affecting only individual members, such as whether Defendants' companywide policies and practices resulted in systematic and uniform violations of USPAP's ethics and independence requirements. (Dkt. 248 at p. 23-24.) Thus, the predominance element is satisfied for purposes of this Settlement.

### ii.   Class Treatment Is Superior to Other Available Methods for the Resolution of This Case.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. As *Hanlon* noted, "[f]rom either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." 150 F.3d at 1023. Indeed, the terms of the Settlement demonstrate the advantages of a collective bargaining and resolution process.

Additionally, although the benefits of the Settlement are significant, the amount in controversy for an individual case is likely insufficient to incentivize individual class members to bring individual actions. *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this

1   [superiority] factor weighs in favor of class certification."); *Amchem*, 521 U.S. at 617

2   ("The policy at the very core of the class action mechanism is to overcome the problem

3   that small recoveries do not provide the incentive for any individual to bring a solo action

4   prosecuting his or her rights. A class action solves this problem by aggregating the

5   relatively paltry potential recoveries into something worth someone's (usually an

6   attorney's) labor.").

7   Here, the efforts and funds required to marshal the type of evidence necessary to

8   establish liability against corporate defendants such as Countrywide, LandSafe, and Bank

9   of America would discourage Settlement Class members from pursuing individual

10   litigation. The superiority of proceeding through the class action mechanism is

11   demonstrated by the results of the Settlement, which, if approved, will provide the

12   Settlement Class with significant monetary recovery in connection with their claim.

13   The class action device provides the superior means to effectively and efficiently

14   resolve this controversy. As the other requirements of Rule 23 are satisfied, and as this

15   Court previously found, certification of the non-disputed Settlement Class proposed is

16   appropriate. (Dkt. 248 at p. 40.)

17   **VII.   THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND SHOULD BE**

18   **APPROVED**

19   Plaintiffs propose using EPIQ Systems ("EPIQ") as the Settlement Administrator.

20   EPIQ is uniquely knowledgeable about the class and its membership and makeup because

21   it acted as the notice administrator when the Class was previously provided notice in this

22   case. This will result in efficiencies to ensure the Settlement Class members receive the

23   maximum benefit from the Settlement with as little administrative cost as possible under

24   the circumstances.

25   Under Rule 23(e)(1), before a proposed settlement may be approved, the Court

26   "must direct notice in a reasonable manner to all class members who would be bound by

27   the proposal." The notice must be "reasonably calculated, under all the circumstances, to

28   apprise interested parties of the pendency of the action and afford them an opportunity to

object." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard.'" *Churchill Vill., L.L.C., v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.3d 1338, 1352 (9th Cir. 1980)). Here, the proposed notice program, which consists of, among other things, a dedicated website, a robust Long Form Notice, and a Summary Notice, exceeds these standards.

As part of the proposed notice program, EPIQ will utilize the pre-established class notice website (http://waldrupwilliamsappraisallawsuit.com) to provide Settlement Class members with detailed information about the case and access to key documents, including Settlement notices, the Settlement Agreement, the Complaint, and the Preliminary Approval Order, as well as answers to frequently asked questions. (Azari Decl. at ¶¶ 7-19.) This website address will be prominently displayed on all notice documents.

EPIQ will also disseminate notice to all Settlement Class members. The Long Form Notice includes a thorough series of questions and answers designed to explain the Settlement in clear terms and in a well-organized and reader-friendly format. Among other things, it includes an overview of the litigation, an explanation of the benefits available under the Settlement, and detailed instructions on how to comment on, participate in, or opt out of, the settlement. The Summary or Short Form Notice, though less comprehensive, also conveys the basic structure of the Settlement and is designed to capture Settlement Class members' attention with clear, concise, plain language.  The Summary Notice includes the address for the Settlement Website (where the Long Form Notice is available) and it provides Settlement Class members with an overview of the litigation. (*Id.*) Together, these notices cover all of the elements outlined in Rule 23(c)(2)(B).

