THOMAS M. HEFFERON (*pro hac vice*)
THefferon@goodwinlaw.com
BROOKS R. BROWN (SBN 250724)
BBrown@goodwinlaw.com
**GOODWIN PROCTER LLP**
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
Fax: (202) 346-4444

DOUGLAS A. THOMPSON (SBN 155619)
douglas.thompson@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
120 Broadway, Ste. 300
Santa Monica, Cal. 90401-2386
Tel.: (310) 576-2100
Fax: (310) 576-2200

Attorneys for Defendants

[*ADDITIONAL COUNSEL LISTED IN CLOSING SIGNATURE BLOCK*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BARBARA WALDRUP, individually and on behalf of other members of the public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*,<br><br>Defendants. | Case No. 2:13-cv-08833-CAS-AG *lead case*<br><br>(Consolidated with Case No. 2:16-cv-04166-CAS-AGR)<br><br>**DEFENDANTS' SUBMISSION CONCERNING SETTLEMENT**<br><br>Date: July 13, 2020<br>Time: 10:00 am<br>Dept: 8D (8th Floor)<br>Judge: Hon. Christina A Snyder<br>350 W. First Street<br>Los Angeles, CA 90012 |
| ELIZABETH WILLIAMS, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*<br><br>Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

    1.    The weaknesses in Plaintiffs' case support the conclusion the settlement is a fair, reasonable and adequate classwide resolution. ............ 2

    2.    Continued litigation in the absence of settlement would have been risky, complex, expensive, and protracted. ..................................................... 4

    3.    Plaintiffs faced substantial risks of decertification. ...................................... 5

    4.    The $250 million settlement amount is more than fair, reasonable and adequate under the circumstances. .......................................................... 7

    5.    The late stage of proceedings at which the settlement was achieved supports its final approval. ............................................................................. 8

    6.    The settlement is the product of protracted negotiations conducted by experienced consumer class action counsel with the assistance of a nationally recognized mediator. ........................................... 8

    7.    No interests of a government participant are at stake. ................................. 9

    8.    The reaction of class members overwhelmingly favors final approval of the settlement. ...................................................................... 10

CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)
**Cases**
*Adoma v. Univ. of Phoenix, Inc.*,
   913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................................................. 8

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ......................................................................................... 8

*Churchill Vill., LLC v. GE*,
   361 F.3d 566 (9th Cir. 2004) ......................................................................................... 2, 10

*Felix v. WM. Bolthouse Farms, Inc.*,
   No. 19-0312, 2020 U.S. Dist. LEXIS 78280 (E.D. Cal. May 4, 2020) ........................... 5

*Ferrell v. Buckingham Prop. Mgmt.*,
   No. 19-0322, 2020 U.S. Dist. LEXIS 9919 (E.D. Cal. Jan. 17, 2020) ............................ 7

*Flores v. ADT LLC*,
   No. 16-0029, 2018 U.S. Dist. LEXIS 31784 (E.D. Cal. Feb. 27, 2018) ........................ 5

*Gong-Chun v. Aetna Inc.*,
   No. 09-1995, 2012 U.S. Dist. LEXIS 96828 (E.D. Cal. July 11, 2012) ......................... 9

*In re Google Referrer Header Privacy Litig.*,
   87 F. Supp. 3d 1122 ............................................................................................... 5, 6, 7, 8

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 7

*Law v. Trump Univ., LLC*,
   881 F.3d 1111 (9th Cir. 2018) .......................................................................................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................ 8, 9, 10

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .............................................................................................. 2

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................................ 9

*Pallas v. Pac. Bell*,
   No. 89-2373, 1999 WL 1209495 (N.D. Cal. July 13, 1999) ........................................ 10

*Riker v. Gibbons*,
   No. 08-0115, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ............................................ 9

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................ 8

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................................ 2

*True v. Am. Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...................................................................... 10

*Waldrup v. Countrywide Fin. Corp.*,
   No. 18-80024, Dkt. #6 (9th Cir. May 22, 2018) ........................................................... 6

*Wallace v. Countrywide Home Loans. Inc.*,
   No. 08-1463, 2015 U.S. Dist. LEXIS 190929 (C.D. Cal. Apr. 17, 2015) ................ 4, 6

*Wren v. RGIS Inventory Specialists*,
   No. 06-5778, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. Apr. 1, 2011) ........................ 9

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... 1, 2, 5, 9

# INTRODUCTION

Before the Court is Plaintiff's motion for final approval of the class settlement preliminarily approved by this Court on March 30, 2020. *See* ECF No. 475. Defendants submit this filing to set forth their own views on why the settlement is a fair, reasonable, and adequate compromise that warrants final approval under FED. R. CIV. P. 23(e).