Since Defendants have data on the Settlement Class members, Plaintiffs propose that EPIQ send Summary Notices directly to Settlement Class members via United States Postal Service ("USPS") first class mail using Defendants' data as supplemented by

information learned by EPIQ during their initial class notice campaign. (Azari Decl. ¶¶ 8-11.) Prior to mailing the notices, EPIQ will check the addresses of all Settlement Class members against the USPS National Change of Address ("NCOA") database and its own records. (*Id.*) Any addresses not confirmed by the NCOA database will be updated (pre-mailing) through a third-party address search service. (*Id.*) In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to confirm their accuracy. (*Id.*)

EPIQ will also process all returned and undeliverable mail. Mailings returned as undeliverable will be promptly re-mailed to any new address available through postal service information, for example, to the address provided by the postal service on returned pieces for which the automatic forwarding order has expired, or to better addresses that may be found using a third-party lookup service such as AllFind Address Locator, which is maintained by LexisNexis. (*Id.*)

EPIQ also will establish and maintain a toll-free telephone number and a post office box. Settlement Class members can call the toll-free telephone number, which will be prominently displayed on notice documents, to obtain additional information about the Settlement, listen to answers to FAQs and/or request Long Form and/or Summary Notices, or Class Members may also speak to a live operators during normal business hours. (*Id.* ¶¶ 17-19.)  EPIQ's post office box will also allow Settlement Class members to contact EPIQ in writing if they so choose. (*Id.*)

Finally, because internet advertising has become a standard component in legal notice programs, EPIQ will also run a comprehensive publication Notice campaign on select websites that Settlement Class members may visit regularly, allowing users to identify themselves as potential Settlement Class members and directly link them to the Settlement website for more information. (*Id.* ¶¶ 13-16.)

Because the proposed method of disseminating class notice is the best practicable method under the circumstances Plaintiffs respectfully request the Court approve the proposed class notice program.

## VIII.  THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

In order to effectuate final approval, the parties respectfully request the Court set a schedule for key dates including a date for a final approval hearing.

The parties propose the following schedule for Final Approval of the Settlement and implementation of the Settlement Program:

| Date | Event |
|---|---|
| Monday, March 2, 2020 | Defendants to provide notice to appropriate state and federal officials in accordance with the Class Action Fairness Act. |
| Monday, March 30, 2020 at 10:00 a.m. | Preliminary Approval Hearing |
| Monday, April 13, 2020 | Class Notice Disseminated |
| Monday, May 11, 2020 | Motions for Final Approval and Attorneys' Fees and Expenses filed |
| Monday, June 15, 2020 | Objection and Opt-Out Deadline |
| Monday, June 29, 2020 | Reply Memoranda in Support of Final Approval & Fee and Expense Application filed |
| Monday, July 13, 2020 at 10:00 a.m. | Settlement Fairness Hearing |

## IX.    CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court: (1) preliminarily approve the Settlement; (2) conditionally certify the Settlement Class; (3) Appoint the Settlement Class Representatives; (4) appoint Baron & Budd, P.C. (Roland

Tellis, Daniel Alberstone, and Evan Zucker) and Hagens Berman Sobol Shapiro LLP (Steve Berman, Christopher Pitoun) as Class Counsel under Rule 23(g) for purposes of settlement; (5) approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class; (6) appoint EPIQ Systems as the Settlement Administrator; and (7) set a hearing date and briefing schedule for Final Settlement Approval and Plaintiffs' fee and expense application.

Dated: February 19, 2020                    BARON & BUDD, P.C.

                                      By: /s/ *Roland Tellis*
                                            Roland Tellis

                                            Daniel Alberstone
                                            Roland Tellis
                                            Evan Zucker
                                            Elizabeth Smiley
                                            BARON & BUDD, P.C.
                                            15910 Ventura Boulevard, Suite 1600

                                            Steve W. Berman
                                            Hagens Berman Sobol Shapiro LLP
                                            1918 Eighth Avenue, Suite 3300
                                            Seattle, WA 98101
                                            Telephone:   (206) 623-7292
                                            Facsimile:    (206) 623-0594

                                            Christopher R. Pitoun
                                            Hagens Berman Sobol Shapiro LLP
                                            301 North Lake Avenue, Suite 920
                                            Pasadena, California 91101
                                            Telephone:   (213) 330-7150
                                            Facsimile:    (213) 330-7152

                                            Attorneys for Plaintiffs
                                            BARBARA WALDRUP, ELIZABETH
                                            WILLIAMS, BECKIE REASTER,
                                            REBECCA MURPHY individually, and on
                                            behalf of those similarly situated