The $250,000,000 settlement fund provides substantial benefits to the settlement class, while accounting for the very real risks that Plaintiffs could have continued litigating this case through trial and appeal and recovered nothing for themselves or the settlement class. At the time the settlement was reached, Defendants had filed motions for decertification of the class and for summary judgment supported by substantial evidence developed after the Court's March 2018 certification order. *See* ECF Nos. 434–35. The Court, having already determined that this case presents a "close question" with no prior precedents supporting Plaintiffs' theory of liability, could have granted either motion on multiple grounds and foreclosed recovery in any amount for the members of the settlement class. ECF No. 247 at 27. The Court also could have denied those motions and let the case go to trial—"h[o]ld[ing] [Plaintiffs] to their theory of proof" (ECF No. 247 at 27)—where Plaintiffs faced a real and substantial risk of a jury finding for Defendants and concluding that the challenged appraisals did not uniformly violate (or violate at all) the Uniform Standards of Professional Appraisal Practice, or that there was no proof of any consequent out-of-pocket injury to Plaintiffs or any class members. Either of those results, and numerous other possible outcomes following from continued District Court and appellate proceedings in the absence of the settlement, exposed Plaintiffs and the settlement class members to real and substantial risk of recovering nothing in these consolidated actions.

Under these circumstances, the settlement is more than a fair, reasonable, and adequate resolution of these consolidated actions. This conclusion is reinforced by the positive reception that the settlement has received from the two million-plus member settlement class, with approximately 33 Successful Opt-Outs, three purported "formal"

objections filed with the Court, and two purported "informal" objections submitted to the settlement administrator or the parties' counsel (but never filed with the Court). *See* Decl. of Cameron R. Azari ("Azazi Decl.," filed concurrently herewith) ¶ 18 & Att. 2.

## ARGUMENT

To determine whether a proposed settlement is fair, reasonable, and adequate under FED. R. CIV. P. 23(e)(2), the Court considers "a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings [at which the settlement was reached]; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "In addition, . . . the settlement may not be the product of collusion among the negotiating parties." *Churchill Vill., LLC v. GE*, 361 F.3d 566, 576 (9th Cir. 2004). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As applied here, these factors support a finding that the settlement is fair, reasonable, and adequate resolution of these actions.

**1. The weaknesses in Plaintiffs' case support the conclusion the settlement is a fair, reasonable and adequate classwide resolution.**

This is not a case where Plaintiffs were certain to succeed in prevailing on the merits and maintaining class certification through trial and appeal. To the contrary, numerous aspects of Plaintiffs' claims and theories exposed them to a substantial risk of loss or recovering nothing for themselves or the class. For example, to prevail in these actions and secure a recovery for themselves and the class, Plaintiffs would have had to prove that each one of more than 21,000 independent, third-party appraisers who

performed nearly 90% of the class appraisals was corrupted by Defendants such that not one of them could have truthfully certified they were offering an independent opinion of value as required by the Uniform Standards of Professional Appraisal Practice (USPAP). *See* ECF No. 434 at 12–21. Plaintiffs would have had to prove that this alleged corruption extended to the thousands of third-party appraisers whose work for Defendants during the class period was limited to a single appraisal. *See id.* at 21.

And even if Plaintiffs could overcome these (and other) substantial hurdles of proof, they would also have had to prove that none of the 2.4 million class members would have agreed to pay for an appraisal if they had been aware of Plaintiffs' theories as to why their appraisals were not USPAP-compliant—a proposition that would need to withstand evidence that, as loan applicants, the class members were solely interested in appraisals as a means to an end (getting the benefits of the loan), and were indifferent to USPAP compliance. *See id.* at 21–25. In certifying the class, this Court recognized the substantial proof challenges attendant to Plaintiffs' claims and theories, noting that Plaintiffs' ability to recover was a "close question" because there were no legal precedents supporting their theories about USPAP compliance. ECF No. 247 at 27. Likewise, in their motion for final approval, Plaintiffs duly acknowledged that having to carry "the burden at trial to prove that defendant's USPAP violations rendered the appraisals worthless to borrowers" presented a "substantial" "risk[]." ECF No. 478 at 17–18.

Plaintiffs' "theory of proof" also entailed claims that every appraisal was subject to the same "uniform," "companywide" policies. ECF No. 247 at 3. But, as Defendants demonstrated in their decertification and summary judgment motions with evidence from the discovery record and expert analysis (and were prepared to demonstrate through trial and appeal, if necessary), none of the challenged policies underlying Plaintiffs' claims was in fact "uniform" or "companywide"—some appraisals were governed by certain policies and not by others, and no policy applied to every one of the challenged appraisals. *See* ECF No. 434 at 5–8, 12–18. For example, one of the core

policies highlighted by Plaintiffs was described by them to be a "special" process that applied at most to 6.9% of the class appraisals at issue. *See id.* at 6.

These (and numerous other) grounds for full or partial summary judgment against Plaintiffs or decertification of the class (in whole or in part) were detailed in the summary judgment and decertification motions filed by Defendants which were pending before the Court at the time of the settlement. *See* ECF Nos. 434–35. These substantial and meritorious motions, and the compendium of evidentiary submissions supporting them, exposed Plaintiffs to the acute risk of recovering nothing for themselves or the class through continued litigation in the absence of the settlement. Recognizing this, some courts have concluded that the pendency of "motions for partial summary judgment and decertification" at the time of settlement is a factor that calls the strength of the plaintiff's case into question and renders settlement "a positive result for the Settlement Class." *See, e.g., Wallace v. Countrywide Home Loans. Inc.*, No. 08-1463, 2015 U.S. Dist. LEXIS 190929, at *14–15 (C.D. Cal. Apr. 17, 2015). The same conclusion applies on the record here.

### 2. Continued litigation in the absence of settlement would have been risky, complex, expensive, and protracted.

For the reasons set forth above in Part 1, continuing to litigate this case would have been risky to Plaintiffs and the class—adverse rulings on class decertification or summary judgment, an adverse outcome at trial, or an adverse appellate result on the merits or class certification could have substantially limited their recovery, even to zero.

But even apart from these risks, settlement makes sense because even a favorable outcome could not have been achieved without significant additional labor, expense, and delays. As the multi-year history of proceedings in these actions confirms, they are wide-ranging consumer class actions involving substantial potential exposure, raising complex claims and issues with respect to more than two million appraisals, which already have resulted in protracted and expensive proceedings. Given this, there can be no legitimate doubt that continued litigation through resolution of Defendants'

summary judgment and decertification motions, potential trial, and appeal would have continued to be complex, expensive, and protracted. Absent summary judgment in favor of Defendants, Plaintiffs would have to prove their theories of liability and overcome defenses in a trial requiring multiple experts on each side testifying (and seeking to rebut each other's testimony) on the conclusions that can be drawn from a complex data set containing millions of records. *See*, *e.g.*, *In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1131 (recognizing case "would have been expensive to litigate and try since expert testimony would be necessary" to explain complex issues and to "establish a basis for damages in an untested area").

Plaintiffs would also have to overcome defenses raised by Defendants which put the subjective intent of individual appraisers and individual class members at issue. ECF No. 434 at 19–20. And even if Plaintiffs prevailed, they would have had to face an appeal on both merits and class-certification issues.

For all of these reasons, Plaintiffs have appropriately called the prospect of continued litigation "protracted" and "resource-draining." ECF No. 478 at 18. "[G]reat weight is accorded to the recommendation of counsel" in such assessments as to the risks and expenses of continued litigation. *Flores v. ADT LLC*, No. 16-0029, 2018 U.S. Dist. LEXIS 31784, *28 (E.D. Cal. Feb. 27, 2018).

### 3. Plaintiffs faced substantial risks of decertification.

While "decertification is always a possibility," *Felix v. WM. Bolthouse Farms, Inc.*, No. 19-0312, 2020 U.S. Dist. LEXIS 78280, *22 (E.D. Cal. May 4, 2020), the risk that Plaintiffs would not be able to maintain class status through trial and appeal was particularly acute here. Indeed, in certifying the class, this Court acknowledged that Rule 23 predominance presents "a close question" in these cases. And, at the time of the settlement, Defendants had already filed a substantial decertification motion— supported by a compendium of record evidence—raising a host of meritorious arguments that predominance and other Rule 23 prerequisites to class certification were lacking based on the post-certification record. That motion presented substantial risks

that the class would be decertified, in whole or in part, that counsel in favor of approval of the Settlement. *See also*, *e.g.*, *Google*, 87 F. Supp. 2d at 1131–32 ("Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement."); *Wallace*, 2015 U.S. Dist. LEXIS 190929, at *16 (where there are "grounds on which Defendants could seek to decertify the class if the settlement is not approved," "[t]he risk of decertification should the action proceed favors approving the settlement").

In addition to the risks of maintaining class status through trial, Plaintiffs faced the risk of losing class status on appeal. While the Ninth Circuit declined discretionary review on an interlocutory basis (*see Waldrup v. Countrywide Fin. Corp.*, No. 18-80024, Dkt. #6 (9th Cir. May 22, 2018)), Defendants would have had the opportunity to renew their objections to class treatment on any appeal from a final judgment, and a favorable ruling on any one of the issues raised could have resulted in a denial of class treatment and consequent reduction of any class recovery to zero. Specifically, class treatment would have been invalidated if the Court of Appeals agreed with Defendants on any of the following:

(i) that Plaintiffs' allegedly common evidence (in the form of alleged policies and alleged statements) was not uniformly applicable across a class, some of whose appraisals could not have been affected by the alleged policies or statements because they predated them, or for other reasons;

(ii) that a presumption of reliance could not be sustained given evidence that many class members never saw the representation they purportedly relied on;

(iii) that a presumption of reliance could be rebutted by individualized evidence of non-reliance on, or indifference to, the challenged representations;

(iv) that the statute of limitations could not be tolled on a classwide basis given individualized issues concerning class members' diligence in protecting their rights and actual knowledge as to the nature of the conduct alleged (such as

through media reports published back to 2007 alleging practices of inflating property appraisals); or

(v) that out-of-pocket losses could not be proven on a classwide basis given evidence that many borrowers received concrete financial benefits from the challenged appraisals outweighing the costs of the appraisals.

### 4. The $250 million settlement amount is more than fair, reasonable and adequate under the circumstances.

Against the background of the foregoing risks and the prospect that Plaintiffs could have recovered nothing after more than seven years of litigation and a trial and appeal process likely to be commensurately complex, the $250,000,000 settlement amount is a fair, reasonable and adequate recovery. That is especially so relative to other settlements that have achieved court approval in this Circuit. *See, e.g.*, *Ferrell v. Buckingham Prop. Mgmt.*, No. 19-0322, 2020 U.S. Dist. LEXIS 9919, at *59 n.20 (E.D. Cal. Jan. 17, 2020) (collecting cases approving settlements representing recoveries of between 0.75% and 10.7% of what plaintiffs could recover at trial, "given the proffered strengths and weaknesses of the claims and defenses, the costs and risks of pursuing this litigation through trial, and the benefit of recovery now versus potentially no recovery"). Here, as Plaintiffs have noted in their motion for final approval, class members who do not opt-out can expect a direct payment in the amount of least 22% of the appraisal fees they could seek to recover at trial, without the uncertainties of further litigation. ECF No. 478 at 20. And, if the value of the attorneys' fees and litigation costs is treated as a benefit to class members, the class member recovery amount rises to approximately 29% of the appraisal fees they could seek to recover at trial. Either way, the class member recovery amount is certainly sufficient to "fall within a reasonable range of possible settlements, giving 'proper deference to the private consensual decision of the parties' to reach an agreement rather than to continue litigating." *Google*, 87 F. Supp. 3d at 1133 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

1
2
      **5.    The late stage of proceedings at which the settlement was achieved supports its final approval.**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012). Here, the parties reached their agreement to settle this case after (a) more than seven years of active litigation (including litigation and resolution of numerous motions to dismiss, the completion of substantial and wide-ranging discovery, litigation and resolution of Plaintiffs' certification motion, litigation of Defendants' summary judgment and decertification motions) and just a few months in advance of the scheduled trial date, (b) extensive arms-length negotiations conducted through a well-recognized professional mediator over many months and three in-person mediation sessions, and (c) the development of a discovery record that left the parties prepared to go to trial. "The extent of Plaintiffs' counsel['s] factual investigation and the amount of pre-compromise litigation shows they 'had a good grasp on the merits of their case before settlement talks began,'" supporting the deference given to their decision to settle. *Google*, 87 F. Supp. 3d at 1134 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)); *accord, e.g.*, *Adoma, supra* ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case."). "What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (citation omitted). And that is certainly the case here.

24
25
26
      **6.    The settlement is the product of protracted negotiations conducted by experienced consumer class action counsel with the assistance of a nationally recognized mediator.**

27
28
"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop.*

*v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *accord*, *e.g.*, *Riker v. Gibbons*, No. 08-0115, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010) ("The recommendation of experienced counsel in favor of settlement carries a great deal of weight in a court's determination of the reasonableness of a settlement."). This deference is predicated on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

This Court already found that class counsel "are experienced attorneys" with "a strong class action record," when it found them adequate for Rule 23 purposes. ECF No. 247 at 23. Defendants, likewise, are represented by experienced counsel at multiple nationwide law firms who have (a) litigated countless consumer class actions from the initial complaint through the certification stage, dispositive motion practice, final judgment, and appeal; and (b) negotiated hundreds of class action settlements. *See*, *e.g.*, Decl. of Brooks R. Brown ("Brown Decl," filed concurrently herewith) ¶ 4. The product of "arm's length negotiations between experienced capable counsel after meaningful discovery" is entitled to a "presumption of correctness." *DIRECTV*, 221 F.R.D. at 528. That is particularly the case here, where "the settlement was reached after mediation conducted by an experienced mediator." *Gong-Chun v. Aetna Inc.*, No. 09-1995, 2012 U.S. Dist. LEXIS 96828, at *43 (E.D. Cal. July 11, 2012). Indeed, the settlement here was reached only after multiple mediations facilitated over nearly a year by a nationally recognized mediator (Eric Green of Resolutions LLC), who has substantial experience mediating complex, consumer class actions. *See* Brown Decl. ¶¶ 7–13.

**7.     No interests of a government participant are at stake.**

"Because there is no governmental entity involved in this litigation, the seventh factor is inapplicable." *Wren v. RGIS Inventory Specialists*, No. 06-5778, 2011 U.S. Dist. LEXIS 38667, at *32 (N.D. Cal. Apr. 1, 2011). Moreover, although notice of this settlement was provided to 61 federal and state officials (including the Federal Reserve Bank, Office of the Comptroller of the Currency, the Consumer Financial Protection

Bureau, the United States Attorney General, and the Attorneys General of all 50 states and territories) about four months ago, none of them have filed or lodged any objection or other submission concerning the settlement with this Court.

### 8. The reaction of class members overwhelmingly favors final approval of the settlement.

To "measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010). "The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness." *Pallas v. Pac. Bell*, No. 89-2373, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999); *accord, e.g.*, *DIRECTV*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

Here, the reaction of class members to the settlement of this case has been strikingly positive—particularly so in light of the large class size of more than two million members. As of the latest information Defendants have received, there have been no more than 33 Successful Opt-Outs (barely 0.001% of the class), only three "objections" to the settlement filed with the Court, and only two "objections" to the settlement sent to the settlement administrator or the parties' counsel. Settlements have been approved with a far higher objection and opt-out rate than this. *See, e.g.*, *Churchhill Vill.*, 361 F.3d at 577 (affirming settlement approval with 45 objections and 500 opt-outs out of 90,000 class members).

Even more strikingly, several of the class members opting out have done so not on account of any complaint that the settlement is unfair or insufficient, but that it is too favorable to class members. For example, one opt-out stated that he "do[es] not desire to be a party to this as I did not suffer any injury of any nature as a result of any action by any of the various defendants." Had this case gone to trial, Defendants could have sought similar testimony from like-minded class members to rebut Plaintiffs' out-

of-pocket damages methodology, so class counsel's decision to settle the case and achieve a substantial recovery for the class without having to contend with this risk was reasonable.

The three purported objections filed with the Court compel no different conclusion. For example, one class member, Susan G. Fineout, who frames her grievance as an objection to the settlement, does not in fact raise any objection to the settlement at all, nor, for that matter, an objection related to the subject matter of this litigation. Instead, Ms. Fineout asserts unrelated grievances against Defendants arising from her alleged "foreclosure nightmare" and an allegation that Defendants "ignored" her request for a loan modification, among other vaguely described grievances that nowhere use the word "appraisal." *See* ECF No. 483 at 1–2 & *passim*. Ms. Fineout indicates that she has long been represented by counsel in connection with those grievances, and she can presumably continue to pursue them without regard to the outcome of this case.

Reduced to their essence, the other two objections filed with Court (Harper and Gardner) generally assert that the recovery amount is too low. In addition, Gardner (but not Harper) raises questions about the amount of the class representative award and attorneys' fee/litigation cost awards. As to the former, the assertion that the recovery amount is too low lacks merit for the reasons discussed in Sections 1 through 4 above, particularly considering that (a) the 22% to 29% of assessed appraisal fee recovery amount exceeds that approved in numerous other class action settlements; (b) Defendants' summary judgment, decertification, and other arguments and defenses exposed Plaintiffs and the class to the real and substantial risk of recovering nothing at all; and (c) the Settlement was achieved without the need for protracted and expensive litigation through summary judgment, decertification, trial, and appeal and the attendant risks to Plaintiffs and the class of losing in the course of such proceedings. And Gardner's questions about two elements of the settlement do not constitute substantive objections to its fairness, reasonableness, or adequacy.

1       As to the other two objections sent to the settlement administrator or the parties' counsel, neither of them meets the criteria for a valid objection set forth in this Court's preliminary approval order (ECF No. 475), the class notice (ECF No. 457-1 Ex. B), or the Settlement Agreement (ECF No. 457-1). Among other reasons, neither objection was filed with this Court by the June 15, 2020 deadline. *See* ECF No. 457-1 ¶ 2.09 ("Any Class Member who does not submit a timely Objection in complete accordance with . . . any order of the Court shall not be treated as having filed a valid Objection to the Settlement"). Even setting this defect aside, however, the purported objections only generally assert that the class member recovery amount is too low and so lack merit for the same reasons as the two objections filed with the Court raising the same issue.

      In any event, class members who believed they could have obtained a higher recovery through continued litigation remained free to opt out and seek one. Indeed, class members were given not just one but two opportunities to opt out, first as part of the initial notice following class certification and again after the settlement was reached. *See* ECF No. 331 ¶ 3; ECF No. 457-1 ¶¶ 2.07–2.09. This second opportunity to opt-out after the Settlement Agreement was announced is not required, but was made part of the settlement terms nonetheless by agreement of the parties. *See, e.g.*, *Law v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (holding that "due process does not compel a second opt-out opportunity"). That this extra opt-out opportunity was afforded—and yet so rarely exercised—speaks volumes about the adequacy and fairness of the settlement amount.

///

///

///

## **CONCLUSION**

For the reasons stated above, Defendants respectfully submit that the settlement reached by the parties in arm's-length, mediator-facilitated negotiations represents a fair, adequate, and reasonable resolution of these cases.

Respectfully submitted,

Dated: June 29, 2020

By: /s/ *Brooks R. Brown*
THOMAS M. HEFFERON (*pro hac vice*)
THefferon@goodwinlaw.com
BROOKS R. BROWN (SBN 250724)
BBrown@goodwinlaw.com
RICHARD M. WYNER (*pro hac vice*)
RWyner@goodwinlaw.com
KEITH LEVENBERG (*pro hac vice*)
KLevenberg@goodwinlaw.com
**GOODWIN PROCTER LLP**
901 New York Ave., N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
Fax: (202) 346-4444


By: /s/ *Douglas A. Thompson*
DOUGLAS A. THOMPSON (SBN 155619)
douglas.thompson@bclplaw.com
ROBERT E. BOONE III (SBN 132780)
reboone@bclplaw.com
LINDA C. HSU (SBN 239880)
linda.hsu@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
120 Broadway, Ste. 300
Santa Monica, Cal. 90401-2386
Tel.: (310) 576-2100
Fax: (310) 576-2200

ENU A. MAINIGI (*pro hac vice*)
emainigi@wc.com
KENNETH C. SMURZYNSKI (*pro hac vice*)
ksmurzynski@wc.com
CRAIG D. SINGER (*pro hac vice*)
csinger@wc.com
BETH A. STEWART (*pro hac vice*)
bstewart@wc.com
**WILLIAMS & CONNOLLY LLP**
725 12th St., N.W.
Washington, D.C. 20005
Tel.: (202) 434-5000

1 | Fax: (202) 434-5029
2 | *Attorneys for Defendants*